UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:05-cv-01190-RMU |
| | ) | Judge Ricardo M. Urbina |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND
UNITED STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT'S MOTION TO DISMISS**

Defendants United States Environmental Protection Agency ("EPA") and United States

Department of Housing and Urban Development ("HUD"), by and through undersigned counsel,

respectfully move pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6), to

dismiss Plaintiffs' Complaint for declaratory and injunctive relief dated June 15, 2005, for lack

of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted. At

this time, this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs'

fail to identify a final agency action pursuant to the Administrative Procedure Act ("APA"). In

addition, Plaintiffs' claims are not ripe for judicial review and Plaintiffs have failed to establish

standing to assert these claims. Therefore, dismissal pursuant to Federal Rule of Civil Procedure

12(b)(1) and/or 12(b)(6) is appropriate.

1

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
United States Department of Justice


_/s/ Sara E. Culley_____

Dated this 27th day of June, 2005.    SARA E. CULLEY (K.S. Bar No. 20898)
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Facsimile: (202) 305-0267

Of Counsel:

Marilyn J. Kuray, Esq.
Environmental Protection Agency
Office of General Counsel
Tel: (202) 564-3449

Stacey E. Singleton, Esq.
Department of Housing and Urban Development
Tel: (202) 708-0614

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:05-cv-01190-RMU Judge Ricardo M. Urbina |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and TENNESSEE VALLEY AUTHORITY, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS EPA AND HUD'S[1] MOTION TO DISMISS AND IN RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

For several years, local decision-makers in Warren County, Kentucky have been planning and developing a project known as the Kentucky Trimodal Transpark ("Transpark"), a business and industrial park located near Bowling Green, Kentucky.  Plaintiffs oppose the construction of the Transpark which has been ongoing since on or about June 10, 2004.  The question before the Court is not, however, the merits of constructing the Transpark; rather, the applicable question here is whether there has been any final agency action by Defendants United States Environmental Protection Agency ("EPA") and United States Department of Housing and Urban Development ("HUD") that would provide a jurisdictional basis for judicial review of Plaintiffs'

---

[1] Defendant TVA files separately pursuant to its independent litigating authority.

1

claims.  While, Plaintiffs assert that the federal trigger for bringing their challenges against

Defendant EPA and HUD is the appropriations for future grants, the reality is that Defendants

EPA and HUD have yet to consider or approve an application for such grants.  Indeed, neither

EPA nor HUD have even received applications for the grants at issue.  Accordingly, Plaintiffs'

Complaint should be dismissed for failure to identify any final agency action within the meaning

of Section 10 of the Administrative Procedure Act, 5 U.S.C. § 704 ("APA"), which is the statute

that permits challenges to federal actions.   Dismissal of Plaintiffs' Complaint is also required,

because Plaintiffs' claims are not yet ripe and Plaintiffs lack standing.

In addition, Plaintiffs fail to meet the requisite standards to obtain the extraordinary relief

of a preliminary injunction.  As stated above, Plaintiffs are unlikely to succeed on the merits of

their claims.  Plaintiffs also fail to show that they would be irreparably injured if their motion

were denied, nor have they shown that an injunction would be in the public interest.

Consequently, Plaintiffs' motion for preliminary injunction should be denied.

## FACTUAL BACKGROUND

### I. Transpark Project

The Transpark, a business and industrial park, is currently under construction in Warren

County, Kentucky.  Pls.' Compl. ¶¶ 11, 17.  The Inter-Modal Transportation Authority ("ITA"),

a non-profit, non-stock Kentucky corporation, was established by Warren County to act as the

county's agency in acquiring, developing and financing the Transpark.  *Id*. at ¶ 12.

The Transpark project is being developed in phases; it may eventually involve road, air

and rail components.  Pls.' Compl. at ¶ 11; Hizer Decl., ¶ 5.  Phase I of the Transpark project

development includes the purchase and development of approximately 1,200 acres of land and

the development of that land as a business and industrial park. Hizer Decl., ¶ 5. Construction of Transpark's Phase I began on or about June 10, 2004. *Id.*, ¶ 10. Phase I of the Transpark was planned, designed, financed and has been constructed without any federal funding from Defendants EPA and HUD and will utilize no federal funding from Defendants EPA and HUD in the future. *Id.* No development of any part of the project beyond Phase I has been undertaken or will be undertaken until Phase I is completed and a determination is made concerning whether to continue development of the Transpark. *Id.* at ¶ 5.

One component of the current construction at the Transpark site is a training center intended to be part of the Kentucky Community and Technical College System. Pls.' Compl. ¶ 9, Hizer Decl., ¶ 12. The training center is a project of the Commonwealth of Kentucky; accordingly, it is not being constructed by the ITA. Hizer Decl., ¶ 12.

On May 12, 2005, the ITA advertised for requests for proposals from qualified firms to demolish and dispose of a residential structure and all associated farm buildings at 839 Mizpah Road, Bowling Green, Kentucky. Pls.' Mot. at 5, Pls.' Ex. 9; Hizer Decl., ¶ 18.[2] The ITA plans to demolish these structures as part of its construction of the business and industrial park. Hizer Decl., ¶ 18.

**II. Appropriated Funds and Status of Applications for Funds.**

Plaintiffs' Complaint brings claims against Defendant EPA, because of Congressional appropriations made for fiscal years 2004 and 2005. Pls.' Compl. ¶ 8. Plaintiffs also bring claims against Defendant HUD for a Congressional appropriation made in fiscal year 2005. *Id.* These appropriations, in and of themselves, however, do not constitute final agency action; rather, the

---

[2] Plaintiffs allege these structures have historic significance. Pls.' Mot. at 5-6.

appropriated money becomes obligated, and thus, final agency action occurs, only after a grant is considered and approved.

### A. EPA Funds Appropriated for Warren County Water District and Bowling Green, Kentucky (South Central Kentucky Water Infrastructure Project).

EPA's 2004 Appropriation Act appropriated $2,000,000 "to the Intermodal Transportation Authority in Bowling Green, Kentucky, for Kentucky TriModal Transpark Water and Sewer Improvements."[3]  When EPA Headquarters notified EPA Region 4 that these funds had been appropriated for the ITA, EPA Region 4 contacted the ITA to provide it with information on the grant application process.  Rayfield Decl., ¶ 6.  EPA Region 4's "Special Appropriations Project Procedures" informed the ITA that any grant approval would be contingent upon compliance with applicable federal laws, including the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA").  *Id.*, Ex. 2 at 9.  The Kentucky Division of Water, acting on behalf of EPA Region 4, also met with the ITA and the Warren County Water District to discuss the process for applying for an EPA grant.  *Id.* at ¶ 6.  EPA's guidelines provide that a grantee own and operate the facilities built by a grant.  *Id.*; Ex. 1.  Because Warren County Water District intended to own the facilities built with the grant funds, it was determined that the Water District would be the appropriate grantee.  *Id.* at ¶ 6.

Before EPA can take any action relating to the award of a grant, the Warren County Water District must submit, through the Kentucky Division of Water, a complete grant application with a workplan and proposed budget.  *Id.* at ¶¶ 4, 10.  In addition, the Warren County Water District

---

[3]  Pl.'s Mot., Ex. 14; P.L. 108-199, 118 Stat 3;  H.R. Conf. Rep. No. 108-401 p. 1140.

4

must submit an Environmental Information Document (EID).[4]  *Id*. at ¶¶ 4, 7, 8.  The Kentucky

Division of Water has not yet submitted to EPA a complete grant application or EID for any of

the appropriated funds.  *Id*. at ¶ 11.  Accordingly, EPA has not yet awarded or decided whether to

award any of the aforementioned funds to Warren County Water District or any other entity.  *Id*.

    In EPA's 2005 Appropriation Act, Congress provided an additional $2,000,000 to "the

City of Bowling Green, Kentucky, for the South Central Kentucky Water Infrastructure

Project. . . ."[5]  EPA Headquarters finalized guidelines for the award of the fiscal year 2005 grants

on June 6, 2005.  *Id*. at ¶ 12.  EPA Region 4 has not yet received any information from the city of

Bowling Green or the Kentucky Division of Water concerning a formal application or a proposed

project.  *Id*. at ¶ 12.  EPA, thus, has not committed any of the funds at issue from the 2005

Appropriations Act.

    Consequently, EPA does not have any authority over the prospective applicants and their

intended projects.  The NEPA and NHPA process cannot commence until an actual application is

received, and it is only after approval and award of a grant that EPA is permitted to attach

conditions to the funds and impose obligations on the grantee.  *Id* at ¶ 11.

---

[4]  An EID contains information regarding the environmental impacts of the proposed project for
purposes of providing EPA with the necessary information to comply with the NEPA review
process.  Rayfield Decl., ¶ 4; 40 C.F.R. § 6.101(d).  According to EPA's NEPA regulations, the
EID "will be of sufficient scope to enable the Responsible Official to prepare an environmental
assessment . . . ."  40 C.F.R. § 6.101(d).  In addition, Region 4's "Special Appropriations Project
Procedures" provide for the EID to contain a certification from the State Historic Preservation
Officer (SHPO) stating that the project will not result in any impacts to historically significant
properties or that there is an adequate mitigation plan in place.  Rayfield Decl., ¶ 4.

[5]  Pls.' Ex. 14 references the Senate Report 108-353 from the Senate Committee on
Appropriations, however, the Conference Report accompanying the enacted appropriation makes
it clear that $2,000,000 was appropriated.  *See* P.L. 108-447, 118 Stat 2809; H.R. Conf. Rep. No.
108-792, p. 1590.

**B. HUD Funds Appropriated for Bowling Green, Kentucky (South Central Kentucky Training and Development Project).**

HUD's 2005 Appropriation Act[6] appropriated "$1,500,000 for the City of Bowling Green, Kentucky for purchasing equipment for the South Central Kentucky Training and Development Project."[7]  McNally Decl., ¶ 8.  On May 2, 2005, HUD sent a letter of invitation and grant application to Bowling Green, Kentucky inviting the city to apply for the funds appropriated in HUD's 2005 Appropriation Act.  *Id*. at ¶ 9.  Before HUD can take further action relating to the grant, the city is required to submit applications to both HUD's Congressional Grants Division and a designated HUD Field Environmental Officer.  *Id*. at ¶ 6.  At this time, HUD has not received an application from the city of Bowling Green for the appropriated funds.  *Id*. at ¶ 9.  Accordingly, HUD has not yet considered or approved the award at issue.  *Id*. at ¶ 10; *see also* ¶¶ 6, 7 (explaining the review process that will be performed by HUD if and when the city of Bowling Green submits its application).  As HUD has not received the necessary application for the appropriated funds or given such funds to the city, HUD does not possess the authority to dictate the activities of the city of Bowling Green in connection with the training center.  *Id*. at ¶ 11.

**IV.  Plaintiffs' Claims and Motion for Preliminary Injunction.**

On June 15, 2005, Plaintiffs filed a Complaint for declaratory and injunctive relief alleging that Defendants EPA and HUD violated the National Historic Preservation Act ("NHPA") and the National Environmental Policy Act ("NEPA").  Pls.' Compl. ¶¶ 1-39.

---

[6] Pls.' Mot., Ex. 15.

[7] The South Kentucky Training Development Project is the training center located at Transpark. Pls.' Compl., ¶ 9; Pls.' Mot., Ex. 15.

Specifically, Plaintiffs alleged Defendants EPA and HUD violated section 106 of the NHPA by

failing to:  identify and take into account the effects of the Transpark on historic properties; afford

the Advisory Council on Historic Preservation and the Kentucky State Historic Preservation

Officer an opportunity to comment on the effects of the Transpark on historic properties; and to

seek and consult with consulting parties and the public under 36 C.F.R. Part 800 regarding

properties that might be listed or eligible for listing on the National Register of Historic Places,

available alternatives to the action, and effects of the Transpark project prior to demolition

activities.  *Id*. at ¶ 27.  Secondly, Plaintiffs allege Defendants EPA and HUD violated section 106

of the NHPA by failing to exercise their authority to prevent or delay the destruction of historic

properties prior to compliance with the NHPA.  *Id.* at 31.  Plaintiffs also allege that  "the

demolition that has already occurred at the Transpark . . . violates Section 110(k) of the NHPA,

which prohibits federal assistance to projects that involve anticipatory demolition."  *Id.* at ¶ 32.

Finally, Plaintiff alleges Defendants EPA and HUD violated NEPA by failing to prepare an

Environmental Impact Statement ("EIS") for the Transpark project.  *Id.* at ¶ 39.

      Plaintiffs also filed a motion for preliminary injunction requesting that the Court to enjoin

Defendants from "providing funding to the [ITA] and its agents for [Transpark] activities."  Pls.'

Mot. at 1.  Plaintiffs stated they also:

> Seek a preliminary injunction ordering Defendants' compliance with the [NHPA]
> and [NEPA], including Defendants' prevention of further anticipatory demolition
> of eligible historic resources and irreparable injury to natural and cultural
> resources, such as prime farmland, wetlands, sinkholes and prehistoric Native
> American burial sites, from continuing excavation, demolition and construction
> and from any other irrevocable commitment of resources for the development of
> the Transpark until and unless the EPA and other federal Defendants have fully
> complied with statutory requirements under NEPA and NHPA.

Pls.' Mot. 1-2.

In response, EPA and HUD are filing a Motion to Dismiss and the instant Memorandum of Points and Authorities In Support thereof and in Response to Plaintiffs' Motion for Preliminary Injunction.

## STATUTORY BACKGROUND

### I. NEPA

The purpose and intent of NEPA is to focus the attention of the federal government and the public on a proposed action so that the consequences of the action can be studied before the action is implemented. 42 U.S.C. § 4321; 40 C.F.R. § 1501.10; *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 371 (1989). Regulations promulgated by the Council on Environmental Quality (CEQ), 40 C.F.R. §§ 1500–1508, provide guidance in the application of NEPA. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989). NEPA's mandate to federal agencies, is "essentially procedural . . . It is to insure a fully informed and well-considered decision . . . ." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978). While NEPA mandates the procedures by which federal agencies must consider the environmental impacts of their actions, it does not dictate the substantive results. *Robertson*, 490 U.S. at 350 (1989); *Strycker's Bay Neighborhood Council v. Karlen*, 444 U.S. 223, 227-28 (1980) (citing *Vermont Yankee Nuclear Power Corp*, 435 U.S at 558).

### II. NHPA

By enacting the NHPA, Congress directed federal agencies to: (1) consider the impact of federal undertakings on historic resources of national significance (section 106, 16 U.S.C. § 470f) and (2) assume responsibility for the preservation of historic resources that they own or control (section 110, 16 U.S.C. § 470h-2). The core of a federal agency's responsibilities under the

NHPA with regard to federal agency actions can be found in section 106 of the Act, which sets forth the responsibilities of a federal agency over a proposed federal or federally assisted "undertaking." 16 U.S.C. § 470f.[8]

The requirements set forth in section 106 of the NHPA are essentially procedural in nature. *National Min. Ass'n v. Fowler*, 324 F.3d 752, 755 (D.C. Cir. 2003); *United States v. 162.20 Acres of Land*, 639 F.2d 299, 302 (5th Cir. 1981) *cert. denied*, 454 U.S. 828 (1981) (The Act "neither . . . forbid[s] the destruction of historic sites, nor . . . command[s] their preservation."). Section 106 requires agency decision-makers to consider specified information concerning the effects of a federal undertaking on National Register-eligible resources prior to the agency's issuance of a final decision. Furthermore, as set forth in *Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750, 754-55 (D.C. Cir. 1995), the only activities invoking federal obligations under the NHPA include conducting an undertaking involving federal funding, or the issuance of a federal license. *See also National Min. Ass'n*, 324 F.3d at 754.

## STANDARD OF REVIEW

### I. Motion to Dismiss

---

[8] 16 U.S.C. § 470f provides:

> The head of any federal agency having direct or indirect jurisdiction over a proposed federal or federally assisted undertaking in any State and the head of any federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such federal agency shall afford the Advisory Council on Historic Preservation established under Title II of this Act a reasonable opportunity to comment with regard to such undertaking.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim if the court lacks jurisdiction over the subject matter of a claim. A party seeking federal court jurisdiction bears the burden of demonstrating that jurisdiction exists. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487 (D.C. Cir. 1984). The Supreme Court presumes that federal courts lack jurisdiction unless the contrary appears affirmatively from the record. *United States Dep't of Energy v. Ohio*, 503 U.S. 607. 614 (1992); *Renne v. Geary*, 501 U.S. 312, 315 (1991). As courts of limited jurisdiction, federal courts may only decide cases after the party asserting jurisdiction demonstrates that the dispute falls within the court's constitutional and statutory jurisdiction. *Rasul v. Bush*, 124 S. Ct. 2686, 2701 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by Constitution and statute")). "[I]n deciding a 12(b)(1) motion, it is well established that a court is not limited to the allegations in the complaint but may consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Bennett v. Ridge*, 321 F.Supp.2d 49, 52 (D.D.C. 2004); *Haase v. Sessions*, 835 F.2d 902, 905–906 (D.D.C. 1987) (holding that a court's consideration of materials outside the pleadings in deciding a 12(b)(1) motion does not require that the court treat the motion as one for summary judgment).

Federal Rule of Civil Procedure 12(b)(6) also forms a basis for dismissal of Plaintiffs' claims.[9] Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of

---

[9] Dismissal for failure to challenge a final agency action under the APA may be proper pursuant to both Rule 12(b)(6) and 12(b)(1). *See Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("[i]f there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA. Dismissal is therefore appropriate pursuant to 12(b)(6)"); *CropLife America v. Environmental Protection*

10

law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41 (1957)). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327 (quoting *Hishon*, 467 U.S. at 73). Thus, claims should be dismissed under Rule 12(b)(6) where, as here, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his legal claim which would entitle him to relief." *Conley*, 355 U.S. at 102.

## II. Preliminary Injunction

A preliminary injunction is an extraordinary remedy for which the plaintiff bears the burden of proving the prerequisites by clear and convincing evidence. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 441 (1974); *Fund for Animals v. Frizzell*, 530 F.2d 982, 986 (D.C. Cir. 1976).

In order to sustain a motion for preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), Plaintiffs bear the burden of proving four requisite factors are met. *Granny Goose Foods, Inc.*, 415 U.S. at 442-43; *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998). First, Plaintiffs must demonstrate a substantial likelihood of success on the merits. *Sorono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1317 (D.C. Cir. 1998); *Mova Pharmaceuticals*, 140 F.3d at 1066. Second, Plaintiffs must demonstrate that they will be irreparably injured if the Court does not issue a preliminary injunction. *Sorono Laboratories*, 158

---

*Agency*, 329 F.3d 876, 882 (D.C. Cir. 2003) ("In *Reliable*, we determined that the District Court lacked jurisdiction to review the Consumer Product Safety Commission's ("CPSC") process absent final agency action").

F.3d at 1317; *Mova Pharmaceuticals*, 140 F.3d at 1066.  Third, Plaintiffs must demonstrate that a preliminary injunction will not substantially injure another party.  *Sorono Laboratories*, 158 F.3d at 1317; *Mova Pharmaceuticals*, 140 F.3d at 1066.  This is a reflection of the fact that the Court is balancing the relative hardships of different parties in determining whether to issue a preliminary injunction.  *National Wildlife Fed'n v. Burford*, 835 F.2d 305, 318-19 (D.C. Cir. 1987).  Finally, Plaintiffs must demonstrate that a preliminary injunction would be in the public interest.  *Sorono Laboratories*, 158 F.3d at 1317-1318; *Mova Pharmaceuticals*, 140 F.3d at 1066.

## ARGUMENT

### I.  Plaintiffs' Complaint Should be Dismissed.

Dismissal of Plaintiffs' Complaint is appropriate, because Plaintiffs fail to identify any final agency action within the meaning of the APA.  Plaintiffs' Complaint should also be dismissed, because Plaintiffs' claims are not yet ripe and Plaintiffs lack standing to bring this matter.

### A.  Plaintiffs Fail to Identify Any Final Agency Action Taken by Defendants EPA and HUD.

The APA provides the only waiver of sovereign immunity available to Plaintiffs for their challenges to alleged federal actions.  Before the APA can be used as a basis for judicial review, Plaintiffs bear the burden of identifying a final agency action taken by Defendants EPA and HUD.  Because the appropriation of funds by Congress does not constitute final agency action and Defendants EPA and HUD have not approved any grant award of the appropriated funds, Plaintiffs have not met their necessary burden.

It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's

jurisdiction to entertain the suit.'" *United States v. Navajo Nation*, 537 U.S. 488, 123 S. Ct. 1079, 1089 (2003); *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  In determining when such consent is present, the Supreme Court has long held that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  *Mitchell*, 445 U.S. at 538 (quoting *United States v. King*, 395 U.S. 1, 4 (1969)); accord *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd*., 527 U.S. 666, 682 (1999) and *United States v. Nordic Village, Inc*., 503 U.S. 30, 33-34 (1992).

Plaintiffs allege jurisdiction on the basis of 5 U.S.C. § 704 (APA), 29 U.S.C § 1331 (federal question jurisdiction)[10], 28 U.S.C. §§ 1361 (mandamus statute) and 2201, 2202 (declaratory judgment).  Pls.' Compl. ¶ 2.  Section 1331, however, does not waive the United States' sovereign immunity.  *Benvenuti v. Department of Defense*, 587 F.Supp. 348, 352 (D.D.C. 1984).  Likewise, § 1361 does not constitute a waiver of sovereign immunity.  *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) ("It is well settled that this statute [§ 1361] does not by itself waive sovereign immunity.") (citations omitted). Plaintiffs' jurisdictional allegations also cite to the Declaratory Judgment Act.  However, that Act, 28 U.S.C. §§ 2201, 2202 does not waive sovereign immunity.  *United States v. King*, 395 U.S. 1, 5 (1969). *See also Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1230 (1st Cir. 1996) ("The government correctly argues that [plaintiff] wrongly relies on the Declaratory Judgment Act . . . to constitute a waiver of sovereign immunity because the Act neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief.") (internal quotation omitted).  Accordingly, the APA, 5 U.S.C. §§

---

[10] Presumably, Plaintiffs intend to reference 5 U.S.C. § 706 and 28 U.S.C § 1331.

701–706 provides the only waiver of sovereign immunity available to Plaintiffs.

Section 704 of the APA defines the limits of this waiver of sovereign immunity. It provides for judicial review of only two categories of administrative action: (1) "[a]gency action made reviewable by statute" and (2) "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Because the substantive statutes under which Plaintiffs bring suit do not provide Plaintiffs a private right of action, they must rely on the second category of section 704 for the waiver of sovereign immunity. Consequently, Plaintiffs have the burden of establishing "final agency action for which there is no other adequate remedy in a court." *Id.*

Further, Plaintiffs are not permitted to make generalized attacks upon actions undertaken by Defendants EPA and HUD. "Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Norton v. Southern Utah Wilderness Alliance*, 124 S.Ct. 2373, 2380 (2004) (citations omitted). The *Norton* Court noted that these must be "circumscribed, discrete agency actions" and may include "five categories of decisions made or outcomes implemented by an agency – 'agency rule, order, license, sanction or relief.'" *Id.* at 2378–80 (citing 5 U.S.C. § 551(13)). In determining whether the agency action is final, the Court should consider "whether the agency's position is definitive and whether it has a direct and immediate . . . effect on the day-to-day business of the parties." *IPAA v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2000)(internal quotations omitted). "Agency action is final when it 'imposes an obligation, denies a right, or fixes some legal relationship.'" *Action on Smoking and Health v. Dep't of Labor*, 28 F.3d 162, 165 (D.C. Cir. 1994), (*quoting NRDC v. United Stated Nuclear Regulatory Comm'n*, 680 F.2d 810, 815 (D.C. Cir. 1982)).

Plaintiffs' Complaint brings claims against Defendants EPA and HUD, because of

14

Congressional appropriations made for the Warren County Water District and the city of Bowling Green. Pls.' Compl. ¶ 8. The mere enactment of an Appropriation Act by Congress, however, cannot be considered final agency action. The APA expressly excludes Congress from the definition of agency. Pursuant to the APA, an agency is "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include . . . Congress." 5 U.S.C.§§ 701(b)(1), 551(1).

Furthermore, this Court recently examined the issue of Congressional appropriations in the context of NEPA. *See Citizens Alert Regarding the Environment v. EPA*, 259 F.Supp.2d 9 (D.D.C. 2003) ("*CARE*") *aff'd* 2004 WL 1336644 (D.C. Cir. June 15, 2004). The *CARE* plaintiffs contended that because EPA's Appropriation Act appropriated funds for a township's sewer project, the project could not go forward without the completion of a NEPA review. *Id*. at 12. The *CARE* court rejected the plaintiffs' claim finding that although the project might be the future recipient of appropriated funds, it was not necessary to enjoin the project for NEPA analysis to be performed. *CARE*, 259 F.Supp.2d at 20.[11] *See also ACORN v. SEPTA*, 462 F.Supp. 879, 884 (E.D. Pa. 1978), *aff'd without opinion*, 605 F.2d 1194 (3rd Cir. 1978) (Dismissing the plaintiffs' complaint for lack of subject matter jurisdiction because no final decision had been made on an application for a federal urban mass transit grant.).[12] Notably, the

---

[11] The *CARE* court concluded that EPA's actions did not constitute a "major federal action" pursuant to NEPA, nonetheless its analysis applies equally to final agency action within the meaning of the APA. *See Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 197, n. 7 (D.C. Cir. 2003) ("This court has expressly concluded that the requisite final agency action . . . of the APA is the "'major Federal action [] significantly affecting the quality of the human environment'" as required by NEPA.) (citations omitted).

[12] The *ACORN* court's decision relied in part on a case from this Court finding "until the [federal agency] makes a final decision on an application for a federal urban mass transportation grant,

*CARE* and *ACORN* courts found judicial review to be inappropriate, even though the grantees had already submitted applications for the grants at issue and the respective federal agencies were engaged in considering and reviewing the applications. *CARE*, 259 F.Supp.2d at 14; *ACORN*, 462 F.Supp. at 884. In this case, however, neither the Warren County Water District nor the city of Bowling Green have applied for the appropriated funds. Rayfield Decl., ¶ 11, 12; McNally ¶ 10. Since no grant applications have been received Defendants EPA and HUD have not and cannot yet commence any sort of review of the grants at issue, Plaintiffs certainly cannot identify any final agency action taken by Defendants EPA and HUD.

Plaintiffs also allege that "the Transpark has already benefitted from, and is based on pervasive federal action in the form of financial assistance from EPA [and] HUD. . . ." *See* Pls.' Compl., ¶ 9. Plaintiffs' suggestion fails to identify any final agency action, because Defendants EPA and HUD have not given any of the funds at issue to any entity at Transpark. Contrary to Plaintiffs' assertions that HUD funded the training center at Transpark, Defendant HUD has not considered or approved any award of the appropriated funds. McNally Decl., ¶ 10. Consequently, the city of Bowling Green has not received the appropriated funds from HUD. *Id.* at ¶ 11. Plaintiffs concede that Defendant EPA has not yet awarded the appropriated funds. *See* Pls.' Mot. at 7-8; *see also* Rayfield Decl., ¶¶ 11, 12 (Clarifying that the grant applications have not yet been submitted for the appropriated funds. Thus, Plaintiffs' assertion that the applications are pending is incorrect.). Accordingly, neither the Warren County Water District nor the city of Bowling Green have received the funds at issue from Defendant EPA. Rayfield Decl., ¶¶ 11, 12.

---

there is no final agency action, the dispute is not ripe for adjudication, and the court lacks jurisdiction." *See* 462 F.Supp. at 884 (discussing *Hudson v. Washington Metropolitan Transit Authority*, Civ. No. 75-0360 (D.D.C. July 8, 1976)).

In other words, Plaintiffs have not identified any funding from Defendants EPA and HUD that has benefitted the Transpark site.

Plaintiffs fail to show any agency actions taken by Defendants EPA and HUD that could constitute part of an agency rule, order, license, sanction or relief; consequently, their Complaint should be dismissed. *See Norton*, 124 S.Ct. at 2378 (citing 5 U.S.C. § 551(13)).

### B. Plaintiffs' Claims are Not Yet Ripe.

Likewise, for the same reasons set forth above, Plaintiffs' suit is not ripe; because the grantees have yet to submit applications for the appropriated funds and thus, Defendants EPA and HUD have not taken final agency action regarding the grants. Consequently, Plaintiffs have not established they have a jurisdictional basis for judicial review of their claims at this time.

Plaintiffs' claims are not ripe for review because "the existence of the dispute itself hangs on future contingencies that may or may not occur." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985) (claim not ripe where it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all")). The Supreme Court in *Abbott Laboratories v. Gardner*, explained that the "basic rationale" of the ripeness doctrine as applied to review of administrative action:

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

387 U.S. 136, 148-49 (1967) (emphasis added) *rev'd on other grounds Califano v. Saunders*, 430 U.S. 99 (1976); *see also Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732–33 (1998).

As Defendants EPA and HUD detailed above, none of the prospective grantees have completed the necessary application process for the appropriated funds.  Despite this fact, Plaintiffs seek to involve the Court in speculation and ask for judicial intervention prior to the issuance of final agency decisions by Defendants EPA and HUD regarding the prospective applications.  Furthermore, Plaintiffs' current suit contemplates both that the grant applications will be submitted for the appropriated funds and that Plaintiffs will be dissatisfied with the result of any future actions taken by Defendants EPA and HUD upon the review and consideration of those applications.  At this juncture, no one – not even Plaintiffs – can predict if these events will actually occur.[13]  Accordingly, Plaintiffs' suit is "premised upon contingent future events that may not occur as anticipated, or indeed may not occur at all" and should be dismissed.  *Texas*, 523 U.S. at 300.

### C.  Plaintiffs Lack Standing.

Plaintiffs' Complaint also fails to explain how their injuries are caused by Defendants EPA and HUD or how their alleged injuries could be redressed by a ruling in their favor – nor can they do so given the current factual scenario.  Therefore, Plaintiffs lack standing to bring this suit.

Standing is a jurisdictional issue deriving from the requirement of a live case or controversy pursuant to Article III of the Constitution.  *American Library Ass'n v. F.C.C.*, 401 F.3d 489, 492 (D.C. Cir. 2005); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).  In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme

---

[13] Notably, Plaintiffs' motion includes their allegations regarding local decision-makers' rejections of federal funds for the Transpark project.  *See* Pls.' Mot. at 9, 17.  Given such assertions, Plaintiffs can hardly claim that it is certain that the non-Federal decision-makers will decide to complete the application process necessary to obtain federal funds.

Court explained that "the irreducible constitutional minimum" of standing contains three elements. First, the plaintiff must have suffered an "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" 504 U.S. at 560; *see also Friends of the Earth, Inc.*, 528 U.S. at 180-81 (2000). Second, there must be a causal connection between the injury and the conduct complained of, *i.e.*, the injury has to be fairly traceable to the challenged action of the defendant. *Lujan*, 504 U.S. at 560-61. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*. As the Supreme Court noted in *Lujan*, the elements of standing are "not mere pleading requirements but rather an indispensable part of [Plaintiffs'] case." *Id*. at 561. Accordingly, Plaintiffs must allege sufficient facts to satisfy these three elements. *National Ass'n of Home Builders v. Norton*, 298 F.Supp.2d 68, 80 (D.D.C. 2003) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998)).

Whether Plaintiffs have alleged an injury cognizable under Article III is only the first inquiry in assessing standing; the existence of an injury does not alone provide standing. Plaintiffs must also demonstrate that the alleged injury was caused by the action complained of and that the requested relief would redress that alleged injury. Plaintiffs need not demonstrate causation and redressability to a certainty. *National Wildlife Fed'n v. Hodel*, 839 F.2d 694, 705 (D.C. Cir. 1988) (citations omitted). Plaintiffs should, however, "precisely trace the connection between injury and relief" because it is not up to a court to construct a "plausible scenario whereby an order of this court might provide relief for injuries not specifically pleaded." *Dellums v. U.S. Nuclear Regulatory Comm'n*, 863 F.2d 968, 974-75 (D.C. Cir. 1988). Moreover, Plaintiffs must offer more than mere speculation to support a finding of redressability. *Community for*

19

*Creative Non-Violence v. Pierce*, 814 F.2d 663, 669-70 (D.C. Cir. 1987). Thus, Plaintiffs must

demonstrate "that a decision in their favor 'will produce tangible, meaningful results in the real

world.'" *Pritikin v. Dep't of Energy*, 254 F.3d 791, 799 (9th Cir. 2001) (quoting *Common Cause*

*v. Dep't of Energy*, 702 F.2d 245, 254 (D.C. Cir. 1983)).

Here, Plaintiffs' Complaint fails to meet the necessary causation and redressability

requirements. Plaintiffs' Complaint centers on alleged injuries that stem from the construction

occurring at the Transpark site. As detailed above, Defendants EPA and HUD have not provided

any of the funding for this construction nor do they have any authority to dictate the activities of

the prospective grant applicants. Therefore, Plaintiffs have failed the causation requirement of

standing.

Moreover, if Plaintiffs' prayer for relief were granted and Defendants EPA and HUD were

ordered by this Court to comply with NEPA and the NHPA, it is incomprehensible how such

compliance could have any effect on the Transpark project, a project in which Defendants EPA

and HUD are not the decision-makers. As described above, the project's local decision-makers

are currently proceeding without federal funding from either Defendant, and Defendants have no

authority to require any modification in those activities (or that those activities cease).

Furthermore, even if Defendants EPA and HUD were ordered to cease all future funding of the

appropriations for the Warren County Water District and the city of Bowling Green that would

not prevent the ITA from completing the demolition of structures at 839 Mizpah Road and

continuing construction of the Transpark. *See* Hizer Decl., ¶ 19 (explaining the ITA's decision to

undertake such actions is not contingent upon the ITA receiving funding from EPA, HUD or any

other federal source). Thus, Plaintiffs fail to show in any way "that a decision in their favor

would produce tangible, meaningful results." *Pritikin*, 254 F.3d at 799 (internal quotation omitted). Consequently, Plaintiffs' Complaint should also be dismissed for failure to show standing. *See Coalition for Underground Expansion*, 333 F.3d at 196 (Affirming dismissal of plaintiffs' NEPA and NHPA claims, where the trial court found "the myriad of injuries alleged by plaintiffs are in no respect caused by any action or inaction of the federal defendants who remain in the case and could not be redressed by any conceivable ruling in plaintiffs' favor.").

**II. Plaintiffs Fail to Meet Standards for Preliminary Injunction**.

Plaintiffs also fail to meet the requisite standards to obtain the extraordinary relief of a preliminary injunction. *Fund for Animals v. Norton*, — F.Supp.2d —, 2005 WL 1400180 *6 (D.D.C. 2005) ("Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly.").

**A. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims.**

As Defendants EPA and HUD explained above, the Court is unlikely to reach the merits of Plaintiffs' claims, because Plaintiffs have not met their burden of establishing jurisdiction. If the Court were to consider the merits, even a cursory glance at Plaintiffs' Complaint shows that Plaintiffs' claims are unlikely to succeed. In addition to all of the arguments raised by Defendants EPA and HUD above, Plaintiffs' allegation that Defendants EPA and HUD violated sections 106 and 110(k) of the NHPA also fails. Pls.' Compl. ¶ 23-33. 106 and 110(k) of the NHPA. Pls.' Compl. ¶¶ 23-33 and Prayer for Relief. Section 106, however, applies prior to the approval of the expenditure of federal funds or prior to the issuance of a federal license for an undertaking. Plaintiffs' complaint fails to identify any federal action (because there has been none) approving the expenditure of federal funds or issuing any federal license in violation of this

provision.  In fact, as detailed above, the Transpark project developers have not yet applied for any federal funding.  Similarly, NHPA section 110(k) relates, in relevant part, to federal funding decisions in connection with applicants who have intentionally significantly adversely affected historic properties with the intent to avoid the requirements of section 106.  Notwithstanding Plaintiffs' allegation that the Transpark project developers are engaging in activities that amount to anticipatory demolition of historic properties, their complaint fails to identify any federal funding decision on the part of either Defendant (again, because no such decision has been made, or applied for) in violation of section 110(k).  Section 110(k) is focused on the grant award decision and does not provide Defendants any pre-award (or, for that matter, pre-grant application) authority to condition or halt project activities.  Plaintiffs also allege Defendants EPA and HUD violated NEPA by failing to prepare an EIS.  Pls.' Compl. ¶ 38.  As Plaintiffs have failed to identify any final agency actions taken by Defendants EPA and HUD, their NEPA claim necessarily fails as well.  *See Coalition for Underground Expansion*, 333 F.3d at 197, n. 7.

## B.  Plaintiffs Cannot Prove Irreparable Injury Will Occur.

Plaintiffs also fail to show that they would be irreparably injured if their motion for preliminary injunction was denied.  Contrary to Plaintiffs' suggestion, in *Amoco Prod. Co. v. Village of Gambell*, the Supreme Court explicitly rejected a presumption of irreparable injury.  480 U.S. 531, 545 (1987).  The *Amoco Prod. Co.* Court *reversed* a lower court ruling that "[i]rreparable damage is presumed when an agency fails to evaluate thoroughly the environmental impact of a proposed action."  *Id*. at 544-45.  The Court explained that "this presumption is contrary to traditional equitable principles and has no basis in ANILCA.  Moreover, the

environment can be fully protected without this presumption." *Id*. at 545.[14]  *See also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982) (reversing lower court decision to enjoin actions in violation of Clean Water Act without consideration of the balance of hardships and the public interest).  Accordingly, Plaintiffs must come forward with proof of harm; they cannot merely rest on unsubstantiated allegations.

Plaintiffs failure to demonstrate irreparable harm is also sufficient grounds by itself for the Court to deny Plaintiffs' motion.  *Smith, Bucklin & Assoc. v. Sonntag*, 83 F.3d 476, 477 (D.C. Cir. 1996) (affirming district court refusal to issue preliminary injunction where plaintiff failed to demonstrate irreparable harm); *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("Because CityFed has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting CityFed's request [for a preliminary injunction].").

Plaintiffs assert that a preliminary injunction is necessary "to prevent the Defendants from funding or entertaining requests for further building demolition, destruction of cultural landscapes, or construction of water/sewer/road infrastructure prior to compliance with NEPA

---

[14]    The *Amoco Prod. Co.* case involved claims brought pursuant to the Alaska National Interest Lands Conservation Act.  480 U.S. at 534.  The case, however, involved issues related to the preparation of EIS under NEPA.  *See People of the Village of Gambell v. Hodel*, 774 F.2d 1414, 1420-21 (9th Cir. 1985), *rev'd in part*, 480 U.S. 531 (1987).  As a result, in NEPA cases since the *Amoco Prod. Co.* decision, courts have cited it for the proposition that irreparable injury, the balance of hardships, and the public interest must be considered when deciding whether to issue a preliminary injunction.  *See, e.g, Sierra Club v. Watkins*, 808 F.Supp. 852, 875 (D.D.C. 1991).  In any event, courts consistently apply the four preliminary injunction factors in NEPA and NHPA cases.  *See, e.g., Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 151 (D.C. Cir. 1985); *Fund for Animals*, 530 F.2d at 986; *Valley Community Preservation Com'n v. Mineta*, 231 F.Supp.2d 23, 31-32 (D.D.C. 2002); *West Alabama Quality of Life Coalition v. U.S. Federal Highway Admin.*, 302 F.Supp.2d 672, 678 (S.D. Tex. 2004).

and NHPA." Pls.' Mot. at 13. In making this allegation, Plaintiffs have completely failed to offer any evidence that demonstrates that Defendants EPA and HUD will not follow the established agency procedures to reach a sound final agency decision, including compliance with all applicable laws, regarding any grant applications that may be submitted. Plaintiffs' suggestion that Defendants EPA and HUD will violate NEPA and the NHPA in making their decisions, if and when the grantees apply for the appropriated funds is nothing more than mere speculation at best.

Furthermore, Plaintiffs' claim that the appropriated grants funded past and ongoing demolition and activities at the Transpark site is untrue. McNally Decl., ¶ 10; Rayfield Decl., ¶¶ 11, 12. The EPA and HUD appropriations at issue have – in no way – funded any of the activities Plaintiffs claim to be harmful.

Moreover, it is clear that a preliminary injunction would have no discernible effect on Plaintiffs' major cause of concern, the planned demolitions of structures at 839 Mizpah Road and continuing construction of the Transpark. *See* Pls.' Mot. at 2-5. Simply put, Defendants EPA and HUD lack the authority to dictate the actions taken by the ITA, the prospective grant applicants, or any other entities at the Transpark site. Rayfield Decl., ¶ 11; McNally Decl., ¶ 11. *See also* Hizer Decl., ¶ 19 (explaining the ITA's decision to undertake such actions is not contingent upon the ITA receiving funding from EPA, HUD or any other federal source). In other words, Plaintiffs have not established that there is a concrete threat of irreparable harm in the absence of a preliminary injunction against Defendants EPA and HUD.

### C.  An Injunction Would Not Serve the Public Interest.

Finally, the balance of injuries in this case weighs in favor of Defendants EPA and HUD

and the public interest.  When injunctive relief would harm the public interest, the Court may

withhold the relief, even if doing so would burden or cause irreparable injury to the movant.

*Weinberger v. Romero Barcelo*, 456 U.S. 305, 312-13(1982); *Yakus v. United States*, 321 U.S.

414, 440 (1944).  As explained above, the APA prohibits the premature review of agency

decisions.  In this case, Plaintiffs failed to identify any final agency action taken by Defendants

EPA and HUD.  Thus, an injunction would further pointless litigation and disrupt the processes

established by Defendants EPA and HUD for review of grant applications.  *See* Rayfield Decl., ¶

4, 9, 10; McNally Decl., ¶ 6, 7.  Furthermore, as Defendants EPA and HUD lack the authority to

interject themselves into the local decision-making concerning the Transpark, ordering the

agencies to undertake an exhaustive and costly environmental review is not in the public interest.

In addition, any consideration of the public interest must also take into account the public support

for the Transpark.  *See* Pls.' Compl., ¶ 6 (explaining that the Transpark project has been

supported by the local governments of Bowling Green and Warren County, Kentucky).  Finally, if

the Court could enjoin the Transpark project, which Defendants EPA and HUD argue it cannot,

the public interest would not be served because such an injunction would be in direct violation of

the economic development that the local decision-makers in Bowling Green, Kentucky and

Warren County, Kentucky have determined is in the best interest of their community.

Accordingly, the public interest favors denial of Plaintiffs' motion.

## CONCLUSION

Based on the aforementioned, Defendants EPA and HUD respectfully request that their

motion to dismiss be granted and Plaintiffs' motion for preliminary injunction be denied.

Respectfully submitted,

25

KELLY A. JOHNSON
Acting Assistant Attorney General
United States Department of Justice


_____/s/ Sara E. Culley_____

Dated this 27th day of June, 2005.     SARA E. CULLEY (K.S. Bar No. 20898)
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Facsimile: (202) 305-0267

Of Counsel:

Marilyn J. Kuray, Esq.
Environmental Protection Agency
Office of General Counsel
Tel: (202) 564-3449

Stacey E. Singleton, Esq.
Department of Housing and Urban Development
Tel: (202) 708-0614

26