UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KARST ENVIRONMENTAL EDUCATION )
AND PROTECTION, INC. et al. )
)
       Plaintiffs, )
)
)
U.S. ENVIRONMENTAL PROTECTION )
AGENCY et al. )
)
       Defendants, )       No. 1:05-cv-01190-RMU
————————————————— )
)
INTER-MODAL TRANSPORTATION )
AUTHORITY, INC; FISCAL COURT OF )
WARREN COUNTY, KENTUCKY; and )
BOARD OF COMMISSIONERS OF CITY )
OF BOWLING GREEN, KENTUCKY )
)
       Intervenors. )
————————————————— )

## MOTION FOR LEAVE TO INTERVENE AS DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Come now the Intervenors/Applicants, Inter-Modal Transportation Authority, Inc.; Fiscal

Court of Warren County, Kentucky; and Board of Commissioners of City of Bowling Green,

Kentucky, by and through counsel, and request entry of an order pursuant to Fed. R. Civ. P. 24

allowing them to intervene as defendants in this action. As grounds for this motion, the

Intervenors/Applicants submit herewith a memorandum of points and authorities, which is

hereby incorporated herein by reference. Intervenors/Applicants have filed this motion to

intervene before an answer would have been due had plaintiffs included the

Intervenors/Applicants as defendants in the initial complaint. Intervenors intend to file a

responsive pleading in the form of either an answer or a motion to dismiss prior to the expiration

RECEIVED

JUN 2 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

of the time allotted by the rules, or within the timeframe ordered by this Court. Intervenors also intend to respond to the Motion for Preliminary Injunction filed by Plaintiffs.

WHEREFORE the Intervenors/Applicants, Inter-Modal Transportation Authority, Inc.; Fiscal Court of Warren County, Kentucky; and Board of Commissioners of City of Bowling Green, Kentucky, request entry of an order allowing them to intervene as defendants in this action.

## POINTS AND AUTHORITIES

## I.  INTRODUCTION

By this motion the Inter-Modal Transportation Authority, Inc. ("ITA"), the fiscal Court of Warren County, Kentucky (the "County"), and the Board of Commissioners of the City of Bowling Green, Kentucky (the "City") (collectively the "Intervenors") seek leave to intervene in the above-captioned action.  The Intervenors are the owners and developers of an industrial park being developed in the City of Bowling Green, Kentucky known as the Kentucky Tri-Modal Transpark, or simply the Transpark.  The ITA is an agent of the County and is the owner of the land where the Transpark is being developed; the City and the County have guaranteed a bond issue to finance the acquisition of the land and the construction of the infrastructure necessary to develop the land into a business and industrial park.  In the making since 1998, the Transpark is a vital part of the economic future of the City and surrounding region.

The plaintiffs in this action contend that the U.S. Environmental Protection Agency ("EPA"), the U.S. Department of Housing and Urban Development ("HUD"), and the Tennessee Valley Authority ("TVA") (collectively the "federal defendants") each have violated various provisions of the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA") by virtue of their providing federal assistance to certain aspects of the Transpark development project.  In order to remedy these purported violations of federal law, the plaintiffs seek declaratory and injunctive relief, including a preliminary injunction that would have the effect of halting any further development activities associated with the Transpark.

Thus, while EPA, HUD, and TVA have been named as defendants, this action is, in reality, a collateral attack on the Transpark project and the Intervenors' interests.  By seeking orders that would derail or, in the very least, delay the Transpark project, the plaintiffs seek relief that would directly and substantially affect the interests of the Intervenors.  For example, should

3

the plaintiffs prevail the ITA would be unable to raise sufficient funds from the development and sale of property encompassed by the Transpark, in order to pay back industrial revenue bonds issued for the project, while the City and the County each would be required to pay from their general funds the amounts due on those bonds that have been sold to finance the Transpark. Success by the plaintiffs would also cause the City and the County to lose substantial tax revenue that would be generated by the location of industries in the Transpark, which is anticipated to substantially increase the tax base and generate hundreds of needed jobs for local residents.

In short, though not named as defendants by the plaintiffs, the Intervenors are the real parties in interest to this action. Accordingly, ITA, the County and the City dispute the various contentions made by the plaintiffs in their pleadings and seek leave to intervene in order to protect their interests.

## II. BACKGROUND

The City of Bowling Green is the fifth largest city in Kentucky and is located in Warren County, Kentucky, a political subdivision of Kentucky. In 1998, the Kentucky General Assembly granted to the County the sum of $6,000,000 for the purpose of evaluating and developing an industrial park. Shortly thereafter the County formed the Inter-Modal Transportation Authority, Inc., a non-stock, non-profit corporation, to act as the County's agency and instrumentality in acquiring and financing the project. The facility envisioned by the County is known as the Kentucky Tri-Modal Transpark, or the Transpark. The Transpark is an intermodal commerce distribution center and industrial park, and is being financed through a bond issue by the County. Pursuant to a lease agreement between ITA and the County, ITA is required to pay to the County the amounts necessary to pay the bonds. The business plan developed by the County with its consultants provided for the development of the Transpark in separate phases or stages. Phase I of the development includes the purchase and development of

4

approximately 900 acres of land and the development of that land as a business or industrial park. The project presently is in the first phase of development. Specifically, to date the ITA has utilized a portion of the bond issue to acquire approximately 800 acres of land and to commence the installation of the infrastructure of Phase I of the project. Bowling Green Metalforming, LLC, has agreed to locate an industrial plant on the property acquired by ITA. All of the land currently comprising Phase I of the Transpark is located in the corporate limits of the City of Bowling Green. The Transpark also is in the process of attracting other industries to join the project. The first phase of the development does not include the construction of an airport, although the Bowling Green – Warren County Airport Board is looking into replacing the existing airport with a new regional airport to be located near the Transpark.

The efforts to develop the Transpark are supported by neighboring counties and municipalities, who have pledged to bear approximately 35% of the financial burden of the project in the event it is not self-supporting as projected. Pursuant to an agreement between the City and the County, the remaining 65% of the financial burden of the project, in the event it is not self-supporting, will be borne equally by the City and the County.

## III.    ARGUMENT

The relief sought by the plaintiffs in this case will have direct, immediate, and harmful effects upon the interests of the Intervenors. Accordingly, ITA, the County and the City are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Alternatively, ITA, the County and the City should be permitted to intervene in this action pursuant to Rule 24(b).

## A.    ITA, THE COUNTY, AND THE CITY ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT IN THIS ACTION

Federal Rule of Civil Procedure 24(a) ("Rule 24") governs Intervention of Right:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Rule 24(a)(2) has been interpreted to encompass four elements that must be met to warrant intervention as of right. The Fund for Animals, Inc., et al. v. Norton, 322 F.3d 728 (D.C. Cir. 2003). The four elements are: (1) the application for intervention must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the transaction; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. Id. at 731. The U.S. Court of Appeals for the District of Columbia Circuit also requires that, "in addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that is has standing under Article III of the Constitution." Id. at 731-2. While establishing standing alone will not entitle a party to intervene, a party that

satisfies the requirements of Rule 24(a) will also satisfy the requirements of standing under Article III. <u>Environmental Defense v. Leavitt</u>, 329 F. Supp. 2d 55, 66 n.7 (D.D.C. 2004). Finally, while the standards set forth in Rule 24(a) are rigorous, courts have consistently construed Rule 24 "broadly in favor of applicants for intervention." <u>Greene v. United States</u>, 996 F.2d 973, 976 (9th Cir. 1993); <u>see also</u> <u>Southwest Center for Biological Diversity v. Berg</u>, 268 F.3d 810 (9th Cir. 2001); <u>Federal Savings and Loan Insurance Corporation v. Falls Chase Special Taxing District</u>, 983 F.2d 211 (11th Cir. 1993).

As set forth below, the motion by ITA, the County, and the City to intervene as of right should be granted because the motion is timely and asserts a protected interest in the subject of the present action that, as a practical matter, will be impaired by the disposition of this action. Furthermore, the interests of the Intervenors are not adequately represented by the federal defendants.

1.    <u>The Motion to Intervene is Timely</u>

All motions to intervene under Rule 24 must be timely. Fed. R. Civ. P. 24. The D.C. Circuit has stated that the "[e]valuation of the timeliness of a motion to intervene lies within the sound discretion of the District Court." <u>Acree, et al. v. Republic of Iraq et al.</u>, 370 F.3d 41, 49 (D.C. Cir. 2004). Courts have routinely found a motion to intervene to be timely where such motion was filed at the outset of the proceedings before the defendant had even filed an answer. <u>See, e.g., Fund for Animals</u>, 322 F.3d at 735; <u>Northwest Forest Resource Council v. Glickman</u>, 82 F.3d 825, 837 (9th Cir. 1996); <u>Sierra Club v. U.S.E.P.A.</u>, 995 F.2d 1478, 1481 (9th Cir. 1993).

The motion to intervene filed herewith by ITA, the County and the City is, without question, timely. It was filed at the outset of these proceedings, approximately one week after the complaint was filed. Moreover, the federal defendants have not yet made an appearance or

filed an answer. ITA, the County, and the City have not delayed in filing the motion to intervene and, accordingly, the rights of the existing parties will not be unduly prejudiced, nor will they experience any delays in the disposition of this case as a result of the intervention. Therefore, the instant motion to intervene is timely.

2.    The City, the County and the ITA Have an Interest Relating to the Property or Transaction that is the Subject of the Action

Under Rule 24, an applicant seeking intervention as of right must assert "an interest relating to the property or transaction which is the subject of the action. . . ." Fed. R. Civ. P. 24(a)(2). Parties seeking intervention under Rule 24 must also satisfy applicable standing requirements. As the D.C. Circuit explained recently: "[t]o establish standing under Article III, a prospective intervenor . . . must show:  (1) injury-in-fact, (2) causation, and (3) redressability." Fund for Animals, 322 F.3d at 732-33.

ITA, the City and the County each satisfy these requirements for standing and, accordingly, are entitled to intervene by right.  Specifically, should the plaintiffs be able to proceed with, and perhaps ultimately succeed in, their action against the federal defendants, the future viability of the Transpark project could be called into question.  Such an outcome would have serious impacts on the further development of the Transpark and ITA's ability to attract additional industries to the park.  Thus, should the plaintiffs prevail in the instant action, particularly with regard to the preliminary injunction they seek, the Intervenors will suffer immediate, concrete injuries.  Such injuries will include:

- ITA will be unable to generate funds from the sale or lease of the property it has acquired and will be unable to pay to Warren County the amounts necessary to meet the payments on the bond issue;

- Warren County, as a guarantor of the bond issue, will be required to pay approximately 32.5% of the bond issue from its general funds if the ITA is unable to generate funds through the sale of property the ITA has purchased;

- The City of Bowling Green, as a guarantor of the bond issue, will be required to pay approximately 32.5% of the bond issue from its general funds if the ITA is unable to generate funds through the sale of property the ITA has purchased;

- The ITA will lose grants that have been allocated by the Commonwealth of Kentucky for further development of the project if it is unable to continue with development of the project;

- Warren County's bond rating, which affects its ability to issue bonds and the rates it is required to pay on money borrowed through bond issues, will be adversely affected; and

- Both the City and the County will lose tax revenues that would flow from development of the Transpark by virtue of the location of industries in the Transpark, which would substantially increase the tax base and generate hundreds of jobs for local residents.

The interests at stake and the injuries to be suffered in this case are akin to those recently found by the D.C. Circuit to be sufficient in establishing the requisite standing and warranting intervention in The Fund for Animals, Inc., et al. v. Norton, 322 F.3d 728 (D.C. Cir. 2003). In that case, the Natural Resources Department ("NRD") of the government of Mongolia was found to be entitled to intervene as of right where an action brought by various wildlife conservation organizations against the Department of Interior ("DOI") under the federal Endangered Species Act would have required DOI to prohibit the importation of threatened species that are taken as trophies as part of a significant sport hunting industry in Mongolia. 332 F.3d at 730. The D.C.

Circuit found that the economic consequences that would flow from an outcome favorable to the

plaintiffs were sufficient to establish standing and warrant intervention by the NRD as a

defendant. Specifically, the court found that:

> The threatened loss of tourist dollars, and the consequent reduction
> in funding for Mongolia's conservation program, constitute a
> concrete and imminent injury. This injury is fairly traceable to the
> regulatory action – the placement of the [animal species] on the
> endangered list and the cancellation of import permits – that
> [plaintiff] seeks in the underlying lawsuit. And it is likely that a
> decision favorable to the NRD would prevent that loss from
> occurring.

322 F.3d at 733.

In the case at bar the action being pursued by the plaintiffs threatens the ability of the

ITA to market its real property to additional purchasers , complete the development of the

project, and make the project economically self-sufficient (including the repayment of industrial

revenue bonds). In addition, should the plaintiffs prevail the City and County each would, in

turn, be deprived of tax revenues generated by a completed project and be forced to pay back the

bonds from their general funds. Such injuries are concrete and imminent, and are fairly traceable

to the action being maintained by the plaintiffs in this case. Granting intervention as of right to

the ITA, the County, and the City and allowing them to pursue a favorable decision in this case

would prevent such losses from occurring. Accordingly, each of the Intervenors possesses a

protectable interest relating to the property or transaction which is the subject of the plaintiffs'

action and, as such, possesses the standing necessary to proceed pursuant to Article III.

3.    <u>The ITA, the City and the County Are So Situated that the Disposition of the
Instant Action May, as a Practical Matter, Impair or Impede Their Ability to
Protect Their Interest.</u>

Unless the ITA, the City and the County are allowed to intervene, the disposition of this

action will impair their ability to protect their interests in the continued development of the

Transpark. As the D.C. Circuit has noted, this third prong of the test for intervention as of right

10

under Rule 24 focuses on the "practical consequences" of denying intervention. Fund for Animals, 322 F.3d at 735. For example, in Southern Utah Wilderness Alliance v. Norton, 2002 U.S. Dist. LEXIS 27414 (D.D.C. 2002), this Court found that a lessee of federal mineral rights was entitled to intervene as of right in an action brought by various environmental groups against the U.S. Department of Interior challenging the issuance of such mineral rights leases. Specifically, this Court determined that where "[p]laintiff requests injunctive relief requiring the rescission of the twelve challenged leases until the Defendants comply with the requirements of NEPA and NHPA," the intervenor's interests would be "significantly impaired" and, as a result, was found to have "demonstrated compliance with the third requirement necessary for intervention." Id. at *17.

In this case, the Intervenors' interests in the continued development of the Transpark would be similarly "significantly impaired" should the plaintiffs prevail in their quest to obtain a preliminary injunction. Even if the plaintiffs were successful only in delaying the development of the Transpark, the loss of revenue and other likely impacts (e.g., loss of prospective purchasers) would be substantial and irreparable. See Fund for Animals, 322 F.3d at 735.

    4.    The Interests of the ITA, the City and the County are Not Adequately Represented

Finally, Rule 24(a) directs that even where a significantly protectable interest that is related to the subject of the instant action is found, a motion to intervene may still be denied where the "applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). However, a prospective intervenor need only make a "minimal" showing that the representation of its interests by the existing parties "may be" inadequate. See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972). Moreover, as noted recently in Fund for Animals, the D.C. Circuit has "often concluded that governmental entities do not adequately

11

represent the interests of aspiring intervenors." <u>Fund for Animals</u>, 322 F.3d at 735. Such is the case here.

While the federal defendants are charged with serving and protecting the broad public interest, the Intervenors seek to protect a much more narrow set of primarily economic interests. Stated simply, none of the federal defendants in the present action shares the Intervenors' interest in the continued development of the Transpark. Like the intervenors in <u>Southern Utah Wilderness Alliance</u> and <u>Fund for Animals</u> respectively, the ITA, the County, and the City have significant economic concerns at stake that are not consistent with the interests that will be sought to be protected by the federal defendants. <u>See</u> <u>Southern Utah Wilderness Alliance</u>, 2002 U.S. Dist. LEXIS at *17; <u>Fund for Animals</u>, 322 F.3d at 736-37. Accordingly, the federal defendants cannot be counted on to make all of the arguments the Intervenors intend to assert and, as a result, will not adequately represent their interests in this action.

**B.    ITA, THE COUNTY AND THE CITY SHOULD BE PERMITTED TO INTERVENE**

Permissive intervention is governed by Federal Rule of Civil Procedure 24(b). Rule 24(b) provides:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). This Court explained recently that:

> Rule 24(b)(2) requires a would-be intervenor to present "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." Moreover, a court must determine whether the proposed intervention "will unduly delay or prejudice the adjudication of the rights of the original parties."

<u>Environmental Defense v. Leavitt</u>, 329 F. Supp. 2d at 66 (citations omitted).

The motion to intervene by the ITA, the County, and the City should be granted because independent grounds for jurisdiction exist, the motion is timely, and the Intervenors' claim involves questions of law and fact that are common to the original action. Furthermore, the Intervenors' intervention will not result in any undue delay or prejudice to the existing parties to this action.

### 1.     Independent Grounds for Jurisdiction Exist

As a preliminary matter, the Intervenors' claim clearly has independent grounds for jurisdiction. Independent jurisdictional grounds are established for the Intervenors' claim because they seek to intervene to address the federal questions raised by the plaintiffs, namely whether the federal defendants have failed to comply with NEPA and NHPA, as well as whether any such failure to comply on the part of the federal defendants entitles the plaintiffs to injunctive relief that would halt the development of the Intervenors' Transpark. Therefore, Intervenors claim involves a federal question and, as a result, independent grounds for federal subject matter jurisdiction exist.

### 2.     The Motion to Intervene is Timely

The Intervenors' motion to intervene is timely because it was filed at the earliest stages of these proceedings. The test for determining timeliness under Rule 24(b) is the same as under Rule 24(a). See League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1308 (9th Cir. 1997). Thus, as discussed in more detail above, Intervenors' motion is timely because:  (1) only approximately one week has passed since the complaint was filed; (2) the government has not yet filed an answer; and (3) this Court has not made any substantive rulings in this case.

### 3.     Intervenors' Claim Involves Questions of Law and Fact In Common with the Underlying Action

Rule 24(b) requires parties seeking permissive intervention to assert a claim or defense that has a "question of law or fact in common" with the original action. Fed. R. Civ. P. 24(b)(2). At least one court has noted that "[t]he existence of a 'common question' is liberally construed." Bureerong v. Uvawas, 167 F.R.D. 83, 85 (C.D. Cal. 1996).

Intervenors' claim obviously involves questions of law and fact common to those of the existing parties. Specifically, the Intervenors seek to intervene in this case to oppose directly the

contentions put forth by the plaintiffs. As a result, the Intervenors and the plaintiffs would occupy opposite sides of the central issues presented in the original action. As such, the legal issues in the present action are identical to those to be addressed by Intervenors and will be developed from predominantly the same set of facts.

Therefore, the instant motion to intervene satisfies all three prerequisites necessary to warrant permissive intervention and should be granted.

### 4.    Intervention in this Case Will Not Result in any Undue Delays or Prejudice

In addition to the above considerations, when ruling upon motions to intervene Rule 24(b) requires courts to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2); Environmental Defense v. Leavitt, 329 F. Supp. 2d at 66. Given the very early stages of this case, there is no reason to believe that intervention by ITA, the County, and the City will result in any delay in the disposition of the action, or cause any prejudice of the rights of the existing parties to this action. Rather, granting the motion to intervene will help insure that additional parties who will be directly and substantially affected by the outcome of this case will be included from the outset.

## IV. CONCLUSION

For the reasons stated above, the Court should grant the motion made by ITA, the County, and the City to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). Alternatively, this Court should exercise its discretion and permit ITA, the County, and the City to intervene pursuant to Federal Rule of Civil Procedure 24(b).

Respectfully submitted,

ATTORNEYS FOR INTERVENORS

Charles E. English
Whayne C. Priest, Jr.
ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
1101 College Street; P.O. Box 770
Bowling Green, KY 42102-0770
Telephone: (270) 781-6500
Facsimile: (270) 782-7782
E-mail: charles@elpolaw.com
E-mail: whayne@elpolaw.com

and

LeBoeuf, Lamb, Greene & MacRae, L.L.P.
1875 Connecticut Avenue, NW
Washington, DC 20009
Telephone: (202) 986-8000
Facsimile: (202) 986-8102

_George Ellard_

GEORGE ELLARD
D.C. Bar No. 386084
D. RANDALL BENN
ROBERT M. ANDERSEN
PAUL C. FREEMAN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


KARST ENVIRONMENTAL EDUCATION         )
AND PROTECTION, INC. et al.            )
                                       )
            Plaintiffs                 )
                                       )
        v.                             )
                                       )
U.S. ENVIRONMENTAL PROTECTION          )
AGENCY et al.                          )
                                       )
            Defendants                 )          No. 1:05-cv-01190-RMU
                                       )
─────────────────────────────────     )
                                       )
INTER-MODAL TRANSPORTATION             )
AUTHORITY, INC; FISCAL COURT OF        )
WARREN COUNTY, KENTUCKY; and           )
BOARD OF COMMISSIONERS OF CITY         )
OF BOWLING GREEN, KENTUCKY             )
                                       )
            Movants                    )
                                       )
─────────────────────────────────     )


## ORDER GRANTING MOTION TO INTERVENE

This matter having come before the Court on the motion of the Inter-Modal

Transportation Authority, Inc., the Fiscal Court of Warren County, Kentucky and the

Board of Commissioners of the City of Bowling Green, Kentucky to intervene in this

action as defendants, the Court having considered the record and being sufficiently

advised,

IT IS HEREBY ORDERED that said motion be, and the same hereby is

SUSTAINED.  IT IS FURTHER ORDERED that:

1.      The Inter-Modal Transportation Authority, Inc., the Fiscal Court of Warren County, Kentucky and the Board of Commissioners of the City of Bowling Green, Kentucky are added as parties defendant in this action; and

2.      The Answer tendered by the Inter-Modal Transportation Authority, Inc., the Fiscal Court of Warren County, Kentucky and the Board of Commissioners of the City of Bowling Green, Kentucky be filed of record.

This ___ day of _____, 2005.


_____
        ___

Ricardo M. Urbina, Judge, United States District Court for the District of Columbia