UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC. et al. | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY et al. | ) ) ) ) | |
| Defendants, | ) ) | No. 1:05-cv-01190-RMU |
| INTER-MODAL TRANSPORTATION AUTHORITY, INC; FISCAL COURT OF WARREN COUNTY, KENTUCKY; and BOARD OF COMMISSIONERS OF CITY OF BOWLING GREEN, KENTUCKY | ) ) ) ) ) ) | |
| Intervenors. | ) ) | |

## DECLARATION OF TERRELL ROSS

I, Terrell Ross, make the following declaration based on personal knowledge, information and belief:

1.    I am an investment banker and financial advisor licensed to practice in the Commonwealth of Kentucky and an officer of Ross Sinclaire & Associates, a licensed securities broker/dealer.

2.    This declaration is being written in order to set forth the fiscal impact to the County of Warren, Kentucky (the "County") and its citizens should a federal injection be placed on any further development of the Kentucky Tri-Modal Transpark (the "Transpark") which would result in there being insufficient monies to make the required bond payments associated with that Project.

3.    The Inter-Modal Transportation Authority, Inc. (the "ITA"), a nonprofit, non-stock public corporation and agency of the County, has heretofore issued at the request of the County $25,000,000 of tax exempt securities (the "Bonds") of which the net proceeds were used to acquire and develop Phase I of the Transpark. The par amount and series designation of the Bonds is as follows:

$2,415,000 Inter-Modal Transportation Authority, Inc. First Mortgage Revenue Bonds, Series 2003 A;

$2,585,000 Inter-Modal Transportation Authority, Inc. First Mortgage Revenue Bonds, Series 2003 B;

$2,165,000 Inter-Modal Transportation Authority, Inc. First Mortgage Revenue Bonds, Series 2003 C;

$2,800,000 Inter-Modal Transportation Authority, Inc. First Mortgage Revenue Bonds, Series 2003 D;

$8,395,000 Inter-Modal Transportation Authority, Inc. First Mortgage Revenue Bonds, Series 2004; and,

$6,640,000 Inter-Modal Transportation Authority, Inc. First Mortgage Revenue Bonds, Series 2005

4.    The firm of which I am an officer served as financial advisor to the ITA and advised the County and the ITA as to the financing structure that would allow for the securities to be marketed as a ratable debt.    The ITA is an agency of the County and is not permitted under Kentucky law to levy any taxes that could be used to repay the Bonds; therefore, without the financial backing of the County, the securities are not ratable, and in our professional opinion, the Bonds can not be marketed without the County's backing. Therefore, the legal structure that we recommended and that was implemented is that the County enter into an annual renewable lease, wherein the County leases the Transpark from the ITA Project financed by the proceeds of the Bonds. The lease payments made by the County equal 100% of the principal and

interest on the Bonds.    Lease payments are only due from the County, to the extent other pledged funds generated by the Project are not sufficient to make the scheduled lease payments.

5.    In order that the County does not have to levy additional taxes upon its citizenry to make the Bond payments, the County established the ITA property as a "Development Area" pursuant to the Kentucky Increment Financing Act.    The County has placed a 2% Job Assessment Fee on every employee that works at any company that locates in the Transpark. The Job Assessment Fee and the revenue generated from the sale of land to private companies is expected to be sufficient to meet future Bond payments without contributions from the County.

6.    This legal structure (i.e., the backing of the Bonds by the County and the establishment of the Development Area) was deemed to be sufficient by the rating agencies to make the Bonds ratable.  Moody's Investor Service has assigned an "A1" rating to all the Bonds. If for any reason the Project is delayed for any degree of time, it is expected the financial model cannot be followed and the County will have to step forward and levy a tax to make the required Bond payments in order to prevent a default on the Bonds.    Additionally, it would be expected that Moody's would withdraw its rating of the Bonds, or significantly lower their rating on the Bonds, perhaps not even to an investment grade.

7.    The total debt service on the Bonds is approximately $2,006,000 each fiscal year. Payments of this amount will be due through fiscal year ending June 30, 2026.    The total valuation of all property in Warren County is approximately $4,711,522,116.    The ad valorem tax rate in Warren County is $0.135 per $100 of valuation.    Therefore, if a federal injunction of all development in the affected area is granted, the County must levy a tax to make the Bond payments in order to prevent a default and to avoid ruining its credit rating.    It is estimated the

3

County would have to increase the current tax rate by approximately 31.5% in order to generate the additional revenues that are needed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of June 2005.

Terrell Ross