UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC. et al.<br><br>Plaintiffs,<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY et al.<br><br>Defendants,<br><br>INTER-MODAL TRANSPORTATION AUTHORITY, INC; FISCAL COURT OF WARREN COUNTY, KENTUCKY; and BOARD OF COMMISSIONERS OF CITY OF BOWLING GREEN, KENTUCKY<br><br>Intervenors. | No. 1:05-CV-01190-RMU |

**DECLARATION OF ELAINE WALKER**

I, Elaine Walker, make the following declaration based on personal knowledge, information and belief:

1. My name is Elaine Walker. I was elected Mayor of Bowling Green, Kentucky, and began my term of office on January 1, 2005. Prior to this office, I have served extensively on many public and community commissions and committees.

2. The City of Bowling Green, Kentucky (the "City") was involved in the development of the Kentucky Transpark from its inception, and as land has been purchased, it has been annexed into the city. The City thus has a vested interest in the Kentucky Transpark

2

and any actions that would affect land in the Transpark, and a Preliminary Injunction would cause irreparable harm to the City and its citizens for the following reasons.

3. Economic Development is at the foundation of our city's growth and our tax structure. We have been able to increase our police and fire personnel thanks, in large part, to the growth projected by the Transpark. Conversely, by shutting down all construction at this site, even temporarily, our future fiscal picture would be irreparably damaged, causing losses that would be virtually impossible to reverse.

4. Since November of 2004, I have participated in economic development trips to Korea and Japan to recruit businesses and industries to locate in the Kentucky Transpark. As a result of my discussions with potential occupants of the Kentucky Transpark, I believe that the Kentucky Transpark stands to gain two major industrial clients in the very near future. The most imminent of these prospects would create 300 jobs and make a capital investment of $50 million; the second represents a capital investment of $125 million and would create at least 700 jobs. The conservative impact of these new jobs would be that they, in turn, would create one additional job each in the retail and service industries. A preliminary injunction would guarantee these prospects would choose other sites. The City would forever lose these 1000 jobs, the additional 1000+ jobs they would create and additional financial investments in our community. In addition, the chilling effect on future recruitment would be dramatic. It would take us several more years to regain the momentum we have finally achieved. Of further consideration is the fact that 6,500 residents in our area are currently unemployed and these new jobs would substantially reduce that unemployment.

2

5. Of additional concern is the loss of educational opportunities to our citizens should construction of the Kentucky Community and Technical College System training site be stopped as a result of the preliminary injunction the plaintiffs seek. The training program, which is part of an incentive package provided industries locating in the park, would be delayed or eliminated, harming existing employers who counted on specialized employee training. What is worse is that the specialized education, training, and innovative apprenticeship program this facility will provide to citizens of our community, would be lost.

6. The City, along with Warren County and several neighboring communities, have pledged their support for the Kentucky Transpark by agreeing to reimburse Warren County for a portion of funds necessary to pay the bonded indebtedness that created the Kentucky Transpark in the event it is not self-sustaining. Since neighboring communities would doubtless exercise their right they retained to withdraw their support from the bond issue should a preliminary injunction be issued, the full weight of repaying those bonds would fall on the shoulders of Bowling Green City and Warren County taxpayers. If all work stops at the Transpark, even for a limited time, the financial damage could never be recouped. It would, instead, be borne by our taxpayers.

7. As one who is highly concerned about protecting our valuable resources, our environment and our historic heritage, I have scrutinized actions taken by the Kentucky Transpark to address these concerns. Although no federal action has been taken at the Kentucky Transpark, the organization has taken great pains to establish practices that address environmental and historic preservation concerns and to take that a step further. In many cases, the environment will be left in better condition than it would have been should it remain

farmland; and an examination by both the state and local historic preservation organizations ensures the protection of historically significant sites.

8.   Finally, as the elected Mayor of a city of nearly 50,000, I would urge that no action be taken to issue a preliminary injunction or temporary restraining order. This action is not warranted and would cause irreparable harm to the city, and most importantly, to its citizens.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 30 day of June 2005.

_____
Elaine Walker