UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KARST ENVIRONMENTAL EDUCATION )
AND PROTECTION, INC., WARREN )
COUNTY CITIZENS FOR MANAGED )
GROWTH, GAYLA CISSELL, JIM )
DUFFER, and ROGER BRUCKER )
)
Plaintiffs )
)            No. 1:05-CV-01190-RMU
v. )
)
U.S. ENVIRONMENTAL PROTECTION )
AGENCY, U.S. HOUSING AND URBAN )
DEVELOPMENT, and TENNESSEE )
VALLEY AUTHORITY )
)
Defendants )
_____ )
)
INTER-MODAL TRANSPORTATION )
AUTHORITY, INC., FISCAL COURT OF )
WARREN COUNTY, KENTUCKY, and )
BOARD OF COMMISSIONERS OF CITY )
OF BOWLING GREEN, KENTUCKY )
)
Intervenors )

## TENNESSEE VALLEY AUTHORITY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant Tennessee Valley Authority (TVA) respectfully moves the Court,

pursuant to Federal Rule of Civil Procedure 12(b)(1), for an order dismissing the claims

against TVA on the grounds that Plaintiffs lack standing to pursue their claims against

TVA and that Plaintiffs' claims against TVA are either moot or unripe.  A brief in

support of this motion is being submitted separately.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
</table>

August 30, 2005

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

Maureen H. Dunn
General Counsel

Harriet A. Cooper
Assistant General Counsel

Frank H. Lancaster

s/Maria V. Gillen
Maria V. Gillen
Telephone 865-632-7741

Attorneys for Tennessee Valley Authority

003744104

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2005, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send notification of

such filing by operation of the Court's electronic filing system to the following:

> David G. Bookbinder, Esq.
> Sierra Club
> 408 C Street, NE
> Washington, D.C. 20002
>
> Sara E. Culley, Esq.
> United States Department of Justice
> 601 D Street, NW
> Room 3135
> Washington, D.C. 20004

I further certify that on August 30, 2005, I served a copy of the foregoing document by

first-class mail, postage prepaid, on the following:

> George Ellard, Esq.
> LeBoeuf, Lamb, Greene & MacRae
> 1875 Connecticut Avenue, NW
> Washington, D.C. 20009

> s/Maria V. Gillen
> Maria V. Gillen
> New Jersey Bar No. 025642001
> Tennessee Valley Authority
> Office of the General Counsel
> 400 West Summit Hill Drive
> Knoxville, Tennessee 37902-1401
> Telephone 865-632-7741
> Facsimile 865-632-6718
> E-mail mvgillen@tva.gov

No. 1:05-CV-01190-RMU

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., et al.

Plaintiffs

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. HOUSING AND URBAN
DEVELOPMENT, and TENNESSEE VALLEY AUTHORITY

Defendants

and

INTER-MODAL TRANSPORTATION AUTHORITY, INC., et al.

Intervenors

**TENNESSEE VALLEY AUTHORITY'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS
THE AMENDED COMPLAINT**

August 30, 2005

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

Maureen H. Dunn
General Counsel

Harriet A. Cooper
Assistant General Counsel

Frank H. Lancaster

Maria V. Gillen
Telephone 865-632-7741

Attorneys for Tennessee Valley Authority

# TABLE OF CONTENTS

**Page**

STATEMENT ...................................................................................................... 1

   I.  Introduction ............................................................................................. 1

   II.  Facts ...................................................................................................... 3

ARGUMENT ...................................................................................................... 5

   I.  The Standard of Review ........................................................................ 5

   II.  The Statutory Framework ..................................................................... 6

      A.  National Environmental Policy Act (NEPA) ............................. 6

      B.  National Historic Preservation Act (NHPA) ............................. 9

   III.  Plaintiffs' Amended Complaint Should Be Dismissed. ................... 10

      A.  Plaintiffs lack standing. ........................................................... 11

      B.  Plaintiffs' claims against TVA are moot. ................................. 15

      C.  Plaintiffs' claims for prospective relief are not ripe. .............. 18

      D.  Plaintiffs' claim for declaratory relief should be dismissed. ................... 19

CONCLUSION ................................................................................................. 20

i

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| KARST ENVIRONMENTAL EDUCATION )<br>AND PROTECTION, INC., WARREN )<br>COUNTY CITIZENS FOR MANAGED )<br>GROWTH, GAYLA CISSELL, JIM )<br>DUFFER, and ROGER BRUCKER )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>U.S. ENVIRONMENTAL PROTECTION )<br>AGENCY, U.S. HOUSING AND URBAN )<br>DEVELOPMENT, and TENNESSEE )<br>VALLEY AUTHORITY )<br>)<br>Defendants )<br>――――――――――――――――― )<br>)<br>INTER-MODAL TRANSPORTATION )<br>AUTHORITY, INC., FISCAL COURT OF )<br>WARREN COUNTY, KENTUCKY, and )<br>BOARD OF COMMISSIONERS OF CITY )<br>OF BOWLING GREEN, KENTUCKY )<br>)<br>Intervenors ) | No. 1:05-CV-01190-RMU |

**TENNESSEE VALLEY AUTHORITY'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS
THE AMENDED COMPLAINT**

## STATEMENT

### I. Introduction

This is an action against several federal agencies seeking to halt development of

the Kentucky Trimodal Transpark (Transpark), an integrated industrial complex in north

Warren County, Kentucky, that is being developed by the Inter-Modal Transportation

Authority, Inc. (ITA), an intervenor herein.  Plaintiffs, two not-for-profit organizations

and three individuals, allege in their Amended Complaint that the Tennessee Valley

Authority (TVA) provided some funds in 2004 for the purchase of electrical equipment

by a tenant of the Transpark without first complying with sections 106 and 110(k) of the

National Historic Preservation Act (NHPA), 16 U.S.C. §§ 470f, 470h-2(k) (2000), and

section 102(2)(C) of the National Environmental Policy Act (NEPA), 42 U.S.C.

§ 4332(C) (2000).  Plaintiffs ask this Court to order TVA, among other things: (1) to

comply with the procedural requirements of the NHPA and NEPA *before* disbursing

federal funds or issuing any permits; (2) to ensure that "any entity" that has received

funds from TVA for activities at the Transpark refrain from actions that "may adversely

affect listed or eligible cultural and historic resources" until the Court determines that the

NHPA requirements have been satisfied; and, (3) to complete an Environmental Impact

Statement (EIS) before considering any further applications for federal permits,

approvals, or funding.  (Am. Compl., relief requested ¶¶ 3-6.)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), TVA has moved to dismiss

the Amended Complaint because the Court lacks subject matter jurisdiction over the

dispute with regard to TVA's actions.  First, Plaintiffs have failed to plead facts

demonstrating that they have standing to seek relief against TVA.  They allege that the

development of the Transpark site has injured and will continue to injure their aesthetic,

recreational, cultural, historic, and ecological interests.  (Am. Compl. ¶¶ 3-7.)  The entity

allegedly responsible for the development of the Transpark is the ITA.  (Am. Compl.

¶¶ 12-24.)  While Plaintiffs allege that six years ago, in 1999, TVA personnel met with

the ITA to express TVA's interest in the project (*id.* ¶ 14), and that five years ago, in

2000, the ITA considered funding from TVA to be an option (*id.* ¶ 17), Plaintiffs have

not alleged that TVA has provided funds to the ITA or that TVA has any present or future plans to provide funds to the ITA. Nor have Plaintiffs pleaded that Bowling Green Metalforming, LLC (Metalforming), the entity to which TVA did grant funds, caused any of their claimed injuries. Plaintiffs thus have failed to plead any particularized injury that is fairly traceable to TVA's grant to Metalforming. In fact, Plaintiffs' allegations of injury are made in the vaguest possible terms. Further, the relief they seek against TVA would not redress their claimed injuries.

Second, Plaintiffs' claims are moot as to TVA, because, after performing the required review under NEPA and the NHPA, TVA already has disbursed all the funds it agreed to provide to Metalforming, and TVA has no plans to provide future funding to any Transpark tenant or to the ITA. Thus, there is no proposed TVA action that could be enjoined here, nor any certainty of future action that would justify declaratory relief.

Finally, Plaintiffs' claims for prospective relief are unripe. Plaintiffs have not alleged that TVA has any plans, much less imminent plans, to disburse funds or to issue permits to the ITA or any Transpark tenant in the future. Indeed, Plaintiffs could not truthfully allege that TVA is considering any proposal for future funding, because no such proposals have been made. Thus, Plaintiffs' claims do not present a live case or controversy with respect to TVA.

## II. Facts

The TVA Act, in sections 22 and 23, authorizes TVA to foster the proper physical, economic, and social well-being of the Tennessee Valley region. 16 U.S.C. §§ 831u, 831v (2000). As part of this statutory mission, TVA provides business loans and grants to encourage economic development in the Tennessee Valley. In March 2004, Metalforming, a tenant of the Transpark, submitted a Request for a Valley Advantage

3

Agreement in the amount of $500,000 to TVA's Economic Development Division. (Am.

Compl. ¶ 29; Barker Decl. ¶ 3 (Ct. Doc. 7, attachment 2).)[1] These funds were requested

for the purchase of certain ancillary equipment that would not be central to the plant's

operation of making automobile parts. (Zotto Decl. ¶ 5 (Ct. Doc. 7, attachment 3).)

Pursuant to TVA's NEPA procedures, TVA conducted an environmental review and

determined that funding the new equipment qualified for a categorical exclusion (CE).

(Zotto Decl. ¶¶ 6-7.)  Under regulations implementing NEPA, CEs are defined as groups

of actions that, under normal circumstances, do not have significant effects, either

individually or cumulatively, on the environment and for which neither an Environmental

Assessment (EA) nor an Environmental Impact Statement (EIS) is required. *See*

40 C.F.R. § 1508.4 (2004); TVA NEPA Procedures § 5.2 (attached as Ex. B to the Zotto

Decl.).

    As part of its environmental review, TVA also conducted a review under

section 106 of the NHPA, and determined that the proposed TVA funding of equipment

ancillary to the Metalforming plant's operations did not have the potential to affect

historic structures. (Graham Decl. ¶ 5 (Ct. Doc. 7, attachment 4); Zotto Decl. ¶ 8.)  In

doing so, TVA recognized that the equipment was to be installed in a building already

---

[1]    TVA previously submitted several declarations in support of its opposition to
Plaintiffs' Motion for a Preliminary Injunction.  Plaintiffs subsequently withdrew their
motion, but TVA's declarations remain in the record.
    The Court may consult materials outside the pleadings to ascertain its subject
matter jurisdiction. *See Coalition for Underground Expansion v. Mineta*, 333 F.3d 193,
198 (D.C. Cir. 2003) ("Although 'the District Court may in appropriate cases dispose of a
motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) on
the complaint standing alone,' 'where necessary, the court may consider the complaint
supplemented by undisputed facts evidenced in the record, or the complaint
supplemented by undisputed facts plus the court's resolution of disputed facts.'")
(quoting *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

under construction and that the $500,000 TVA grant amounted to only 0.3 percent of the total capital investment in the Metalforming site, which was estimated to be $170 million. (Graham Decl. ¶ 5.)  In accordance with the regulations implementing the NHPA, TVA concluded that "no further obligations" were required of it.  *See* 36 C.F.R. § 800.3(a)(1) (2004).

Upon completion of the required environmental reviews, TVA awarded the grant to Metalforming and disbursed the entirety of that grant in September 2004.  (Am. Compl. ¶ 29; Barker Decl. ¶ 6.)  Metalforming has provided TVA with documentation confirming that Metalforming used the TVA funds to purchase electrical equipment. (Barker Decl. ¶ 7.)  Since TVA's September 2004 payment, TVA has made no further payments to Metalforming, and Metalforming has not applied to TVA for any additional funds.  (Barker Decl. ¶ 8.)   TVA has no plans to provide more funding to Metalforming. (Barker Decl. ¶ 9.)  Construction of the Metalforming facility at the Transpark is complete.  (Morgan Decl. ¶ 4 (Ct. Doc. 7, attachment 6).)

TVA has provided no funds to the ITA, and has entered into no agreement to provide any funds to the ITA.  (Barker Decl. ¶ 10; Hizer Decl. ¶ 14 (Ct. Doc. 14, attachment 7).)  TVA has no plans to provide funding to the ITA or its agents for Transpark activities.  (Barker Decl. ¶ 11; Hizer Decl. ¶ 14.)

## ARGUMENT

### I. The Standard of Review

As this Court held in *El-Hadad v. United States*, 377 F. Supp. 2d 42, 45-46 (D.D.C. 2005) (internal citations, quotation marks, and alterations omitted):

Federal courts are courts of limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction. Because subject-matter jurisdiction is an Art. III as well as a statutory requirement, no action of the parties can confer subject-matter jurisdiction upon a federal court. On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. The court may dismiss a complaint for lack of subject-matter jurisdiction only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. Moreover, the court is not limited to the allegations contained in the complaint. Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.

## II. The Statutory Framework

## A. National Environmental Policy Act (NEPA)

NEPA requires federal agencies to include in every proposal for "major Federal actions significantly affecting the quality of the human environment, a detailed statement . . . on . . . the environmental impact of the proposed action. . . ." 42 U.S.C. § 4332(C)(i). NEPA ensures that an agency contemplating such an action "will have available, and will carefully consider, detailed information concerning significant environmental impacts [of the action]." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). "NEPA does set forth significant substantive goals for the Nation, but its mandate to the agencies is essentially procedural . . . [its goal] is to insure a fully informed and well-considered decision" rather than specific results. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978).

TVA is guided in its NEPA compliance by its own procedures implementing NEPA and by binding regulations promulgated by the Council on Environmental Quality (CEQ). In accordance with Executive Order No. 11,991 and CEQ's regulations,

6

40 C.F.R. § 1507.3, in 1980, TVA adopted amendments to its existing NEPA procedures to supplement CEQ's then new regulations. Those amendments, which resulted in a substantial reformatting of TVA's procedures, were issued in the Federal Register for public review and comment on July 6, 1979. 44 Fed. Reg. 39,679-86. Following this public comment process and with CEQ's approval, TVA adopted the revised procedures on August 15, 1980. 45 Fed. Reg. 54,511-15. TVA subsequently amended its procedures again following public review and comment, 47 Fed. Reg. 54,586-93 (Dec. 3, 1982), and with CEQ's approval, 48 Fed. Reg. 19,264-01 (Apr. 28, 1983).[2]

CEQ's regulations specify the process that federal agencies are to employ in determining the appropriate level of environmental review for a particular proposal. Essentially, CEQ has required agencies to adopt criteria for and to identify three classes of environmental reviews for proposed agency actions, 40 C.F.R. § 1501.4(a), (b) (2004), including those that normally require an EIS, those for which an agency must prepare an EA to determine whether an EIS is needed, and those that are categorically excluded, and thus automatically require no EIS. CEQ required each agency to describe the kinds of actions that normally would require either an EIS or would be categorically excluded. *Id.*

Under section 102(2)(C) of NEPA and CEQ's regulations, EISs are required for major federal actions that have potentially significant environmental impacts. *See* 40 C.F.R. §§ 1502.1, 1508.18 (2004). EISs are the most detailed and comprehensive level of review under the NEPA regulations. *See* 40 C.F.R. §§ 1508.11, 1502.10-1502.18 (2004).

---

[2]    A copy of TVA's current NEPA procedures has been filed as Exhibit B to the Zotto Decl. (Ct. Doc. 7).

The next level of review is the EA. EAs are to be "concise public documents" that "[b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact [FONSI]." 40 C.F.R. § 1508.9(a)(1) (2004). EAs are required for those actions that are not EIS-level actions and are not otherwise covered by a categorical exclusion. *Id.* § 1501.4(a), (b).

CEs are important tools in CEQ's effort to ensure that agencies comply with NEPA in a manner that does not divert agency resources from matters of real environmental concern, 40 C.F.R. § 1500.4(p) (2004), or unnecessarily delay federal activities, *id.* § 1500.5(k) (2004). CEQ defines CEs as:

> [A] category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency.

*Id.* § 1508.4. CEQ required each agency to identify those actions that normally should be categorically excluded. 40 C.F.R. § 1501.4(a). CEQ's guidance discourages agencies from preparing extensive paperwork to document an activity that has been categorically excluded. *See* 48 Fed. Reg. 34,263, 34,265 (July 28, 1983). Based on years of experience in both assessing and implementing different kinds of actions, TVA proposed and promulgated with CEQ's approval twenty-eight categorical exclusions. TVA NEPA Procedures § 5.2; 40 C.F.R. §§ 1507.3(a), b(2)(ii) (2004). One of these CEs, found at section 5.2.28,[3] covers categories of actions, the impacts of which have been evaluated in

---

[3]      Section 5.2.28 provides: "Actions which were the subject of an EA which concluded that the category of such actions should be treated as a categorical exclusion."

a Generic Environmental Assessment prepared pursuant to section 5.3.5[4] of TVA's

NEPA Procedures. Such treatment under a Generic EA is intended to improve the review

process because it affords the opportunity to assess the cumulative impacts of activities

that fall within a generic category. Further, preparing a Generic EA reduces the need for

case-by-case environmental reviews for minor actions that reoccur frequently,

minimizing paperwork and delays consistent with the guidance in CEQ's regulations in

40 C.F.R. §§ 1500.4 and 1500.5.

In June 2001, TVA prepared a Generic EA that assessed, among other things, the

impact of the repetitive category of "New or replacement equipment that would not be

central to plant operation." TVA determined that this CE applied to the proposed grant to

Metalforming for the purchase of ancillary equipment for its plant.

### B. National Historic Preservation Act (NHPA)

Section 106 of the NHPA requires federal agencies "having direct or indirect

jurisdiction over a proposed . . . federally assisted undertaking in any State" to "take into

account the effect of the undertaking on any district, site, building, structure, or object

that is included in or eligible for inclusion in the National Register . . . prior to the

approval of the expenditure." 16 U.S.C. § 470f. The regulations promulgated under this

section provide:

---

[4]     Section 5.3.5 provides:

For any category of actions not described in section 5.2 (Categorical
Exclusions), the initiating office may prepare a generic EA. The generic
EA will be prepared, reviewed, and approved as would any other EA.
Upon completion of review, the Environmental Quality Staff in
consultation with the Office of the General Counsel will determine
whether or not the category of actions may normally be treated as if listed
in section 5.2 as a categorical exclusion.

> If the undertaking is a type of activity that does not have the potential to cause effects on historic properties, assuming such historic properties were present, the agency official has no further obligations under section 106 or this part.

36 C.F.R. § 800.3(a)(1).

> Section 110(k) of the NHPA provides:

> > Each Federal agency shall ensure that the agency will not grant . . . assistance to an applicant who, with *intent to avoid the requirements of section 470f* of this title, has *intentionally significantly adversely* affected a historic property to which the grant would relate . . . .

16 U.S.C. § 470h-2(k) (emphasis added).

> The Court of Appeals for the District of Columbia has characterized the NHPA as follows:

> > The National Historic Preservation Act is a narrow statute. Its main thrust is to encourage preservation of historic sites and buildings rather than to mandate it. . . . Federal agencies . . . are commanded to value preservation, and are subject to certain requirements–but only in relation to projects or programs they initiate or control through funding or approvals.

*Lee v. Thornburgh*, 877 F.2d 1053, 1058 (D.C. Cir. 1989).

> In its section 106 assessment TVA determined that the undertaking did not have the potential to affect a historic property; thus, in accordance with the regulations implementing NHPA, TVA concluded that "no further obligations" were required of it. *See* 36 C.F.R. § 800.3(a)(1).

### III.    Plaintiffs' Amended Complaint Should Be Dismissed.

> In order to bring their NEPA and NHPA claims in federal court, Plaintiffs must first establish that they satisfy the constitutional case and controversy requirement of Article III, and then establish the additional prudential standing requirement in the Administrative Procedure Act (APA), namely, that their injury is within the "zone of

interests" protected by NEPA and the NHPA. *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998). The doctrines of standing, mootness, and ripeness derive from the "case or controversy" requirement of Article III. *See Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005); *see also Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003) (ripeness); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180 (2000) (mootness); *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (standing). If any one of these doctrines is not satisfied, then the court lacks subject matter jurisdiction over the suit. *Spirit of the Sage Council,* 411 F.3d at 230. Plaintiffs' claims against TVA should be dismissed because Plaintiffs lack standing and because their claims are either moot or unripe.

### A. Plaintiffs lack standing.

Plaintiffs' claims should be dismissed because Plaintiffs have failed to allege facts that would show their standing to pursue their claims against TVA. Plaintiffs claim they are being injured by the Transpark, but they do not allege that any of *TVA's* actions have anything to do with their claims of injury. Instead, Plaintiffs simply lump all the federal agencies together as "Defendants" and fail to tie their claimed injuries to TVA as Article III requires. The Supreme Court has explained that

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotation marks and alterations omitted).

The pleaded injury in fact must be either "actual or imminent." As the D.C.

Circuit explained in *Fla. Audubon Society v. Bentsen*, 94 F.3d 658, (1996):

> A plaintiff must . . . show that the particularized injury is at least imminent
> in order to reduce the possibility that a court might unconstitutionally
> render an advisory opinion by deciding a case in which no injury would
> have occurred at all.

*Id.* at 663 (internal citations and quotation marks omitted).

Furthermore, and equally importantly, the D.C. Circuit held that the plaintiff's

injury must result from the particular agency action in issue:

> To prove causation, a plaintiff seeking the preparation of an EIS
> must demonstrate that particularized injury that the plaintiff is suffering or
> is likely to suffer is fairly traceable to the agency action that implicated the
> need for an EIS. In other words, unless there is a substantial probability
> . . . that the substantive agency action that disregarded a procedural
> requirement created a demonstrable risk . . . of injury to the particularized
> interests of the plaintiff, the plaintiff lacks standing. . . . Not to require
> that a plaintiff show that its particularized injury resulted from the
> government action in issue would effectively void the particularized injury
> requirement. After all, any plaintiff may allege an injury to its own
> interests if that injury need not be caused by any act of the defendant.

*Id.* at 669 (internal citations omitted).

Here, Plaintiffs have not alleged any actual particularized injury attributable to

TVA. Although Plaintiffs complain of the destruction of cultural and historic resources

at the Transpark site, they do not plead that TVA performed such activities itself. Nor do

they allege that TVA has provided funding to any entity allegedly responsible for such

activities; TVA has not funded the site developer, ITA, and TVA's grantee,

Metalforming, is not alleged to have destroyed cultural and historic resources.

Furthermore, TVA's contribution is only a small fraction of the cost of Metalforming's

plant, much less the entire Transpark project, and Plaintiffs have alleged no facts to

indicate that the Transpark project would not have gone forward without TVA's

$500,000 grant to a tenant.[5] *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. at 571 (agency contribution was "only a fraction" of the project cost, and plaintiffs only speculated that loss of agency contribution would stop project or do less environmental harm); *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 494 (D.C. Cir. 2004) (speculative assertions by trucking companies that repeal of EPA's standard for nitrous oxide and nonmethane hydrocarbon emissions from heavy-duty diesel engines would reduce their costs was insufficient to establish standing to challenge EPA's refusal to repeal standard).

Similarly, nothing in the Amended Complaint suggests that Plaintiffs will suffer any imminent particularized injury attributable to TVA. Plaintiffs do not allege that TVA has any present or future plans to fund the activities of the ITA or any tenant of the Transpark. At most, Plaintiffs have pleaded that TVA expressed an interest in the Transpark in 1999, and that in 2000 ITA considered TVA funding to be an option. They have not pleaded that TVA even is contemplating granting any funds to ITA, much less that TVA has immediate plans to provide such funds. In short, Plaintiffs have not pleaded that any past action of TVA caused them injury, or that TVA is about to take any

---

[5]     Although Plaintiffs allege that "[b]ut for the federal funding . . . no part of the Transpark activities which are the subject of this complaint would have been undertaken," Am. Compl. ¶¶ 36, 43, 48, 50, the Court may disregard such a conclusory allegation where it is unsupported by pleaded facts. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."); *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 168, 181-82 (D.D.C. 2005) (same). Here, the Transpark activities that are the subject of the Amended Complaint are the siting, demolition, and construction of the project, and Plaintiffs have not alleged that TVA performed such activities or funded an entity that performed such activities.

imminent action whatsoever that is pertinent to the Transpark, much less one creating a substantial probability of demonstrable injury to the Plaintiffs.

Plaintiffs also cannot demonstrate that their injuries would be redressed by the relief they seek against TVA. Plaintiffs ask the Court to issue "a preliminary injunction and a permanent injunction halting all demolition and construction of the Transpark until NEPA and NHPA have been fully complied with." (Am. Compl., request for relief ¶ 2.) Even crediting Plaintiffs' allegations that TVA has violated NEPA and the NHPA,[6] enjoining TVA from demolition and construction activities will not redress Plaintiffs'

---

[6]    Plaintiffs have alleged that "TVA has exempted its involvement in the Transpark project from NEPA and NHPA review." (Am. Compl. ¶ 10.) This is a legal conclusion cast in the form of a factual allegation that courts do not accept. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).
    More importantly, Plaintiffs are simply wrong. TVA conducted its NEPA review in conformity with its own procedures and regulations promulgated by CEQ, 40 C.F.R. §§ 1500.1-1508.28 (2004). As discussed above, that review demonstrated that the project qualified as a CE. TVA also conducted its NHPA review in accordance with federal regulations promulgated by the Advisory Council on Historic Preservation that implements section 106 of the Act. 36 C.F.R. pt. 800 (2004). The courts grant substantial deference to an agency's determinations under NEPA and the NHPA, including its decision about the level of environmental review needed. Such determinations are to be upheld by the courts unless they are shown to be arbitrary or capricious. *See Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 376-77 (1989); *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21, 412 (1976); *see also Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 582 (9th Cir. 1998) (arbitrary and capricious standard applies to agency determinations under the NHPA); *Crutchfield v. United States Army Corps of Eng'rs*, 154 F. Supp. 2d 878, 892 (E.D. Va. 2001) (same).
    Although Plaintiffs complain about TVA's NEPA review here, the courts give particular deference to an agency's decision interpreting its own regulations, *see Methow Valley Citizens Council*, 490 U.S. at 355-56; *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988), and specifically to decisions such as those interpreting an agency's own categorical exclusion regulations; *see, e.g., Citizens' Comm. to Save Our Canyons v. United States Forest Serv.*, 297 F.3d 1012, 1023 (10th Cir. 2002); *Nat'l Trust for Historic Pres. v. Dole*, 828 F.2d 776, 782 (D.C. Cir. 1987) (per curiam); *W. Houston Air. Comm. v. FAA*, 784 F.2d 702, 705 (5th Cir. 1986); *City of Alexandria v. Fed. Highway Admin.*, 756 F.2d 1014, 1020 (4th Cir. 1985).

pleaded injuries because TVA is not alleged to be performing any demolition or construction activities at the Transpark, and has no statutory or contractual authority over the ITA, which allegedly is performing such activities.  Furthermore, requiring TVA to "fully comp[ly]" with NEPA and the NHPA, Am. Compl., request for relief ¶¶ 2-4, 6, would not help Plaintiffs; they do not plead a "procedural injury" that could be remedied by preparation of an EIS or consulting with the Advisory Council, and their alleged substantive injury (harm to various resources) would not be redressed by TVA's studying the environmental effects of actions it does not plan to take (disbursing funds to the Transpark or its tenants).  Finally, Plaintiffs' request for an order requiring TVA to ensure that the entity to which it has disbursed funds – Metalforming – "refrain from any action that may adversely affect listed or eligible cultural and historic resources," Am. Compl., request for relief ¶ 5, likewise would be ineffective to redress any actual or imminent injury because Metalforming is not alleged to have impaired such resources or to be planning to undertake such activities in the future.

The redressability requirement limits the judicial role to measures that "will produce tangible, meaningful results in the real world." *Common Cause v. Dep't of Energy*, 702 F.2d 245, 254 (D.C. Cir. 1983).  Plaintiffs cannot show that the entry of any relief against TVA would produce meaningful results at all.  Plaintiffs thus do not have standing to maintain this suit. *See Lujan*, 504 U.S. at 560-61; *accord Common Cause*, 702 F.2d at 250.

### B.  Plaintiffs' claims against TVA are moot.

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted).  Mootness may be described as "the

15

doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* at 68 n.22 (internal quotation marks omitted). While this description is not "comprehensive," it is applicable to lawsuits "brought to force compliance [where] it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" *Laidlaw*, 528 U.S. at 190 (2000) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

A claim made under NEPA or the NHPA does not present a live controversy when the action complained of has been completed and no effective relief is available. *See, e.g.*, *Springer v. United States Marshal*, No. 04-40551, 2005 WL 1412634 (5th Cir. June 16, 2005) (per curiam) (unpublished decision) (payment of funds, completion of construction and opening of detention facility mooted plaintiffs' NEPA claim); *One Thousand Friends of Iowa v. Mineta*, 364 F.3d 890, 893 (8th Cir. 2004) (completion of construction process mooted plaintiffs' NEPA claim for declaratory and injunctive relief); *Benavides v. Hous. Auth. of San Antonio*, 238 F.3d 667, 669-70 (5th Cir. 2001) (completed demolition and completed agency NHPA review mooted plaintiffs' claim for prospective injunctive relief under the NHPA); *Bayou Liberty Ass'n, Inc. v. United States Army Corps of Eng'rs*, 217 F.3d 393, 398 (5th Cir. 2000) (completion of construction project mooted NEPA claim); *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998) ("[Defendant's] construction was finished in July 1997, the final disbursement of the federal funds was made in September of that year, and there are no pending applications for additional federal financing. Because this [NEPA] appeal thus seeks to enjoin the

future occurrence of events that are already in the past, we lack appellate jurisdiction.");

*Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994)

(holding that an order enjoining defendants from further construction on a project for

alleged violation of NEPA would serve no purpose and afford plaintiffs no relief where

construction was complete).

Here, all relevant actions by TVA have been completed.  TVA conducted its

review under NEPA and the NHPA and determined that granting $500,000 for the

purchase of electrical equipment for Metalforming's $170 million plant, which was

already under construction, qualified for a CE under TVA's NEPA procedures and did

not have the potential to affect a historic property pursuant to the NHPA.  TVA disbursed

that grant to Metalforming in September 2004, almost a year before this suit was filed.

(Graham Decl. ¶ 5.)  By the time the Complaint was filed, construction on the

Metalforming plant was virtually complete.  (Morgan Decl. ¶ 4.)  Indeed, a Bowling

Green newspaper reported that Plaintiffs' attorney, W. Henry Graddy, IV, admitted when

the Complaint was filed that "the basic structures for Bowling Green Metalforming are

essentially complete, and so would probably not be affected by [Plaintiffs'] request [for

an injunction]."  Jim Gaines, *Suit Filed to Stall Transpark*, Bowling Green Daily News

(June 16, 2005), *available at*:

http://www.bgdailynews.com/articles/stories/public/200506/16/4uu5_top-news.html.

Moreover, as shown in Argument III.A. above, there is no effective relief against

TVA available to Plaintiffs because TVA's grantee, Metalforming, is not alleged to have

injured Plaintiffs, and TVA has not funded and has no plans to fund the ITA, the entity

responsible for developing the Transpark and allegedly injuring Plaintiffs. Accordingly, Plaintiffs' claims against TVA are moot and should be dismissed.

### C. Plaintiffs' claims for prospective relief are not ripe.

Plaintiffs also ask the Court to order TVA to comply with NEPA and the NHPA *before* disbursing funds or issuing permits related to the Transpark. As discussed above, with regard to the funds already disbursed by TVA, such claims are moot. To the extent that Plaintiffs' claims pertain to future actions to be taken by TVA, these claims do not involve "final agency action" under the APA and are unripe. 5 U.S.C. § 704 (2000).

"Closely akin to the standing requirement, and indeed not always clearly separable from it, is the ripeness doctrine." *Wyoming Outdoor Council v. United States Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999). The Supreme Court has explained that determining ripeness is necessary

> to prevent the courts, through avoidance of premature adjudication, from
> entangling themselves in abstract disagreements over administrative
> policies, and also to protect the agencies from judicial interference until an
> administrative decision has been formalized and its effects felt in a
> concrete way by the challenging parties.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *rev'd on other grounds Califano v. Sanders*, 430 U.S. 99 (1977). Article III requires that a plaintiff's injury be "certainly impending" before he may pursue a cause of action to recover for that injury. *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. at 158.

Nowhere in their Amended Complaint have Plaintiffs alleged that TVA has committed to granting funds in the future to any entity associated with the Transpark, that TVA is contemplating any such future grants, or that anyone even has applied for such a

grant. Indeed, TVA has affirmatively stated otherwise. Barker Decl. ¶¶ 8-11.[7] Hence, Plaintiffs' claims for prospective relief are unripe.[8]

### D. Plaintiffs' claim for declaratory relief should be dismissed.

Plaintiffs' claims for declaratory relief should be dismissed for the same reasons as their claims for injunctive relief. A party filing a declaratory judgment action must allege facts that show there is a controversy of "sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 964 (D.C. Cir. 1995) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Plaintiffs have not done so here with respect to TVA.

---

[7]     Plaintiffs plead that in 1999, TVA was interested in the Transpark (Am. Compl. ¶ 14) and that in 2000, ITA may have thought funding by TVA was an option. *Id.* ¶ 17. Such allegations about events of five and six years ago, even if accepted as true, do not demonstrate that TVA has any plans to provide funding to the Transpark or its tenants in the future.

[8]     They are also insufficient to invoke the jurisdiction of the Court under the APA, 5 U.S.C. § 704 (providing for review of final agency action) because speculation that TVA might provide future funding is not sufficient to "'impose[] an obligation, den[y] a right, or fix[] some legal relationship.'" *Action on Smoking & Health*, 28 F.3d 162, 165 (D.C. Cir. 1994) (quoting *NRDC v. United States Nuclear Regulatory Comm'n*, 680 F.2d 810, 815 (D.C. Cir. 1982)).

## CONCLUSION

For the foregoing reasons, TVA respectfully requests the Court to dismiss

Plaintiffs' Amended Complaint.

Respectfully submitted,

August 30, 2005

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

Maureen H. Dunn
General Counsel
D.C. Bar No. 212266

Harriet A. Cooper
Assistant General Counsel

Frank H. Lancaster

s/Maria V. Gillen
Maria V. Gillen
Telephone 865-632-7741

Attorneys for Tennessee Valley Authority

003744082

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2005, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send notification of

such filing by operation of the Court's electronic filing system to the following:

>David G. Bookbinder, Esq.
>Sierra Club
>408 C Street, NE
>Washington, D.C. 20002
>
>Sara E. Culley, Esq.
>United States Department of Justice
>601 D Street, NW
>Room 3135
>Washington, D.C. 20004

I further certify that on August 30, 2005, I served a copy of the foregoing document by

first-class mail, postage prepaid, on the following:

>George Ellard, Esq.
>LeBoeuf, Lamb, Greene & MacRae
>1875 Connecticut Avenue, NW
>Washington, D.C. 20009

>s/Maria V. Gillen
>Maria V. Gillen
>New Jersey Bar No. 025642001
>Tennessee Valley Authority
>Office of the General Counsel
>400 West Summit Hill Drive
>Knoxville, Tennessee 37902-1401
>Telephone 865-632-7741
>Facsimile 865-632-6718
>E-mail mvgillen@tva.gov