UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:05-cv-01190-RMU |
| | ) | Judge Ricardo M. Urbina |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| INTER-MODAL TRANSPORTATION AUTHORITY, INC, et al., | ) | |
| | ) | |
| Intervenor Defendants | ) | |

**DEFENDANTS UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants United States Environmental Protection Agency ("EPA") and United States Department of Housing and Urban Development ("HUD"), by and through undersigned counsel, respectfully move pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6), to dismiss Plaintiffs' Amended Complaint for declaratory and injunctive relief dated July 29, 2005, for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted. At this time, this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs fail to identify a final agency action pursuant to the Administrative Procedure Act ("APA"). In addition, Plaintiffs' claims are not ripe for judicial review and Plaintiffs have failed

1

to establish standing to assert these claims.  Therefore, dismissal pursuant to Federal Rule of

Civil Procedure 12(b)(1) and/or 12(b)(6) is appropriate.

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
United States Department of Justice

Dated this 30th day of August, 2005.

/s/ Sara E. Culley
SARA E. CULLEY (K.S. Bar No. 20898)
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Facsimile: (202) 305-0267

Of Counsel:

Marilyn J. Kuray, Esq.
Environmental Protection Agency
Office of General Counsel
Tel: (202) 564-3449

Stacey E. Singleton, Esq.
Department of Housing and Urban Development
Tel: (202) 708-0614

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:05-cv-01190-RMU |
| | ) | Judge Ricardo M. Urbina |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and TENNESSEE VALLEY AUTHORITY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| INTER-MODAL TRANSPORTATION AUTHORITY, INC, et al., | ) ) ) ) | |
| Intervenor Defendants | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS
EPA AND HUD'S[1/] MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**INTRODUCTION**

For several years, local decision-makers in Warren County, Kentucky have been planning and developing a project known as the Kentucky Trimodal Transpark ("Transpark"), a business and industrial park located near Bowling Green, Kentucky. Plaintiffs oppose the construction of the Transpark which has been ongoing since on or about June 10, 2004. The question before the Court is not, however, the merits of constructing the Transpark; rather, the applicable question here is whether there has been any final agency action by Defendants United States

---

[1/] Defendant TVA files separately pursuant to its independent litigating authority.

Environmental Protection Agency ("EPA") and United States Department of Housing and Urban

Development ("HUD") that would provide a jurisdictional basis for judicial review of Plaintiffs'

claims.  While, Plaintiffs assert that the federal trigger for bringing their challenges against

Defendant EPA and HUD is the appropriations for future grants, the reality is that Defendants

EPA and HUD have yet to approve applications for such grants.  Accordingly, Plaintiffs'

Amended Complaint should be dismissed for failure to identify any final agency action within

the meaning of Section 10 of the Administrative Procedure Act, 5 U.S.C. § 704 ("APA"), which

is the statute that permits challenges to federal actions.   Dismissal of Plaintiffs' Amended

Complaint is also required, because Plaintiffs' claims are not yet ripe and Plaintiffs lack

standing.

## FACTUAL BACKGROUND

### I.  Transpark Project

The Transpark, a business and industrial park, is currently under construction in Warren

County, Kentucky.  Pls.' Am. Compl., ¶¶ 11, 32.  The Inter-Modal Transportation Authority

("ITA"), a non-profit, non-stock Kentucky corporation, was established by Warren County to act

as the county's agency in acquiring, developing and financing the Transpark.  *Id*. at ¶ 12.

The Transpark project is being developed in phases; it may eventually involve road, air

and rail components.  Pls.' Am. Compl., at ¶ 11; Hizer Decl., ¶ 7, 8.  Phase I of the Transpark

project development includes the purchase and development of approximately 900 acres of land

and the development of that land as a business and industrial park.  Hizer Decl., ¶ 10, 13, 14.

Construction of Transpark's Phase I began on or about June 10, 2004.  *Id.* at ¶ 14.  Phase I of the

Transpark was planned, designed, financed and has been constructed without any federal funding

from Defendants EPA and HUD.  *Id.*  No development of any part of the project beyond Phase I has been undertaken or will be undertaken until Phase I is completed and a determination is made concerning whether to continue development of the Transpark.  *Id*. at ¶ 9.

One component of the current construction at the Transpark site is a training center intended to be part of the Kentucky Community and Technical College System.  Pls.' Am. Compl., ¶ 9, Hizer Decl., ¶ 19.  The training center is a project of the Commonwealth of Kentucky; accordingly, it is not being constructed by the ITA.  Hizer Decl., ¶ 19.

## II.  Appropriated Funds and Status of Applications for Funds.

Plaintiffs' Amended Complaint brings claims against Defendant EPA, because of Congressional appropriations made for fiscal years 2004 and 2005.  Pls.' Am. Compl., ¶ 8. Plaintiffs also bring claims against Defendant HUD for a Congressional appropriation made in fiscal year 2005.  *Id*. at ¶ 9.  These appropriations, in and of themselves, however, do not constitute final agency action; rather, the appropriated money becomes obligated, and thus, final agency action occurs, only after a grant is considered and approved.

### A.  EPA Funds Appropriated for Warren County Water District and Bowling Green, Kentucky (South Central Kentucky Water Infrastructure Project).

EPA's 2004 Appropriation Act appropriated $2,000,000 "to the Intermodal Transportation Authority in Bowling Green, Kentucky, for Kentucky TriModal Transpark Water and Sewer Improvements."[2]  When EPA Headquarters notified EPA Region 4 that these funds had been appropriated for the ITA, EPA Region 4 contacted the ITA to provide it with information on the grant application process.  Rayfield Decl., ¶ 6.  EPA Region 4's "Special Appropriations Project

---

[2] P.L. 108-199, 118 Stat 3;  H.R. Conf. Rep. No. 108-401 p. 1140.

Procedures" informed the ITA that any grant approval would be contingent upon compliance with applicable federal laws, including the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA").  *Id*. at ¶¶ 4, 6.  The Kentucky Division of Water, acting on behalf of EPA Region 4, also met with the ITA and the Warren County Water District to discuss the process for applying for an EPA grant.  *Id*. at ¶ 6.  EPA's guidelines provide that a grantee own and operate the facilities built by a grant.  *Id*.  Because Warren County Water District intended to own the facilities built with the grant funds, it was determined that the Water District would be the appropriate grantee.  *Id*.

Before EPA can take any action relating to the award of a grant, the Warren County Water District must submit, through the Kentucky Division of Water, a complete grant application with a workplan and proposed budget.  *Id*. at ¶¶ 4, 10.  In addition, the Warren County Water District must submit an Environmental Information Document (EID).[3]  *Id*. at ¶¶ 4, 7, 8.  The Kentucky Division of Water has not yet submitted to EPA a complete grant application or EID for any of the appropriated funds.  *Id*. at ¶ 11.  Therefore, EPA has not yet awarded or decided whether to award any of the aforementioned funds to Warren County Water District or any other entity.  *Id*.

In EPA's 2005 Appropriation Act, Congress provided an additional $2,000,000 to "the City of Bowling Green, Kentucky, for the South Central Kentucky Water Infrastructure

---

[3]  An EID contains information regarding the environmental impacts of the proposed project for purposes of providing EPA with the necessary information to comply with the NEPA review process.  Rayfield Decl., ¶ 4; 40 C.F.R. § 6.101(d).  According to EPA's NEPA regulations, the EID "will be of sufficient scope to enable the Responsible Official to prepare an environmental assessment . . . ."  40 C.F.R. § 6.101(d).  In addition, Region 4's "Special Appropriations Project Procedures" provide for the EID to contain a certification from the State Historic Preservation Officer (SHPO) stating that the project will not result in any impacts to historically significant properties or that there is an adequate mitigation plan in place.  Rayfield Decl., ¶ 4.

Project. . . ."[4]  EPA Headquarters finalized guidelines for the award of the fiscal year 2005 grants on June 6, 2005.  *Id.* at ¶ 12.  EPA Region 4 has not yet received any information from the City of Bowling Green or the Kentucky Division of Water concerning a formal application or a proposed project.  *Id.* at ¶ 12.  EPA, thus, has not committed any of the funds at issue from the 2005 Appropriations Act.

Consequently, EPA does not have any authority over the prospective applicants and their intended projects.  The NEPA and NHPA process cannot commence until an actual application is received, and it is only after approval and award of a grant that EPA is permitted to attach conditions to the funds and impose obligations on the grantee.  *Id* at ¶ 11.

### B.  HUD Funds Appropriated for Bowling Green, Kentucky (South Central Kentucky Training and Development Project).

HUD's 2005 Appropriation Act appropriated "$1,500,000 for the City of Bowling Green, Kentucky for purchasing equipment for the South Central Kentucky Training and Development Project."[5]  McNally Decl., ¶ 8.  On May 2, 2005, HUD sent a letter of invitation and grant application to Bowling Green, Kentucky inviting the city to apply for the funds appropriated in HUD's 2005 Appropriation Act.  *Id.* at ¶ 9.  On July 21, 2005, HUD received an application from the City of Bowling Green for the appropriated funds.  *Id.*  At this time, HUD has taken no action in connection with the aforementioned application.  *Id.*  Before HUD can obligate any of the

---

[4] Plaintiff suggests the amount of the appropriation at issue was $1,750,000, however, the Conference Report accompanying the enacted appropriation makes it clear that $2,000,000 was appropriated.  *See* P.L. 108-447, 118 Stat 2809; H.R. Conf. Rep. No. 108-792, p. 1590.

[5] The South Kentucky Training Development Project is the training center located at Transpark.  Pls.' Am. Compl., ¶ 9.  Plaintiff mistakenly suggests an appropriation was made in the amount of $1,750,000.  *Compare* Pls.' Am. Compl., ¶ 9 *with* McNally Decl., ¶ 8 and Hizer Decl., ¶ 19.

appropriated funds for the city, several steps must be completed.  *Id*. at ¶ 6.  HUD must review

the application, in order to determine if it is consistent with the language of HUD's 2005

Appropriation Act and the accompanying Conference Report as well as other HUD requirements.

*Id*.  The application may need to be revised before HUD is able to approve the application.  *Id*.

Upon approval of the application, HUD will send an award letter, grant agreement and associated

forms to the City of Bowling Green.  *Id*.  The City of Bowling Green would then be required to

return the executed documents to HUD.  *Id*.  If HUD receives the aforementioned documents, an

authorized representative of HUD will sign the documents.  *Id*.  Such actions must be completed

before the appropriated funds may be distributed.  *Id*.

Accordingly, HUD has not yet completed its consideration of the application or approved

the award at issue.  *Id*. at ¶¶ 9, 10; *see also* ¶¶ 6, 7 (explaining the review process that must be

completed by HUD).  As HUD has not approved any award of the appropriated funds or given

such funds to the City of Bowling Green, HUD does not possess the authority to dictate the

activities of the city in connection with the training center.  *Id*. at ¶ 11.

### IV.  Chronology and Plaintiffs' Amended Complaint.

On June 15, 2005, Plaintiffs filed a Complaint for declaratory and injunctive relief

alleging that Defendants EPA and HUD violated the National Historic Preservation Act

("NHPA") and the National Environmental Policy Act ("NEPA").  At this time, Plaintiffs also

filed a Motion for Preliminary Injunction.  In response, EPA and HUD filed a Motion to Dismiss

and Response to Plaintiffs' Motion for Preliminary Injunction.  On July 11, 2005, Plaintiffs filed a

Motion to Withdraw their Motion for Preliminary Injunction, which the Court granted on July 13,

2005.  On July 29, 2005, pursuant to a schedule adopted by the parties, Plaintiffs filed an

Amended Complaint.  Pls.' Am. Compl. ¶¶ 1-54.

Specifically, Plaintiffs' Amended Complaint alleges Defendants EPA and HUD violated section 106 of the NHPA by failing to:  identify and take into account the effects of the Transpark on historic properties; afford the Advisory Council on Historic Preservation and the Kentucky State Historic Preservation Officer an opportunity to comment on the effects of the Transpark on historic properties; and to seek and consult with consulting parties and the public under 36 C.F.R. Part 800 regarding properties that might be listed or eligible for listing on the National Register of Historic Places, available alternatives to the action, and effects of the Transpark project prior to demolition activities.  *Id*. at ¶ 42.  Secondly, Plaintiffs allege Defendants EPA and HUD violated section 106 of the NHPA by failing to exercise their authority to prevent or delay the destruction of historic properties prior to compliance with the NHPA.  *Id*. at  ¶ 46.  Plaintiffs also allege that "the demolition that has already occurred at the Transpark . . . violates Section 110(k) of the NHPA, which prohibits federal assistance to projects that involve anticipatory demolition."  *Id*. at ¶ 47.  Finally, Plaintiff alleges Defendants EPA and HUD violated NEPA by failing to prepare an Environmental Impact Statement ("EIS") for the Transpark project.  *Id*. at ¶ 53.

In response, EPA and HUD file this Motion to Dismiss Plaintiff's Amended Complaint and the instant Memorandum of Points and Authorities In Support thereof.[6]

## STATUTORY BACKGROUND

_____

[6] As detailed above, Plaintiffs withdrew their Motion for Preliminary Injunction and have not elected to file a new motion.  Plaintiffs' Amended Complaint, however, continues to list a request for such relief.  *See* Pls.' Am. Compl., at 20.  If Plaintiff intends to seek a preliminary injunction, it must file a separate motion.  *See* LcvR 65.1(c).  In any event, an examination of this Memorandum and EPA and HUD's initial Response to Plaintiff's Motion for Preliminary Injunction makes clear that Plaintiffs could not succeed in obtaining such relief.

### I. NEPA

In enacting NEPA, Congress was concerned with the potential impacts of major federal actions significantly affecting the physical environment. *See Metropolitan Edison v. People Against Nuclear Energy*, 460 U.S. 766, 772-73 (1983). The purpose and intent of NEPA is to focus the attention of the federal government and the public on a proposed action so that the consequences of the action can be studied before the action is implemented. 42 U.S.C. § 4321; 40 C.F.R. § 1501.10; *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 371 (1989). Regulations promulgated by the Council on Environmental Quality (CEQ), 40 C.F.R. §§ 1500–1508, provide guidance in the application of NEPA. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989). Implicit in NEPA's mandates is the existence of a federal action. *See Atlanta Coalition v. Atlanta Regional Commission*, 599 F.2d 1333, 1344 (5th Cir. 1979) ("Congress did not intend NEPA to apply to state, local, or private actions hence, the statute speaks only to 'federal agencies' and requires impact statements only as to 'major federal actions.'"). NEPA's mandate to federal agencies, is "essentially procedural . . . It is to insure a fully informed and well-considered decision . . . ." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978). While NEPA mandates the procedures by which federal agencies must consider the environmental impacts of their actions, it does not dictate the substantive results. *Robertson*, 490 U.S. at 350 (1989); *Strycker's Bay Neighborhood Council v. Karlen*, 444 U.S. 223, 227-28 (1980) (citing *Vermont Yankee Nuclear Power Corp*, 435 U.S at 558).

### II. NHPA

By enacting the NHPA, Congress directed federal agencies to: (1) consider the impact of

federal undertakings on historic resources of national significance (section 106, 16 U.S.C. § 470f) and (2) assume responsibility for the preservation of historic resources that they own or control (section 110, 16 U.S.C. § 470h-2). The core of a federal agency's responsibilities under the NHPA with regard to federal agency actions can be found in section 106 of the Act, which sets forth the responsibilities of a federal agency over a proposed federal or federally assisted "undertaking." 16 U.S.C. § 470f.[7]

The requirements set forth in section 106 of the NHPA are essentially procedural in nature. *National Min. Ass'n v. Fowler*, 324 F.3d 752, 755 (D.C. Cir. 2003); *United States v. 162.20 Acres of Land*, 639 F.2d 299, 302 (5th Cir. 1981) *cert. denied*, 454 U.S. 828 (1981) (The Act "neither . . . forbid[s] the destruction of historic sites, nor . . . command[s] their preservation."). Section 106 requires agency decision-makers to consider specified information concerning the effects of a federal undertaking on National Register-eligible resources prior to the agency's issuance of a final decision. Furthermore, as set forth in *Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750, 754-55 (D.C. Cir. 1995), the only activities invoking federal obligations under the NHPA include conducting an undertaking involving federal funding, or the

---

[7] 16 U.S.C. § 470f provides:

> The head of any federal agency having direct or indirect jurisdiction over a proposed federal or federally assisted undertaking in any State and the head of any federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such federal agency shall afford the Advisory Council on Historic Preservation established under Title II of this Act a reasonable opportunity to comment with regard to such undertaking.

9

issuance of a federal license.  *See also National Min. Ass'n*, 324 F.3d at 754 ("This circuit has

held that Congress' expanded definition of 'undertaking' does not alter the statutory requirement

that the Council regulate only "federally funded or federally licensed undertakings.") (citation

omitted).

## STANDARD OF REVIEW

### I.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim if the court

lacks jurisdiction over the subject matter of a claim.  A party seeking federal court jurisdiction

bears the burden of demonstrating that jurisdiction exists.  *McNutt v. Gen. Motors Acceptance

Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d

487 (D.C. Cir. 1984).  The Supreme Court presumes that federal courts lack jurisdiction unless

the contrary appears affirmatively from the record.  *United States Dep't of Energy v. Ohio*, 503

U.S.607. 614 (1992); *Renne v. Geary*, 501 U.S. 312, 315 (1991).  As courts of limited

jurisdiction, federal courts may only decide cases after the party asserting jurisdiction

demonstrates that the dispute falls within the court's constitutional and statutory jurisdiction.

*Rasul v. Bush*, 124 S. Ct. 2686, 2701 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of

America*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by

Constitution and statute")).  "[I]n deciding a 12(b)(1) motion, it is well established that a court is

not limited to the allegations in the complaint but may consider material outside of the pleadings

in its effort to determine whether the court has jurisdiction in the case."  *Bennett v. Ridge*, 321

F.Supp.2d 49, 52 (D.D.C. 2004); *Haase v. Sessions*, 835 F.2d 902, 905–906 (D.D.C. 1987)

(holding that a court's consideration of materials outside the pleadings in deciding a 12(b)(1)

motion does not require that the court treat the motion as one for summary judgment).

Federal Rule of Civil Procedure 12(b)(6) also forms a basis for dismissal of Plaintiffs'

claims.[8/]  Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of

law.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citing *Hishon v. King & Spalding*, 467 U.S.

69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41 (1957)).  "[I]f as a matter of law 'it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations,'

a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or

on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327 (quoting *Hishon*, 467 U.S. at

73).  Thus, claims should be dismissed under Rule 12(b)(6) where, as here, "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his legal claim which would entitle

him to relief."  *Conley*, 355 U.S. at 102.

## ARGUMENT

Dismissal of Plaintiffs' Amended Complaint is appropriate, because Plaintiffs fail to

identify any final agency action within the meaning of the APA.  Plaintiffs' Complaint should

also be dismissed, because Plaintiffs' claims are not yet ripe and Plaintiffs lack standing to bring

this matter.

### I.  Plaintiffs Fail to Identify Any Final Agency Action Taken by Defendants EPA and HUD.

---

[8/]  Dismissal for failure to challenge a final agency action under the APA may be proper pursuant to both Rule 12(b)(6) and 12(b)(1).  *See Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*,  324 F.3d 726, 731 (D.C. Cir. 2003) ("[i]f there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA.  Dismissal is therefore appropriate pursuant to 12(b)(6)"); *CropLife America v. Environmental Protection Agency*, 329 F.3d 876, 882 (D.C. Cir. 2003) ("In *Reliable*, we determined that the District Court lacked jurisdiction to review the Consumer Product Safety Commission's ("CPSC") process absent final agency action").

The APA provides the only waiver of sovereign immunity available to Plaintiffs for their challenges to alleged federal actions. Before the APA can be used as a basis for judicial review, Plaintiffs bear the burden of identifying a final agency action taken by Defendants EPA and HUD. Because the appropriation of funds by Congress does not constitute final agency action and Defendants EPA and HUD have not approved any grant award of the appropriated funds, Plaintiffs have not met their necessary burden.

It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Navajo Nation*, 537 U.S. 488, 123 S. Ct. 1079, 1089 (2003); *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). In determining when such consent is present, the Supreme Court has long held that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Mitchell*, 445 U.S. at 538 (quoting *United States v. King*, 395 U.S. 1, 4 (1969)); *accord College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) and *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992).

Plaintiffs allege jurisdiction on the basis of 5 U.S.C. § 704 (APA), 29 U.S.C § 1331 (federal question jurisdiction)[9], 28 U.S.C. §§ 1361 (mandamus statute) and 2201, 2202 (declaratory judgment). Pls.' Am. Compl. ¶ 2. Section 1331, however, does not waive the United States' sovereign immunity. *Benvenuti v. Department of Defense*, 587 F.Supp. 348, 352 (D.D.C. 1984). Likewise, § 1361 does not constitute a waiver of sovereign immunity. *Washington Legal*

---

[9] Presumably, Plaintiffs intend to reference 5 U.S.C. § 706 and 28 U.S.C § 1331.

*Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) ("It is well settled that this statute [§ 1361] does not by itself waive sovereign immunity.") (citations omitted). Plaintiffs' jurisdictional allegations also cite to the Declaratory Judgment Act. However, that Act, 28 U.S.C. §§ 2201, 2202 does not waive sovereign immunity. *United States v. King*, 395 U.S. 1, 5 (1969). *See also Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1230 (1st Cir. 1996) ("The government correctly argues that [plaintiff] wrongly relies on the Declaratory Judgment Act . . . to constitute a waiver of sovereign immunity because the Act neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief.") (internal quotation omitted). Thus, the APA, 5 U.S.C. §§ 701–706 provides the only waiver of sovereign immunity available to Plaintiffs.

Section 704 of the APA defines the limits of this waiver of sovereign immunity. It provides for judicial review of only two categories of administrative action: (1) "[a]gency action made reviewable by statute" and (2) "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Because the substantive statutes under which Plaintiffs bring suit do not provide Plaintiffs a private right of action, they must rely on the second category of section 704 for the waiver of sovereign immunity. Consequently, Plaintiffs have the burden of establishing "final agency action for which there is no other adequate remedy in a court." *Id.*

Further, Plaintiffs are not permitted to make generalized attacks upon actions undertaken by Defendants EPA and HUD. "Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Norton v. Southern Utah Wilderness Alliance*, 124 S.Ct. 2373, 2380 (2004) (citations omitted). The *Norton* Court noted that these must be "circumscribed, discrete agency actions" and may include "five categories of decisions

13

made or outcomes implemented by an agency – 'agency rule, order, license, sanction or relief.'"
*Id.* at 2378–80 (citing 5 U.S.C. § 551(13)).  In determining whether the agency action is final, the
Court should consider "whether the agency's position is definitive and whether it has a direct and
immediate . . . effect on the day-to-day business of the parties." *IPAA v. Babbitt*, 235 F.3d 588,
594 (D.C. Cir. 2000) (internal quotations omitted).  As stated by the Supreme Court the "core
question is whether the agency has completed its decision-making process, and whether the result
of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S.
788, 797 (1992).  Thus, "agency action is final when it 'imposes an obligation, denies a right, or
fixes some legal relationship.'" *Action on Smoking and Health v. Dep't of Labor*, 28 F.3d 162,
165 (D.C. Cir. 1994), (*quoting NRDC v. United Stated Nuclear Regulatory Comm'n*, 680 F.2d
810, 815 (D.C. Cir. 1982)).

      Plaintiffs' Amended Complaint brings claims against Defendants EPA and HUD, because
of Congressional appropriations made for the Warren County Water District and the City of
Bowling Green.  The mere enactment of an Appropriation Act by Congress, however, cannot be
considered final agency action.  The APA expressly excludes Congress from the definition of
agency.  Pursuant to the APA, an agency is "each authority of the Government of the United
States, whether or not it is within or subject to review by another agency, but does not include . . .
Congress."  5 U.S.C.§§ 701(b)(1), 551(1).  *See also Capitol Hill Restoration Soc'y v. Ensign*,
1996 U.S.Dist. LEXIS 19771 *5 (Finding the acting architect of the Capitol was not a "federal
agency" subject to the NHPA, because the NHPA "adopts the definition contained in [the APA]
which states that Congress is not an agency.").

      Furthermore, this Court recently examined the issue of Congressional appropriations in

the context of NEPA.  *See Citizens Alert Regarding the Environment v. EPA*, 259 F.Supp.2d 9

(D.D.C. 2003) ("*CARE*"), *aff'd,* 2004 WL 1336644 (D.C. Cir. June 15, 2004).  The *CARE*

plaintiffs contended that because EPA's Appropriation Act appropriated funds for a township's

sewer project, the project could not go forward without the completion of a NEPA review.  *Id*. at

12.  At the time of the suit, the township had submitted a grant application to receive the

appropriated funds.  *Id*. at 19.  EPA, however, was still engaged in considering and reviewing the

application.  *Id*. at 19-20.  Thus, the *CARE* court rejected the plaintiffs' claim.  The court found

that although the project might be the future recipient of appropriated funds because the agency

had not yet decided to award the grant, the project could not be enjoined.  *CARE*, 259 F.Supp.2d

at 20.[10]  In *ACORN v. SEPTA*, the court reached a similar result and dismissed a plaintiffs'

complaint for lack of subject matter jurisdiction, because no final decision had been made on an

application for a federal urban mass transit grant.  462 F.Supp. 879, 884 (E.D. Pa. 1978), *aff'd*

*without opinion*, 605 F.2d 1194 (3rd Cir. 1978).  The *ACORN* court's decision relied, in part, on a

case from this Court finding that "until the [federal agency] makes a final decision on an

application for a federal urban mass transportation grant, there is no final agency action, the

dispute is not ripe for adjudication, and the court lacks jurisdiction."  *See* 462 F.Supp. at 884

(discussing *Hudson v. Washington Metropolitan Transit Authority*, Civ. No. 75-0360 (D.D.C.

July 8, 1976)).  Accordingly, it is clear that judicial review before an agency can complete its

---

[10] The *CARE* court concluded that EPA's actions did not constitute a "major federal action"
pursuant to NEPA, nonetheless its analysis applies equally to final agency action within the
meaning of the APA.  *See Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 197,
n. 7 (D.C. Cir. 2003) ("This court has expressly concluded that the requisite final agency action .
. . of the APA is the 'major Federal action [] significantly affecting the quality of the human
environment'" as required by NEPA.) (citations omitted).

review and approval of grant applications is inappropriate. *CARE*, 259 F.Supp.2d at 14; *ACORN*, 462 F.Supp. at 884.

Here, Plaintiffs certainly cannot identify any final agency action taken by Defendants EPA and HUD. In this case, neither the Warren County Water District nor the City of Bowling Green have applied to Defendant EPA for the appropriated funds. Rayfield Decl., ¶ 11, 12. Since Defendant EPA has not received any grant applications, it has not and cannot yet commence any sort of review of the grants at issue. In addition, Defendant HUD has taken no action regarding the grant application it received from the City of Bowling Green. McNally Decl., ¶ 9. Thus, HUD has not yet completed its review of the grant application nor approved any award of the appropriated funds. *Id*. at ¶¶ 9, 10.

Plaintiffs also allege that "the Transpark has already benefitted from, and is based on pervasive federal action in the form of financial assistance from EPA [and] HUD. . . ." *See* Pls.' Am. Compl., ¶ 25. Plaintiffs' suggestion fails to identify any final agency action, because Defendants EPA and HUD have not given any of the funds at issue to any entity at Transpark. Contrary to Plaintiffs' assertions that HUD funded the training center at Transpark, Defendant HUD has not yet approved any award of the appropriated funds. McNally Decl., ¶ 10. Consequently, the City of Bowling Green has not received the appropriated funds from HUD. *Id*. at ¶ 11. Likewise, Defendant EPA has not yet awarded the appropriated funds at issue. Rayfield Decl., ¶¶ 11, 12. Thus, neither the Warren County Water District nor the City of Bowling Green have received the funds at issue from Defendant EPA. *Id*. In other words, Plaintiffs have not identified *any funding* from Defendants EPA and HUD that has benefitted the Transpark site.

Plaintiffs fail to show any agency actions taken by Defendants EPA and HUD that could

constitute part of an agency rule, order, license, sanction or relief; consequently, their Amended

Complaint should be dismissed.  *See Norton*, 124 S.Ct. at 2378 (citing 5 U.S.C. § 551(13)).

### B.  Plaintiffs' Claims are Not Yet Ripe.

Likewise, for the same reasons set forth above, Plaintiffs' suit is not ripe.  Defendants

EPA and HUD have not taken final agency action regarding the grants; consequently, Plaintiffs

have not established they have a jurisdictional basis for judicial review of their claims at this time.

Plaintiffs' claims are not ripe for review because "the existence of the dispute itself hangs

on future contingencies that may or may not occur." *Texas v. United States*, 523 U.S. 296, 300

(1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568,  580-81

(1985) (claim not ripe where it rests on "contingent future events that may not occur as

anticipated, or indeed may not occur at all")).  The Supreme Court in *Abbott Laboratories v.

Gardner*, explained that the "basic rationale" of the ripeness doctrine as applied to review of

administrative action:

> is to prevent the courts, through avoidance of premature
> adjudication, from entangling themselves in abstract disagreements
> over administrative policies, and also to protect the agencies from
> judicial interference until an administrative decision has been
> formalized and its effects felt in a concrete way by the challenging
> parties.

387 U.S. 136, 148-49 (1967) (emphasis added) *rev'd on other grounds Califano v. Saunders*, 430

U.S. 99 (1976); *see also Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732–33 (1998).

As Defendants EPA and HUD detailed above, the grant applicants have yet to receive any

federal funding.  Despite this fact, Plaintiffs seek to involve the Court in speculation and ask for

judicial intervention prior to the issuance of final agency decisions by Defendants EPA and HUD

regarding the grant applications.  Furthermore, Plaintiffs' current suit is based on a number of

premature assumptions. For example, Plaintiff contemplates that the Warren County Water District and the City of Bowling Green will, indeed, submit all of the grant applications necessary to receive the appropriated funds. Plaintiffs further assume that they will be dissatisfied with the result of any future actions taken by Defendants EPA and HUD upon the review and consideration of those applications. At this juncture, no one – not even Plaintiffs – can predict if these events will actually occur.[11] It is clear that Plaintiffs' suit is "premised upon contingent future events that may not occur as anticipated, or indeed may not occur at all" and should be dismissed. *Texas*, 523 U.S. at 300.

### C. Plaintiffs Lack Standing.

Plaintiffs' Amended Complaint also fails to explain how their injuries are caused by Defendants EPA and HUD or how their alleged injuries could be redressed by a ruling in their favor – nor can they do so given the current factual scenario. Therefore, Plaintiffs lack standing to bring this suit.

Standing is a jurisdictional issue deriving from the requirement of a live case or controversy pursuant to Article III of the Constitution. *American Library Ass'n v. F.C.C.*, 401 F.3d 489, 492 (D.C. Cir. 2005); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court explained that "the irreducible constitutional minimum" of standing contains three elements. First, the plaintiff must have suffered an "'injury in fact' – an invasion of a legally

---

[11] Notably, Plaintiffs' Amended Complaint includes their allegations regarding local decision-makers' rejections of federal funds for the Transpark project. Pls.' Am. Compl., ¶¶ 26, 30. Given such assertions, Plaintiffs can hardly claim that it is certain that the non-Federal decision-makers will decide to complete the process necessary to obtain federal funds.

protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'"  504 U.S. at 560; *see also Friends of the Earth, Inc.*, 528 U.S. at 180-81 (2000).  Second, there must be a causal connection between the injury and the conduct complained of, *i.e.*, the injury has to be fairly traceable to the challenged action of the defendant. *Lujan*, 504 U.S. at 560-61.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Id*.  As the Supreme Court noted in *Lujan*, the elements of standing are "not mere pleading requirements but rather an indispensable part of [Plaintiffs'] case." *Id*. at 561.  Accordingly, Plaintiffs must allege sufficient facts to satisfy these three elements.  *National Ass'n of Home Builders v. Norton*,  298 F.Supp.2d 68, 80 (D.D.C. 2003), *aff'd*, 415 F.3d 8 (D.C. Cir. 2005), (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998)).

Whether Plaintiffs have alleged an injury cognizable under Article III is only the first inquiry in assessing standing; the existence of an injury does not alone provide standing. Plaintiffs must also demonstrate that the alleged injury was caused by the action complained of and that the requested relief would redress that alleged injury.  Plaintiffs need not demonstrate causation and redressability to a certainty.  *National Wildlife Fed'n v. Hodel*, 839 F.2d 694, 705 (D.C. Cir. 1988) (citations omitted).  Plaintiffs should, however, "precisely trace the connection between injury and relief" because it is not up to a court to construct a "plausible scenario whereby an order of this court might provide relief for injuries not specifically pleaded." *Dellums v. U.S. Nuclear Regulatory Comm'n*, 863 F.2d 968, 974-75 (D.C. Cir. 1988).  Moreover, Plaintiffs must offer more than mere speculation to support a finding of redressability.  *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 669-70 (D.C. Cir. 1987).  Thus, Plaintiffs must

demonstrate "that a decision in their favor 'will produce tangible, meaningful results in the real world.'" *Pritikin v. Dep't of Energy*, 254 F.3d 791, 799 (9th Cir. 2001) (quoting *Common Cause v. Dep't of Energy*, 702 F.2d 245, 254 (D.C. Cir. 1983)).

Here, Plaintiffs' Amended Complaint fails to meet the necessary causation and redressability requirements. Plaintiffs' Amended Complaint centers on alleged injuries that stem from the construction occurring at the Transpark site. As detailed above, Defendants EPA and HUD have not provided any of the funding for this construction nor do they have any authority to dictate the activities of the prospective grant applicants. Therefore, Plaintiffs have failed the causation requirement of standing.

Moreover, if Plaintiffs' prayer for relief were granted and Defendants EPA and HUD were ordered by this Court to comply with NEPA and the NHPA, it is incomprehensible how such compliance could have any effect on the Transpark project, a project in which Defendants EPA and HUD are not the decision-makers. As described above, the project's local decision-makers are currently proceeding without federal funding from either Defendant, and Defendants have no authority to require any modification in those activities (or that those activities cease). Furthermore, even if Defendants EPA and HUD were ordered to cease all future funding of the appropriations for the Warren County Water District and the City of Bowling Green that would not prevent the ITA from continuing construction of the Transpark. *See* Hizer Decl., ¶¶ 14, 16-19. Thus, Plaintiffs fail to show in any way "that a decision in their favor would produce tangible, meaningful results." *Pritikin*, 254 F.3d at 799 (internal quotation omitted). Consequently, Plaintiffs' Amended Complaint should also be dismissed for failure to show standing. *See Coalition for Underground Expansion*, 333 F.3d at 196 (Affirming dismissal of

20

plaintiffs' NEPA and NHPA claims, where the trial court found "the myriad of injuries alleged by plaintiffs are in no respect caused by any action or inaction of the federal defendants who remain in the case and could not be redressed by any conceivable ruling in plaintiffs' favor."); *Citizens Alert Regarding The Environment v. Leavitt*, 355 F.Supp.2d 366, 373 (D.D.C. 2005) (Dismissing action when "plaintiffs would have sustained their alleged injuries . . . notwithstanding the [federal agency's] purported noncompliance with NEPA, and thus, their claim of injury [was] simply too attenuated to be fairly traceable to any action by defendants.").

## CONCLUSION

Based on the aforementioned, Defendants EPA and HUD respectfully request that their motion to dismiss be granted.

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
United States Department of Justice

/s/ Sara E. Culley

Dated this 30th day of August, 2005.

SARA E. CULLEY (K.S. Bar No. 20898)
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Facsimile: (202) 305-0267

Of Counsel:

Marilyn J. Kuray, Esq.
Environmental Protection Agency
Office of General Counsel
Tel: (202) 564-3449

Stacey E. Singleton, Esq.

21

Department of Housing and Urban Development
Tel: (202) 708-0614

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2005, I electronically filed the foregoing documents with the

Clerk of the Court using CM/ECF which will send notification of such filing by operation of the

Court's electronic filing system to the following:

> David G. Bookbinder, Esq.
> Sierra Club
> 408 C Street, NE
> Washington D.C. 20002
>
> Maria V. Gillen
> Tennessee Valley Authority
> Office of the General Counsel
> 400 West Summit Hill Drive
> Knoxville, Tennessee 37902-1401

I further certify that on August 30, 2005, I caused a copy of the foregoing document to be served

first-class mail, postage prepaid on the following:

> George Ellard, Esq.
> LeBouef, Lamb, Greene & MacRae
> 1875 Connecticut Ave., N.W.
> Washington D.C. 20009

> /s/ Sara E. Culley
> SARA E. CULLEY (K.S. Bar No. 20898)
> Trial Attorney
> United States Department of Justice
> Natural Resources Section
> P.O. Box 663
> Washington, D.C. 20044-0663
> Tel: (202) 305-0466
> Facsimile: (202) 305-0267