UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 1:05-cv-01190-RMU |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and TENNESSEE VALLEY AUTHORITY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF DOROTHY RAYFIELD**

I, Dorothy Rayfield, make the following declaration based on personal knowledge, information, and belief:

1. I am a supervisor at the United States Environmental Protection Agency (EPA), Region 4, in Atlanta, Georgia. I have held this position since 1996. I am Chief of the Construction and Technical Assistance Section in the Permits, Grants and Technical Assistance Branch of the Water Division at EPA Region 4. As such, my responsibilities include: supervising EPA staff who manage EPA grants for the construction of wastewater and drinking water facilities including Congressional Appropriation Act grants included in EPA's State and Tribal Assistance Grant account of the Agency's annual fiscal appropriation.

2. I make the following statements based upon personal knowledge and information obtained by me during the course of my official duties.

3. In general, the process of handling an Appropriation Act grant (commonly referred to as an earmark grant) in Region 4 is as follows: When the EPA Appropriation Act is enacted, EPA Headquarters notifies the Regional Office of funds that have been appropriated for projects in the Region. We then contact the state or the local government that will be the grant recipient. We provide the prospective grant recipient with a Special Appropriations Project Workbook which discusses the grant application and grant management processes. The requirements of applicable statutes, including the environmental review requirements of the National Environmental Policy Act (NEPA) and the requirements of the National Historic Preservation Act (NHPA), must be completed by EPA before EPA decides whether a grant for construction can be awarded

and funds provided for construction activities. As explained generally in the attached letter to the Karst Environmental Education and Protection, Inc., if significant environmental impacts were to be identified, the Agency would publish a notice in the Federal Register of its intent to conduct an Environmental Impact Statement (EIS). (See Exhibit 1.) The EIS would identify those impacts and, if appropriate, EPA would consider whether to include mitigation measures as conditions on the grant before it was awarded.

4. Before EPA can take any further action relating to an Appropriation Act grant, the grantee must submit a complete grant application with a workplan and proposed budget. In order for EPA to begin its NEPA review, EPA must receive from the prospective grantee information regarding the environmental impacts of the proposed project for purposes of complying with the NEPA review process. This is known as the Environmental Information Document (EID). As required by Region 4's guidelines applicable to earmarks,[1] the EID must also contain a certification from the State Historic Preservation Officer (SHPO) that the project will not result in any impacts to historically significant properties or that there is an adequate mitigation plan in place. EPA will then include the SHPO's recommendation in its NEPA process and provide for any consultation and appropriate findings required by the NHPA. EPA also coordinates the NEPA process with any required consultation with the United States Fish and Wildlife Service and/or the United States National Marine Fisheries Service regarding impacts on listed endangered and threatened species under the Endangered Species Act and with the United States Army Corps of Engineers to determine if there is an impact to wetlands requiring a permit under the Clean Water Act or an impact to navigable waters under the Rivers and Harbors Act. EPA Region 4 does not award grants with construction components until the NEPA process has been completed. The Agency may, however, award a grant for the planning portion of the project prior to the completion of NEPA. No such planning grant has been requested by the Warren County Water District or any other entity in connection with this project.

5. Pursuant to a grant agreement between the Kentucky Environmental and Public Protection Cabinet, Department for Environmental Protection, Division of Water and EPA Region 4, the Kentucky Division of Water administers the Special Appropriations Projects. Administration includes initial contact with the grantees, reviewing the grantee's environmental documents, working with the grantees in developing their application, budget and workplan, and conducting construction inspections.

6. Upon notification by EPA Headquarters that funds had been appropriated for the Intermodal Transportation Authority (ITA) in Bowling Green, Kentucky, for water and sewer improvements for the Kentucky Trimodal Transpark in the Fiscal Year 2004 Consolidated Appropriations Bill, Region 4 contacted the ITA to provide information on

---

[1] See http://www.epa.gov/region4/water/gtas/workbookdocs/SPAPs_procedures030505.pdf

2

the grant application process. In addition, the Kentucky Division of Water, acting on behalf of EPA Region 4, met with ITA and the Warren County Water District on June 30, 2004, to explain the grants process. EPA's Office of Water publishes annual Special Appropriations Guidelines applicable to earmark grants,[2] those guidelines require that a grantee own and operate the facilities built by the grant. However, since ITA's intent was to have the Warren County Water District own and operate the grant funded infrastructure, it was necessary to resolve the issue of who would be the appropriate grantee for the earmark. EPA's Special Appropriation Guidelines also provide that the earmark can, with the consent of the named grantee and the sponsoring Congressman, be awarded to another governmental entity in the same political subdivision or geographical area. Since the Warren County Water District was to own and operate the facilities built under the grant, ITA and Warren County determined that Warren County Water District was the appropriate grantee and, on October 13, 2004, Senator McConnell sent Region 4 a letter clarifying the Congressional intent that the Warren County Water District was the appropriate grant recipient for this earmark.

7. According to my staff, Warren County held its first public meeting on the proposed project, entitled the North Warren Water System Improvement Project, on January 26, 2005, where it received comments on the proposed project from concerned citizens including the Karst Environmental Education and Protection, Inc. According to Warren County, the North Warren Water System Improvement Project's objective is to upgrade the existing water system through the construction of major transmission facilities for the conveyance of drinking water to supply the entire area of Warren County north of the Barren River, which includes the Transpark project. The next step for the grantee is to respond to those comments, prepare an EID and hold an additional public meeting to discuss the proposed project before submitting it to the Kentucky Division of Water for review. The Kentucky Division of Water will review the EID for completeness and recommend to EPA whether or not to proceed with the issuance of a Finding of No Significant Impact.

8. As of the date of this declaration, the Warren County Water District has not yet completed its EID or held additional public meetings.

9. Once EPA receives the EID, the Agency then follows its NEPA process as outlined in 40 C.F.R. Part 6 and coordinates that process with other relevant procedures as described above. EPA explained this process at length to the lead plaintiff in this case, the Karst Environmental Education and Protection, Inc., by letter dated May 25, 2005. That letter is attached to this declaration as Exhibit 1 and incorporated by reference as fully set forth herein.

---

[2] See http://www.epa.gov/owm/mab/owm0329.pdf

3

10. In addition to the EID, the Warren County Water District must also submit to EPA, through the Kentucky Division of Water, a grant application with workplan and proposed budget before EPA decides whether to award any funds to the Warren County Water District for construction activities. Once the grant application is received, EPA will review the grant application, proposed workplan and budget. It is not unusual for EPA to require a grantee to make several revisions to its application, workplan and budget before EPA decides to approve the application. The grant will not be awarded, and no funds will be released for construction or demolition, until EPA has received and approved the complete grant application and the Agency has completed its NEPA process and issued a Finding of No Significant Impact or an Environmental Impact Statement as required by NEPA and conducted any other required procedures, including any required procedures under the NHPA. Additionally, EPA will only reimburse pre-award costs incurred by the grantee as allowed by the Special Appropriation Guidelines.[3]

11. As of the date of this declaration, EPA has not received from the Kentucky Division of Water a complete grant application or EID, thus the Agency has not yet awarded or decided whether to award any earmarked funds to the Warren County Water District or ITA for this project nor has the Agency approved any construction or demolition activities by the Warren County Water District, ITA or any other entity, at the Trimodal Transpark facility. EPA's review of the EID and grant application, if and when received, will not provide EPA with any authority over the applicant, or the right to control the entire project. Only upon approval and award of the grant can EPA attach conditions to the money and impose obligations on the grantee. Finally, EPA has discretion to determine what project to award the appropriated funds to, so long as that project is consistent with the Appropriations Act language.

12. In its Fiscal Year 2005 appropriation, EPA received an additional $2,000,000 earmarked to the City of Bowling Green for "the South Central Kentucky Water Infrastructure Project". EPA finalized guidelines for the award of the Fiscal Year 2005 grants on June 6, 2005. While the City of Bowling Green is aware of the earmarked funds, EPA has not received a grant application or any information from the Kentucky Division of Water about that project. Thus, the Agency has not yet awarded or decided whether to award any earmarked funds to the City of Bowling Green. Before EPA decides whether to award those funds, however, the Agency will have to comply with NEPA and the NHPA as well as other cross-cutting legal requirements.

---

[3] See http://www.epa.gov/owm/mab/owm0329.pdf

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 26th day of August 2005.

*Dorothy Rayfield*
Dorothy Rayfield
Chief
Construction and Technical Assistance Section
Permits, Grants and Technical Assistance Branch
Water Management Division, Region 4
U.S. Environmental Protection Agency

**EXHIBIT 1 – EPA LETTER TO KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC.**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH STREET
ATLANTA, GEORGIA 30303-8960

MAY 2 5 2005

Ms. Leslie Elizabeth Barras
Director, Karst Environmental Education and Protection, Inc.
100 N. Keats Avenue
Louisville, Kentucky 40206

RE:   Warren County Project in Bowling Green, Kentucky
      Consolidated Appropriations Act, 2004

Dear Ms. Barras:

Thank you for your recent letter addressed to Mary Kay Lynch, Regional Counsel for the United States Environmental Protection Agency (EPA) Region 4. Since my office is responsible for the environmental review process for this project, I am responding to your inquiry. Each year, several water, wastewater, and groundwater infrastructure projects are included in the appropriations bill for EPA. The Kentucky TriModal Transpark was named in the Consolidated Appropriations Act, 2004, to receive EPA construction funds. The EPA is required to comply with the National Environmental Policy Act (NEPA) before awarding funds for construction of this project.

In 1995, the EPA issued two memoranda describing how the NEPA applies to these projects. Specifically, the relevant NEPA regulations are the Council of Environmental Quality's implementing regulations in Title 40 of the Code of Federal Regulations (CFR) Parts 1500-1508 and EPA's regulations at 40 CFR Part 6, Subparts A through D. The requirements found in those memoranda also apply to special appropriations projects authorized by the EPA Appropriations Acts from 1996 to the present. These memoranda and the specific guidelines for the handling of the Congressional earmarks appearing in the EPA's FY 2004 Appropriations are enclosed for your information.

The perspective grantee is responsible for the preparation of an environmental information document (EID) for their project. The EID is a written analysis describing the environmental impacts of a proposed action that is of sufficient scope to enable the responsible EPA official to properly evaluate any environmental effects of the proposal.

The EPA shall perform an environmental review of the project based on the submitted EID. When the review indicates that no significant impacts are anticipated or when the project is altered to eliminate adverse impacts, a Finding of No Significant Impact (FNSI) is issued with an attached environmental assessment (EA) which is a public document summarizing the analysis and conclusions of the EID. The FNSI/EA shall list any mitigation measures necessary to make the selected alternative environmentally acceptable and will be made available to the public for a thirty day comment period. After the EPA has properly addressed all comments received (if any), the project will be allowed to proceed to construction.

If the environmental review indicates that a significant environmental impact may occur and significant adverse impacts cannot be eliminated by making changes in the project, the EPA Regional Administrator shall issue a notice of intent to prepare an Environmental Impact Statement (EIS). The notice shall be published in the FEDERAL REGISTER and scoping shall be undertaken in accordance with 40 CFR 1501.7. A draft EIS shall be prepared and distributed. After external coordination and evaluation of all comments has been done, a final EIS shall be prepared and distributed. The final EIS shall list any mitigation measures necessary to make the recommended alternative environmentally acceptable. A Record of Decision shall be made describing mitigation measures to be undertaken to make the selected alternative environmentally acceptable.

The funds for the line item will be awarded to the Warren County Water District as the grantee. It is our understanding that preparation of the environmental information document for the project has begun by the perspective grantee's representative (T.H.E. Engineers, Inc.). To date, we have not received a completed EID from them for evaluation.

Your contact information has been added to our mailing list of interested parties concerning this project. At such time as an environmental assessment, FNSI, or intent to prepare an EIS is published you will receive a copy.

Thank you for your comments concerning this project. If you have additional questions, please refer them to Mr. Jim Adcock of my staff, at 404-562-9248.

Sincerely,

*Gail Mitchell for*

James D. Giattina, Director
Water Management Division

Enclosures