# SECOND DECLARATION OF
# GLEN ROSS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC. et al. | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY et al. | ) ) ) ) | |
| Defendants, | ) ) | No. 1:05-CV-01190-RMU |
| | ) | Judge Ricardo M. Urbina |
| INTER-MODAL TRANSPORTATION AUTHORITY, INC; FISCAL COURT OF WARREN COUNTY, KENTUCKY; and BOARD OF COMMISSIONERS OF CITY OF BOWLING GREEN, KENTUCKY | ) ) ) ) ) ) | |
| Intervener Defendants | ) ) | |

**SECOND DECLARATION OF GLEN ROSS**

I, Glen Ross, make the following declaration based on personal knowledge, information, and belief:

1. I am the President of Mayes, Sudderth & Etheredge, Inc. ("MSE"), an Engineering, Architectural and Planning firm located in Lexington, Kentucky. MSE is the design engineer of the Kentucky Tri-Modal Transpark (the "Transpark"), which is located in the city of Bowling Green, Kentucky, and in Warren County, Kentucky.

1

2.  The infrastructure construction for Phase I of the Transpark is nearing completion. Planned continued construction at the Transpark, if not completed, could have an adverse effect on the surrounding area and be a safety issue.

3.  Interrupting construction of the Transpark development plan at this juncture would be an unwise decision. The environmental safeguards designed for the park are not completed; and the commitment to the community by the ITA as detailed in the "Binding Elements" for the park are not yet fully constructed. Areas of concern include:

    a. Excavation and grading work in the park is not complete. Temporary erosion control measures that are now in place during construction are maintained by the grading contractor, but are not intended to be long-term or permanent measures.

    b. Stormwater treatment systems which utilize stormwater collection pipes; mechanical treatment units; stormwater detention ponds with aeration units; stormwater pumping systems; and stormwater exfiltration beds which provide final treatment and land application of stormwater are not completely constructed.

    c. Final shaping and dressing of disturbed areas; mulching; seeding; landscaping and re-vegetation of these areas is not completed.

    d. If construction is not completed on these items, then a threat to groundwater resources and surface resources will exist. The comprehensive stormwater management plan system as designed and approved for the park is not complete or operable. This system is designed to exceed the requirements of a "best management practice" system.

4. In addition to stormwater management and environmental concerns, there are other operational concerns, including the following:

    a. Street lighting systems are not constructed, creating safety issues at night on streets or adjacent areas in the park..

    b. Uncompleted work areas, if not protected by the contractor, could be hazardous.

    c. The construction contractors will be impacted severely by a work stoppage. The contractor will demobilize from the site and will require additional compensation should he be required to remobilize at a future date. The contractors will suffer an economic loss and will likely lay off employees if replacement work can't be quickly located. The contractors will no longer be responsible for protecting the work site from damage due to weather, flooding, vandals or other acts.

    d. The ITA will incur additional costs due to the demobilization of the contractors. ITA will incur expense in protecting and maintaining the site during a work stoppage. ITA will be required to pay for remobilization of contractors or possibly acquisition of new contractors to finish the site work. Contractors will no longer be bound by existing contract prices and large cost increases and time delays to finish the work would be expected. Additional costs for repair of deteriorated areas during the stoppage would also be expected. Additional delays are of a particular environmental concern due to the sensitive situation that exists with incomplete construction of the stormwater management system.

    e. Just as described for the construction contractors, ITA's special consultants, including engineering and geotechnical consultants, will make commitments to other

projects in the event of a stoppage. ITA obviously wants to finish the project with the same team of designers and experts but that may not be possible in the event of a stoppage. Again, additional costs would be expected to remobilize the project design team and vegetation would be interrupted as a result of an injunction, because the erosion of topsoil and silt would be imminent and the ground water under the Transpark could be fouled.

5. The safety of pedestrians and motorists would be endangered if the installation of the planned and contracted street light system were not installed on the paved roads a result of an injunction. Personal injury automobile accidents could result.

6. Financial harm would come to MSE, the grade and drain contractor and the paving contractor if work is interrupted as the result of an injunction.

7. The infrastructure which has been constructed in connection with Phase I of the Transpark has independent utility without regard to whether any further development occurs at the Transpark because the infrastructure that has been constructed will serve those portions of the Transpark that are currently under development.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this *19* day of *August* 2005.

_____
Glen Ross, President,
Mayes, Sudderth & Etheredge, Inc.

4