No. 1:05-CV-01190-RMU

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., et al.

Plaintiffs

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. HOUSING AND URBAN DEVELOPMENT, and TENNESSEE VALLEY AUTHORITY

Defendants

and

INTER-MODAL TRANSPORTATION AUTHORITY, INC., et al.

Intervenors

**TENNESSEE VALLEY AUTHORITY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

October 12, 2005

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

Maureen H. Dunn
General Counsel

Harriet A. Cooper
Assistant General Counsel

Frank H. Lancaster

Maria V. Gillen
Telephone 865-632-7741

Attorneys for Tennessee Valley Authority

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

    I.  All of Plaintiffs' Claims Against TVA Should Be Dismissed Because Plaintiffs Lack Standing............................................................................................ 2

    II.  Plaintiffs' Claims of Past Violations Should Be Dismissed as Moot. ................. 8

        A.  Plaintiffs' Claims Present No Live Case or Controversy. ......................... 8

        B.  TVA's Action Does Not Fall Within the "Capable of Repetition but Evading Review" Exception. ..................................................................... 9

    III.  Plaintiffs' Claims of Hypothetical Future Violations Should Be Dismissed as Unripe. .................................................................................................. 11

CONCLUSION................................................................................................................ 13

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

KARST ENVIRONMENTAL EDUCATION  )
AND PROTECTION, INC., WARREN   )
COUNTY CITIZENS FOR MANAGED    )
GROWTH, GAYLA CISSELL, JIM     )
DUFFER, and ROGER BRUCKER      )
                               )
          Plaintiffs           )
                               )   No. 1:05-CV-01190-RMU
     v.                        )
                               )
U.S. ENVIRONMENTAL PROTECTION  )
AGENCY, U.S. HOUSING AND URBAN )
DEVELOPMENT, and TENNESSEE     )
VALLEY AUTHORITY               )
                               )
          Defendants           )
_____)
                               )
INTER-MODAL TRANSPORTATION     )
AUTHORITY, INC., FISCAL COURT OF )
WARREN COUNTY, KENTUCKY, and   )
BOARD OF COMMISSIONERS OF CITY )
OF BOWLING GREEN, KENTUCKY     )
                               )
          Intervenors          )

**TENNESSEE VALLEY AUTHORITY'S REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS
THE AMENDED COMPLAINT**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

There are three separate motions to dismiss pending before the Court. Plaintiffs' omnibus opposition to those motions confusingly mixes together all the Defendants and the different arguments made by each. In this reply, Tennessee Valley Authority (TVA) focuses on *TVA's arguments* in its motion to dismiss in order to clear up the confusion created by Plaintiffs' memorandum.

1

In summary, Plaintiffs' claims against TVA fall into two categories: (1) Allegations that TVA did not fulfill the requirements of National Environmental Policy Act (NEPA) and the National Historic Preservation Act (NHPA) before making a $500,000 economic development grant to Bowling Green Metalforming (Metalforming); and (2) Allegations that TVA may commit *future violations* of NEPA and the NHPA when granting additional funds to Metalforming or other entities associated with the Kentucky Trimodal Transpark (Transpark).  Am. Compl. (Ct. Doc. 18) ¶¶ 42-43, 47-48, 53-54, request for relief ¶¶ 3-6.

Plaintiffs have failed to establish their standing to assert either type of claim.  In addition, the first category of claims (pertaining to past action) is moot because TVA's grant has already been paid.  The second category of claims (concerning hypothetical future action) would not become ripe unless and until there was a likelihood that TVA would award another grant; Plaintiffs have made no allegation that such a grant is imminent or produced evidence to suggest that this is the case.

Accordingly, the Court should dismiss the claims against TVA for lack of subject matter jurisdiction.

## I. All of Plaintiffs' Claims Against TVA Should Be Dismissed Because Plaintiffs Lack Standing.

As TVA discussed in its opening memorandum, Plaintiffs lack standing to pursue their claims against TVA both because they fail to allege particularized injury attributable to TVA's actions and because they fail to demonstrate that their injuries would be redressed by the relief they seek.  See TVA Mem. at 11-15.

In the Amended Complaint, Plaintiffs plead that they have been injured by the destruction of cultural and historical resources in the siting and construction of the

Transpark. Am. Compl. ¶¶ 3-7. Plaintiffs neither allege nor explain how such claimed environmental injuries are "fairly traceable" to TVA's grant of $500,000 for the purchase of electrical equipment at Metalforming's $170 million plant. Instead, they attempt to link TVA's $500,000 grant to Metalforming with the siting and construction of the *entire* Transpark. However, the Amended Complaint does not allege that TVA has any control over the entity responsible for siting and constructing the Transpark, and TVA has produced a sworn declaration that it has no control over and has granted no funds to that entity. TVA Mem. at 12, 14-15; Barker Decl. ¶¶ 10-11 (Ct. Doc. 7, Ex. 2).[1]

Nor does the Amended Complaint allege that Metalforming itself is responsible for the alleged environmental injuries suffered by Plaintiffs. To the contrary, Plaintiffs expressly plead that the Inter-Modal Transportation Authority (ITA) "has committed public funds for land acquisition and demolition of the existing rural and residential development at the site, including cultural and historical resources . . ." Am. Compl. ¶ 12. Plaintiffs do not argue in their memorandum that Metalforming directly performed such activities. Rather, Plaintiffs suggest Meltalforming's involvement without saying so expressly. See, e.g., Pls.' Mem. at 2 ("Sinkholes, which are other potential archeological sites, have been filled at the Transpark's Bowling Green Metalforming, LLC site."); *id.* at 3 ("Farmhouses and barns were demolished for this construction."); *id.* ("Prime farmland under the federal Farmland Policy Protection Act has been converted to

---

[1] In ruling on a motion such as this one, for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the Court need only consider the allegations within the four corners of the Amended Complaint supplemented by undisputed facts evidenced in the record. Because the facts asserted in the declarations relied upon by TVA are uncontested, the Court may rely on them without converting this motion to one for summary judgment. *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C. Cir. 1992).

3

Transpark roads, the TVA-funded Bowling Green Metalforming plant, and the Technical Training Center."); see also Am. Compl. ¶ 32. It is telling that, while specifically complaining about filling, demolition, and construction activities, Plaintiffs do not say that Metalforming performed them.[2] In sum, the acts that allegedly injured Plaintiffs were not performed by TVA's grantee, and they are not "fairly traceable" to TVA's activities.

Plaintiffs avoid TVA's second standing argument – that Plaintiffs' alleged injury could not be redressed by the relief they seek against TVA in the Amended Complaint – by burying the issue in their discussions of ripeness and mootness and by adding a measure of relief not pleaded in their Amended Complaint. Pls.' Mem. at 36-38. In the Amended Complaint Plaintiffs request an injunction halting demolition and construction of the Transpark, full compliance with NEPA and the NHPA, and an order that Metalforming refrain from actions adversely affecting historic resources. As we pointed out in our main brief, however, ordering such relief against TVA would be meaningless because TVA is not alleged to be performing demolition or construction activities, TVA has no statutory or contractual authority over the ITA, which allegedly is performing such activities, and TVA's grantee, Metalforming, is not alleged to have performed such activities. Rather than explain how the relief requested against TVA in the Amended

---

[2] In their memorandum, but not in the Amended Complaint, Plaintiffs also broadly assert that the *industry* in which Metalforming is engaged "creates a water quality pollution risk." Pls.' Mem. at 2-3. This assertion does not help Plaintiffs, for they have not *pleaded* that Metalforming itself has created any increased risk of pollution that injures any Plaintiff. Moreover, even if Plaintiffs had so pleaded, they have not alleged and could not prove that this pollution risk is traceable to TVA's grant to Metalforming.

4

Complaint could redress their alleged injuries, Plaintiffs discuss in their memorandum an additional form of relief:

> This Court should redress the TVA NEPA and NHPA violations by setting aside the CE and by investigating the terms of the grant to Bowling Green Metalforming to determine if TVA has imposed or can impose any environmental mitigation measures on the recipient of TVA funds.

Pls.' Mem. at 39. This type of relief could not lawfully be imposed after TVA's federal action has been completed and, in any event, is not authorized by NEPA or the NHPA.

A request identical to the one that Plaintiffs make here was rejected recently by this Court in *Citizens Alert Regarding the Environment v. Leavitt*, 355 F. Supp. 2d 366 (D.D.C. 2005). In that case, plaintiffs sued the Environmental Protection Agency (EPA) and a township sewer authority to enjoin construction of a sewage pipeline. At the time plaintiffs filed their lawsuit, the federal grant had been paid in full and the sewer project was complete and operational. *Id*. at 368. Defendants moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction on the grounds that plaintiffs lacked standing and their claims were moot. *Id*. at 367. Plaintiffs argued, as do Plaintiffs here, that the case was not moot because "any effective relief" could include "acts that may not necessarily undo a fait accompli, but that may serve to mitigate it." *Id*. at 369. The court determined that it was without power to "retroactively revisit" the terms of the grant agreement between the EPA and the sewage authority. *Id*. at 370 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Accordingly, the court could not order the mitigation measures that plaintiffs were pressing to impose on the consummated federal grant and dismissed the claims. *Id*. at 367.

5

Furthermore, NEPA and the NHPA focus on the "information gathering and dissemination that must take place *before* a project is implemented." *Sierra Club v. United States Dep't of Agric. Rural Utils. Serv.*, No. 99-5515, 2000 WL 1679473, at *3 n.1 (6th Cir. Nov. 2, 2000) (per curiam) (unpublished decision).  Ordering the relief that Plaintiffs now request after the completion of TVA's action is not authorized under either act.  *See Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350-51 (1989) ("[I]t is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process. . . .  Other statutes may impose substantive environmental obligations on federal agencies, but NEPA merely prohibits uninformed – rather than unwise – agency action.").  Moreover, under NEPA, it is the agency and not the court (as Plaintiffs assume) that is charged with "determin[ing] if [it] has imposed or can impose any environmental mitigation measures on the recipient of [its] funds."  Pls.' Mem. at 39.

Significantly, even if TVA were to prepare an environmental impact statement (EIS) that evaluates mitigation and monitoring alternatives for Metalforming, such an act would not afford Plaintiffs the relief they seek.  Plaintiffs request the Court to enjoin construction at the Transpark and order Defendants to prepare an EIS in order to resite the Transpark.  See Am. Compl. at relief requested; Pls.' Mem. at 6 & n.10 (seeking, among other things, a "comprehensive EIS that includes a re-siting analysis for the Kentucky Trimodal Transpark [and the] preliminary and permanent cessation of construction of Phase I (industrial park) component of the Transpark at its current location").  An evaluation of monitoring and mitigation alternatives for the Metalforming plant (aside from exceeding the scope of TVA's discrete grant for electrical equipment)

6

would have no impact on halting construction or resiting the Transpark. In fact, the request for monitoring and mitigation acknowledges that the Metalforming plant is complete and operational.

The Sixth Circuit rejected a similar request in *Sierra Club v. United States Department of Agriculture Rural Utilities Service* because of the same sort of misalignment between Sierra Club's requested order from the court and the specific relief requested in their pleadings. The Court observed:

> Cagle's poultry processing facility is operational and nearly all of the federal funds for the water treatment plant expansion have already been disbursed to the City. Consequently, any ruling in the Sierra's Club's favor on the issue of whether the USDA complied with NEPA would still not afford the Appellants the specific relief requested, namely the temporary injunction against the disbursement of federal funds for the water treatment plant expansion project.

*Sierra Club*, 2000 WL 1679473, at *3; *cf. Willow Creek Ecology v. United States Forest Serv.*, 225 F. Supp. 2d 1312, 1317 (D. Utah 2002) (claim challenging Forest Service's authorization to harvest timber was moot where harvesting of timber was complete and plaintiffs' request to order monitoring of management indicator species and mitigation measures was not in keeping with "the thrust of the Plaintiffs' claims [which] were designed to stop timber harvesting" and did not implicate a mandatory, nondiscretionary duty of the Forest Service).

Plaintiffs have failed to plead specific injury that is fairly traceable to TVA's $500,000 grant to Metalforming, and have failed to show that the relief they request would redress their alleged injuries. For these reasons, Plaintiffs lack standing to pursue their claims against TVA, and those claims should be dismissed.

7

## II. Plaintiffs' Claims of Past Violations Should Be Dismissed as Moot.

Not only should Plaintiffs' claims of past violations of NEPA and the NHPA by TVA be dismissed for lack of Article III standing, but those claims should be dismissed for the additional reason that they are moot and thus do not present a live case or controversy as required by Article III.[3]

### A. Plaintiffs' Claims Present No Live Case or Controversy.

As discussed in TVA's initial memorandum, all relevant action taken by TVA has long been completed. TVA Mem. at 15-18. Indeed, Plaintiffs underline this fact repeatedly in their memorandum by referring to alleged injuries in the past tense. See, e.g., Pls.' Mem. at 4 ("TVA *has already issued* a NEPA Categorical Exclusion for its role."); *id.* at 18 ("TVA *supplied* funding for equipment at the Bowling Green Metalforming plant.") (emphases added). Where the action forming the basis of a NEPA

---

[3] It is curious that in their discussion of TVA's past action, Plaintiffs rebut an argument that TVA never made and ignore an argument that TVA did make. First, Plaintiffs spend many pages arguing that TVA's issuance of the grant to Metalforming constituted "final agency action." Pls.' Mem. at 7-32. But TVA nowhere in its initial memorandum argued that it had not taken "final agency action" with regard to its economic development grant; TVA's only argument about "final agency action" pertained to Plaintiffs' allegations of hypothetical future violations of NEPA and the NHPA. See TVA Mem. at 18-19; *see also supra* III.

Second, contrary to Plaintiffs' assertion that "Defendant Federal Agencies and Intervening Defendants fail to respond to Plaintiffs' claim that the Kentucky Trimodal Transpark was a federal agency (a federalized project) action *from its inception*" (Pls.' Mem. at 8), TVA did, in fact, refute that conclusory allegation in its opening memorandum. See TVA Mem. at 13 n.5 (noting that although Plaintiffs alleged that "[b]ut for the federal funding . . . no part of the Transpark activities which are the subject of this complaint would have been undertaken," the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations" (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

8

or an NHPA claim has been completed, the claim is moot.  See TVA Mem. at 16-17 (citing cases).  Here, Plaintiffs apparently concede that they are suing over fully completed past actions by TVA.

### B.  TVA's Action Does Not Fall Within the "Capable of Repetition but Evading Review" Exception.

Nonetheless, Plaintiffs argue that despite the mootness of their claims against TVA, they present a live controversy because TVA's issuance of an economic development grant to either Metalforming or to another entity associated with the Transpark is an action that is "capable of repetition but evading review."  Pls.' Mem. at 37-38.

As an initial matter, this doctrine cannot save Plaintiffs' claims against TVA because "that doctrine will not revive a dispute which became moot before the action commenced."  *Renne v. Geary*, 501 U.S. 312, 320 (1991).   At the time Plaintiffs filed their Complaint, TVA had conducted its review under NEPA and the NHPA, had determined that granting $500,000 for the purchase of electrical equipment for Metalforming's plant qualified for a Categorical Exclusion under NEPA and did not have the potential to affect an historic property under the NHPA, and had disbursed the grant to Metalforming.  Also at that time, construction on the Metalforming plant was complete.  See TVA Mem. at 17 (citing Graham Decl. ¶ 5 and Morgan Decl. ¶ 4 (Ct. Doc. 7, Exs. 4, 6)).[4]  Because TVA's action was complete at the time the Complaint was filed, Plaintiffs' claims with regard to TVA's grant was moot when filed, and cannot be revived by this exception to the mootness doctrine.

---

[4] *See supra* n.1.

Moreover, Plaintiffs cannot establish the threshold requirements for application of the capable of repetition but evading review exception. For this exception to apply, Plaintiffs must demonstrate that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" and that "there [is] a reasonable expectation that [they will] be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *see also Southern Pacific Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911). They have established neither predicate.

Plaintiffs have failed to plead or even suggest a basis for a finding that there is a "reasonable expectation" that they will be subjected to the same action again. The Amended Complaint contains no allegation that TVA has any plans, much less imminent plans, to disburse funds or to issue permits to the ITA or to any Transpark tenant in the future. TVA has submitted a sworn – and undisputed – declaration demonstrating that it has no plans to provide further funding to Metalforming or to provide any funds to the ITA. Barker Decl. ¶¶ 8-11. Rather, Plaintiffs rely on their own unsupported speculation that there is "a very reasonable possibility that TVA . . . will repeat the decision to further support the development of the Transpark by awarding additional sums of federal money either to a Bowling Green Metalforming expansion and/or to future tenants of the Transpark." Pls.' Mem. at 38. Such a conclusory assertion unsupported by pleaded facts is properly disregarded by the Court. *See Kowal*, 16 F.3d at 1276; *see also Wood ex rel. U.S. v. Am. Inst. in Taiwan*, 286 F.3d 526, 534 (D.C. Cir. 2002) ("Statements by counsel, of course, are not evidence.").

Even if Plaintiffs' speculative assertions were accepted as true, future funding by TVA would not involve the *same action* at issue here. Any new grant request would be

10

for a specific project that would necessitate another NEPA and NHPA review on the particular facts of the new proposal. *See Greenpeace v. Mosbacher*, 719 F. Supp. 21, 24 (D.D.C. 1989) (claim that Secretary of Commerce's decision not to certify Iceland as a nation that harms international whaling conservation was not capable of repetition where those claims "depend[ed] on the specific details of Iceland's late-1980's whaling program, the IWC's response, and the defendant's scientific assessments and other decisions"); *see also Missouri v. Craig*, 163 F.3d 482, 485 (8th Cir. 1998) (plaintiffs' NEPA challenge to Army Corps of Engineers operating plan was not capable of repetition because subsequent operating plans specified different lengths of the navigation season at issue).

TVA has issued and disbursed its grant to Metalforming and has no further plans for involvement with Metalforming. Accordingly, Plaintiffs' claims with regard to TVA's past involvement with Metalforming are moot and should be dismissed.

### III. Plaintiffs' Claims of Hypothetical Future Violations Should Be Dismissed as Unripe.

Plaintiffs' claims with respect to future hypothetical violations should be dismissed not only because Plaintiffs lack standing, but also because such claims are not yet ripe and thus do not satisfy the "case or controversy" requirement of Article III. Plaintiffs argue that TVA mistakenly invoked the ripeness doctrine to support the dismissal of Plaintiffs' claims against TVA for hypothetical future action. Pls.' Mem. at 37. It is Plaintiffs who are mistaken.

Article III requires that a plaintiff's injury be "certainly impending" before he may pursue a cause of action to recover for that injury. *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). "Allegations of possible future

11

injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Plaintiffs do not allege any "certainly impending" injury. Nowhere in their Amended Complaint have Plaintiffs alleged that TVA has committed to granting funds in the future to any entity associated with the ITA, or that any entity has even applied for such a grant. Accordingly, any such commitment by TVA is hypothetical, and as such neither qualifies as "final agency action" under the Administrative Procedure Act, or a claim ripe for judicial review under Article III.

The fact that these future injuries are not yet ripe is made abundantly clear from the relief requested in Plaintiffs' Amended Complaint, which focuses on "possible future injury." See, e.g., Am. Compl., request for relief ¶ 3 ("Order Defendants to comply with Sections 106 and 110(k) of NHPA *before issuing* any permit or approval related to the Transpark project."); *id.* ¶ 4 ("Order Defendants to comply with Sections 106 and 110(k) of NHPA *before awarding*, granting, reimbursing, or paying in any way any funds to any entity engaged in any aspect of the Transpark project.") (emphases added).

Plaintiffs also argue in their memorandum that "[t]his Court can further order TVA to fully comply with NEPA and NHPA with respect to all future applications for support from Transpark tenants" (Pls.' Br. at 39)[5] in support of their argument that the Court can redress their alleged injuries. Such relief is unavailable where there is no "continuing violation of federal law to enjoin," *Green v. Mansour*, 474 U.S. 64, 71

---

[5] To the extent that the relief suggested by Plaintiffs at page 36 of their memorandum is meant to apply to TVA, TVA notes that any order instructing it to "begin actual consultation with FHWA and FAA to designate a lead agency" would be meaningless with regard to TVA because no TVA action has been proposed on which the agencies could consult.

(1985), or where Plaintiffs have not established that they are under some real or imminent threat of harm, *see Am. Fed. of Gov't Employees v. United States*, 330 F.3d 513, 518 (D.C. Cir.), *cert. denied*, 540 U.S. 1088 (2003).  Moreover, it is well established that it is inappropriate for courts to order parties to simply "obey the law" in the eventuality that they will undertake hypothetical future actions.  *See Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996).  *See also supra* II.B.

## CONCLUSION

For the foregoing reasons and for the reasons discussed in TVA's initial memorandum of points and authorities, TVA respectfully requests the Court to dismiss Plaintiffs' claims against TVA in the Amended Complaint.

Respectfully submitted,

October 12, 2005

Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Facsimile 865-632-6718

Maureen H. Dunn
General Counsel
D.C. Bar No. 212266

Harriet A. Cooper
Assistant General Counsel

Frank H. Lancaster

s/Maria V. Gillen
Maria V. Gillen
Telephone 865-632-7741

Attorneys for Tennessee Valley Authority

003747084

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2005, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing by operation of the Court's electronic filing system to the following:

> David Bookbinder, Esq.
> david.bookbinder@sierraclub.org
>
> Sara E. Culley, Esq.
> sara.culley@usdoj.gov

I further certify that on October 12, 2005, I served a copy of the foregoing document by first-class mail, postage prepaid, on the following:

> George Ellard, Esq.
> LeBoeuf, Lamb, Greene & MacRae LLP
> 1875 Connecticut Avenue, NW
> Suite 1200
> Washington, D.C. 20009-5728

s/Maria V. Gillen
Maria V. Gillen
New Jersey Bar No. 025642001
Tennessee Valley Authority
Office of the General Counsel
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865-632-7741
Facsimile 865-632-6718
