UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARST ENVIRONMENTAL EDUCATION ) <br> AND PROTECTION, INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES ENVIRONMENTAL ) <br> PROTECTION AGENCY, UNITED STATES ) <br> DEPARTMENT OF HOUSING AND URBAN ) <br> DEVELOPMENT, and TENNESSEE VALLEY ) <br> AUTHORITY, ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> INTER-MODAL TRANSPORTATION ) <br> AUTHORITY, INC, et al., ) <br> ) <br> Intervenor Defendants ) <br> _____) | No. 1:05-cv-01190-RMU <br> Judge Ricardo M. Urbina |

**DEFENDANTS UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

On August 30, 2005, Defendants United States Environmental Protection Agency ("EPA") and United States Department of Housing and Urban Development ("HUD") filed their Motion to Dismiss Plaintiffs' Amended Complaint, which alleges Defendants EPA and HUD violated the National Historic Preservation Act ("NHPA") and the National Environmental Policy Act ("NEPA").[1/] Because the Administrative Procedure Act ("APA"), 5 U.S.C. § 702,

---

[1/] In the Motion to Dismiss, Defendant HUD explained that it had taken no action regarding the application it had received from the City of Bowling Green for the appropriated funds at issue. Def.'s Mot. at 5 (citing McNally Decl., ¶ 9). Since the filing of the Motion to Dismiss,

1

provides the only waiver of sovereign immunity available to Plaintiffs for their challenges to alleged federal actions, Plaintiffs bear the burden of identifying a final agency action taken by Defendants EPA and HUD.  In their Motion to Dismiss, Defendants EPA and HUD explained that the appropriation of funds by Congress does not constitute final agency action and that Defendants had yet to approve or obligate any grant award of the appropriated funds at issue.  As Defendants EPA and HUD set out in their Motion and accompanying Memorandum, Plaintiffs have not identified *any funding* from Defendants EPA and HUD that has benefitted the local project at issue.  Defendants EPA and HUD also asserted that Plaintiffs' suit is not ripe because it is premised upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985) (citation omitted).  In addition, Defendants EPA and HUD explained that Plaintiffs cannot show that their injuries are caused by Defendants EPA and HUD or how such alleged injuries could be redressed by a ruling in Plaintiffs' favor.  Consequently, Defendants EPA and HUD asserted Plaintiffs lack standing to bring this suit.

On September 27, 2005, Plaintiffs filed a response to Defendants EPA and HUD's Motion to Dismiss.  Plaintiffs, however, fail to satisfy their burden of establishing a final agency action within the meaning of Section 10 of the APA, 5 U.S.C. § 704.  Plaintiffs also fail to overcome Defendants EPA and HUD's arguments regarding ripeness and standing.  Accordingly, Plaintiffs' Amended Complaint should be dismissed pursuant to either Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6).

---

Defendant HUD has taken further action regarding the application.  Because Defendant HUD has yet to obligate or disburse any funds regarding this appropriation, the arguments contained in the Motion are still applicable.  McNally Amended Decl., ¶¶ 1-2, attach. Def.'s Ex. 1.

**ARGUMENT**

A.   **There is No Final Agency Action by Defendants EPA and HUD; Thus, Plaintiffs' Amended Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction and/or Failure to State a Claim for Which Relief Can be Granted.**

As Defendants EPA and HUD explained in their Motion, Plaintiffs have not identified the existence of a final federal agency action taken by Defendants EPA and HUD relating to the Kentucky Trimodal Transpark ("Transpark"), the local project at issue in this case. Def.'s Mot. at 11-17. The existence of a final federal agency action is a prerequisite to bringing a case under the APA. 5 U.S.C. § 704; *Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588, 594-95 (D.C. Cir. 2001). Plaintiffs seek to involve Defendants EPA and HUD in this local project on the basis of the congressional appropriation of funds for the Warren County Water District and the City of Bowling Green, Kentucky. Def.'s Mot. at 3-5. As detailed more fully in Defendants' Motion, these appropriations, in and of themselves, cannot constitute final agency action; rather, the appropriated money becomes obligated, and thus, final agency action occurs, only when a grant is awarded by a federal agency. *Id*. at 3-6; 14-17. Here, the Chief of EPA's Region 4 Construction and Technical Assistance Section expressly stated in her declaration that neither the Warren County Water District nor the City of Bowling Green have applied for the appropriated funds. Def.'s Mot., Rayfield Decl., ¶¶ 11, 12. Until, Defendant EPA receives those applications, it will not decide whether to award in a grant the funds at issue. *Id*. Furthermore, the Director of HUD's Congressional Grants Division has also declared that none of the appropriated funds have been obligated or disbursed. Def.'s Mot., McNally Decl., ¶ 11; McNally Amended Decl.,¶ 2. Because Plaintiffs cannot identify a final federal agency action, Plaintiffs cannot depend on the APA as a waiver of sovereign immunity to invoke this Court's

exercise of subject-matter jurisdiction.  Accordingly, Plaintiffs' Amended Complaint must be dismissed.

Despite the clear lack of involvement by Defendants EPA and HUD, Plaintiffs attempt to create a federal hook where none exists.  Plaintiffs spend the bulk of their brief arguing that this local project is "federalized."  Pls.' Resp. at 8-28.  Based upon this assertion, Plaintiffs contend that the applicable final federal agency action occurred when construction began on the Transpark.  *Id*. at 30.  Plaintiffs also argue that the final agency action before the Court is "the failure to designate a lead agency and prepare an EIS [Environmental Impact Statement] in the sense that this is a federalized project."  *Id*. at 29.  Plaintiffs further contend that Defendant HUD has taken final agency action by approving a portion of the grant applicant's review of the project.  *Id*. at 29.  Plaintiffs' contentions are without merit; thus, such assertions fail to salvage Plaintiffs' claims.

Numerous cases have concluded that the mere expectation of federal aid does not federalize a project.  For example, in *Citizens Alert Regarding the Environment v. EPA*, the court considered whether a township's sewer project could be considered federalized on the basis of a congressional appropriation for which the township had applied, but which EPA had not yet approved.  259 F.Supp.2d 9, 19-20 (D.D.C. 2003) ("*CARE*"), *aff'd*, 2004 WL 1336644 (D.C. Cir. June 15, 2004).  The *CARE* court undertook a thorough analysis of the relevant caselaw, explaining:

> Typically, a project is considered a major federal action when it is funded with federal money.  It is otherwise, however, when the federal money is but an expectancy that has not yet materialized.  <u>The possibility that federal funding will be provided in the future is not sufficient to federalize a state project, even when such funding is likely</u>.  Thus, where the federal government has not made a "firm commitment" to fund the project, the non-federal actor's mere anticipation of that money does not convert an otherwise local

project into a federal one.

*Id*. (internal citations and quotations omitted) (emphasis added). Consequently, the court rejected the plaintiffs' federalization claim holding that "in the present case, the EPA grant has not yet become sufficiently definite to render the pipeline project a major federal action." *Id*. at 20. Similarly, in *City of Boston v. Volpe*, the First Circuit found the mere submission of an application for federal funds does not federalize a project. 464 F.2d 254, 259 (1st Cir. 1972). In *Volpe*, the state requested federal funds for an airport project pending completion of an EIS. The federal agency made a "tentative allocation" of funds, and the authority then submitted a formal application for the funds. *Id*. at 258. Nonetheless, the court found that the state project was not federalized by this action. *Id*. at 259-260.[2]

Plaintiffs also contend that future federal involvement is sufficient to make the Transpark a federal project. Pls.' Resp. at 10-13. As Plaintiffs note, "a key factor in this analysis is whether the federal agency has the ability to influence or control the non-federal activity." Pls.' Resp. at 11. In *CARE*, the court explained that this:

> Control analysis . . . does not readily translate into the context of anticipated funding. . . . in many . . .cases, the federal funding is not a prerequisite for the project and is not necessary, in either a legal or a practical sense, for the project to be completed as planned.

---

[2] *See also United States v Southern Florida Water Management Dist*, 28 F.3d 1563,1572-1573 (11th Cir. 1994) (Concluding that "the possibility that federal funding will be provided in the future is not sufficient to federalize a state project, even when such funding is likely."); *Save Barton Creek Ass'n v. FHA*, 950 F.2d 1129, 1135-1138 (5th Cir 1992) (same); *Friends of the Earth v. Coleman*, 518 F.2d 323, 328 (9th Cir. 1975) ("The hope of qualifying for future ADAP grants does not transform a state or local project into a federal one."); *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 990-91 (6th Cir. 1989) ("The fact that a project has been designed in order to preserve the options of federal funding in the future is not enough, standing alone, to make it a federal project.").

259 F.Supp.2d at 21.  Because the appropriated funds, which had yet to be awarded, did not provide EPA with an ability to stop or control the pipeline project, the *CARE* court concluded that this also indicated it was not a federal project.  259 F. Supp.2d at 21.  *See also South Bronx Coalition for Clean Air, Inc. v. Conroy*, 20 F. Supp.2d 565, 571 (S.D.N.Y 1998) ("Absent some indication that the 'federal government has discretion over substantial portions of the project NEPA . . . provides no basis for enjoining [the project].'") (quoting *Macht v. Skinner*, 916 F.2d 13, 20 (D.C. Cir. 1990)).  Likewise, in this case, Defendants EPA and HUD have no authority to dictate the activities of the Warren County Water District and the City of Bowling Green.  Def.'s Mot., Rayfield Decl., ¶¶ 11, 12; McNally Decl., ¶ 11.[3/]  Accordingly, Defendants EPA and HUD certainly do not possess the necessary power or control sufficient to transform this local project

---

[3/]Plaintiffs make some feints in an attempt to show other Defendant EPA involvement in the Transpark project.  Pls.' Resp. at 20 (contending that Defendant EPA was contacted to provide comments regarding environmental analysis performed by local entities).  Plaintiffs do not appear to allege such involvement constituted final agency action.  Moreover, Plaintiffs' amended complaint does not include a challenge to such activities.  In addition, these minimal activities are also insufficient to transform the Transpark into a federal project.  *Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990) (Federal agency did not exercise control over nonfederal activity when "at most, it gave advice.").  Plaintiffs also characterize a letter from Defendant EPA to the Federal Highway Administration (FHWA) as a concession by Dependant EPA "that but for the water and sewer funding it was providing, further development of the Transpark will be limited."  Pls.' Resp. at 15.  When read in context, however, that letter is clearly an acknowledgment by Defendant EPA that Congress has appropriated funds for the water and sewer project and a statement that Defendant EPA is willing to coordinate its environmental review with FHWA.  The letter also clearly states that "the Warren County Water District is presently working on the grant application." Pls.' Ex. 17.  Moreover, any comment made before the submission of a grant application is simply premature and certainly does not constitute an enforceable commitment to award the grants or perform a certain type of environmental review.  *Sierra Club v. Penfold*, 857 F.2d 1307, 1319 (9th Cir. 1988) (Rejecting attempt to require agency to conform future NEPA analysis to certain constraints.).  In any event, it is clear that EPA has not yet provided any funding for the Transpark or even received an application for the appropriated funds.  Def.'s Mot., Rayfield Decl., ¶¶ 11, 12.

into a federal action.

In addition, the arguments made by Plaintiffs were recently rejected in *Rattlesnake Coalition v. EPA*, No. 04-87-M-DWM, slip op., filed September 30, 2005 (D. Mont.), attach. Def.'s Ex. 2. In *Rattlesnake Coalition*, the plaintiffs challenged the City of Missoula, Montana's planned sewer extension, in part, on the basis of funds earmarked for the project in EPA's 2004 Appropriation Act. *Id*. at 1, 4-5. Although the funds had yet to be disbursed, the plaintiffs argued that the sewer construction and an associated plan were "themselves federal projects within the meaning of NEPA and therefore subject to full NEPA review." *Id*. at 7. The plaintiffs disputed EPA's contention that "the only federal action here is the grants from EPA to the city." *Id*. at 8. The court rejected the plaintiffs' arguments, holding:

> From the government's perspective, in which it is responsible only for any federal action, the federal actions are the disbursements of money, one act of which is completed and the other of which has not yet occurred. . . . The Government is right on this. The EPA is only responsible under NEPA for federal actions, in this case, the provision of money.

*Id*. at 9. The court further explained that NEPA:

> Must mean that an agency reviews the proposed action itself, which means the action to be taken using federal funds. In this case, that means the discrete actions that are funded by the EPA, and not any other unrelated action in the [city's planning document] that the feds aren't funding.

*Id*. at 9-10. Consequently, the *Rattlesnake Coalition* court concluded "until the Government actually awards the money, it has not done anything subject to NEPA (since it was Congress that appropriated and earmarked the money)." *Id*. at 12-13 (citing *CARE v. EPA*, 355 F.Supp.2d 366, 368 (D.D.C. 2005)). Accordingly, it is clear that the mere congressional appropriation of funds did not "federalize" this local project such that the start of construction of the Transpark constituted a final federal agency action. Rather, it is the completion of Defendants EPA and

7

HUD's decision-making regarding the grant applications (if and when they are all submitted) and the associated obligation of funds that triggers judicial review.

Plaintiffs also contend that the decision not to designate a lead agency and prepare an EIS constitutes a "final agency action." Under this theory, however, a "final agency action" would be created every time a federal agency does not take an action that a plaintiff thinks it should take. Plaintiffs cannot support such a proposition. *Public Citizen v. Office of U.S. Trade Representative*, 970 F.2d 916, 918 (D.C. Cir. 1992) (Federal agency's "refusal to prepare an EIS is not itself a final agency action for purposes of APA review.") (citing *Foundation on Economic Trends v. Lyng*, 943 F.2d 79, 85 (D.C. Cir. 1991)); *see also Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 196 n. 6 (D.C. Cir. 2003) (same).

Moreover, it is clear that for the purposes of judicial review under the APA, Defendants EPA and HUD's actions do not thus far amount to a final agency action. *See Rattlesnake Coalition,* Def.'s Ex. 1; Def.'s Mot. at 14-15 (detailing similar conclusions reached in *CARE*, 259 F.Supp.2d 9; *ACORN v. SEPTA*, 462 F.Supp. 879, 884 (E.D. Pa. 1978), *aff'd without opinion*, 605 F.2d 1194 (3rd Cir. 1978)). In this case, neither the Warren County Water District nor the City of Bowling Green have applied to Defendant EPA for the appropriated funds. Def.'s Mot. at 16 (citing Rayfield Decl., ¶¶ 11, 12). Thus, Defendant EPA has not and cannot yet commence the decision-making process regarding the grants at issue. Furthermore, Defendant HUD has not obligated or disbursed any of the funds appropriated for the City of Bowling Green. McNally Amended Decl., ¶ 2. Although Plaintiffs point to documents regarding the City of Bowling Green's review of the project intended to be funded and subsequent review of such documents by a HUD official, it is clear that these acts do not indicate

that HUD's position is definitive regarding the appropriated funds. In addition, such review does not have a direct and immediate effect on the parties. *See IPAA v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2000) (The Court should consider "whether the agency's position is definitive and whether it has a direct and immediate . . . effect on the day-to-day business of the parties."). As the Director of HUD's Congressional Grants Division set out in his declaration, such review takes place on a parallel track to the review process performed by the Congressional Grants Division. Def.'s Mot., McNally Decl. at ¶ 6 ("The grantee is required to submit applications to both the Congressional Grants Division as well as to the HUD Field Environmental Officer."). Before Defendant HUD may obligate any of the appropriated funds, additional actions must be completed. *Id*. Before such actions are finalized, the appropriated funds are not secured for the project at issue and Defendant HUD retains the ability not to obligate the appropriated funds. McNally Amended Decl., ¶ 2.

Because Plaintiffs have failed to identify any final agency action taken by Defendants EPA and HUD, their Amended Complaint should be dismissed.[4]

---

[4]In their response, Plaintiffs, perhaps, recognizing that their action fails to challenge any *final federal agency* action summarily request that:

> In the event the Court considers [the Federal Aviation Administration and Federal Highway Administration] or other federal agencies necessary parties to afford the Court with subject matter jurisdiction or to afford the Court with a claim upon which the Court can grant relief, Plaintiffs urge the Court to afford the Plaintiffs the opportunity to add one or more federal agencies as additional defendants.

Pls.' Resp. at 40. As Defendants EPA and HUD did not base their Motion to Dismiss on Federal Rule of Civil Procedure 19(b), Plaintiffs' statements appear to have little bearing on the claims made against Defendants EPA and HUD presently before the Court. If Plaintiffs were to seek to take such action through the proper channels, Defendants EPA and HUD would respond as warranted by further factual development. Defendants EPA and HUD also note that, since the inception of this lawsuit, Plaintiffs have already amended their initial Complaint.

**B.     Plaintiffs' Complaint Should be Dismissed, Because Plaintiffs' Claims are Not Yet Ripe.**

In support of its Motion, Defendants EPA and HUD also explained that Plaintiffs' claims should be dismissed, because they are not yet not ripe. As stated above, Defendants EPA and HUD have not taken a final agency action regarding the grants. Accordingly, Plaintiffs' claims are based upon a number of premature assumptions. Def.'s Mot. at 17-18 (Explaining that Plaintiffs cannot predict whether Warren County Water District nor the City of Bowling Green will, indeed, submit all the necessary applications for the grants at issue. Plaintiffs also assume they will be dissatisfied with any future action taken by Defendants EPA and HUD regarding the appropriated funds.). As Plaintiffs' claims are based upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," they should also be dismissed on ripeness grounds. *Thomas*, 473 U.S. at 580-81.

In response, Plaintiffs contend that their Amended Complaint is ripe, because they have been denied the procedural protections afforded by NEPA and the NHPA. Pls.' Resp. at 32. In support of this contention, Plaintiffs allege that "three separate and discreet federal final agency actions" have denied them the requisite procedural protections. *Id*. In doing so, Plaintiffs make no attempt to identify – any action – taken by Defendant EPA. *Id*. at 33. In addition, as explained above, Defendant HUD has yet to take final agency action; thus, Plaintiffs' assertions in this regard also fail.

Contrary to Plaintiffs' suggestion that claims alleging procedural violations are always ripe, Pls.' Resp. at 35, the D.C. Circuit has recognized that NEPA claims are not ripe where there have been no injuries for lack of a site specific action. *Wyoming Outdoor Council v. U.S. Forest Service*, 165 F.3d 43, 49-50 (D.C. Cir. 1999). "The constitutional component of the ripeness

10

inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (*en banc*). In both contexts a court must "consider whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Id*. at 1139 (citations omitted). Accordingly, the analysis of ripeness in the NEPA context in *Ohio Forestry Ass'n v. Sierra Club* contains an important qualification, namely that "a person *with standing* who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place." 523 U.S. 726, 737 (1998) (emphasis added).[5/] Because Defendants EPA and HUD have not taken final agency action regarding the grants, Plaintiffs cannot identify any injury directly attributable to Defendants EPA and HUD.

---

[5/]In *Ohio Forestry,* the Supreme Court held that a challenge to a Forest Plan based on NEPA and National Forest Management Act [NFMA] claims was not ripe for judicial review without reference to an agency decision implementing the Forest Plan's timber sale provisions. *Id*. at 731, 739. The Court found that the adoption of the Plan did not implicate any real world interests of concern to the plaintiffs in that case, as it did not "give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Id*. at 733. The Court's analysis focused on pragmatic concerns counseling against judicial involvement in such a challenge, recognizing that Forest Plans alone generally do not have impacts in the real world absent projects implementing these Plans and that interested parties may ultimately pursue challenges to these projects. *Id*. The same concerns that led to the Court's remand for dismissal of the NEPA and NFMA claims in *Ohio Forestry* counsel dismissal of Plaintiffs' claims against Defendants EPA and HUD. *See also Wyoming Outdoor Council v. U.S. Forest Service*, 148 F. Supp. 1, 9-10 (D.D.C. 2001) (Rejecting the plaintiffs' argument that the action was ripe because the federal agencies had allegedly "made the decisions necessary to define the terms of the challenged leases and to authorize" the issuance of such leases without observing the procedures mandated by the Endangered Species Act. Because neither issuance of leases nor any site disturbing activities had occurred, the suit was premature.); *Rattlesnake Coalition,* Def.'s Ex. 2 at 13 (Because EPA had not yet awarded the appropriated funds, the plaintiffs' claims were not ripe for review.).

*See also* Part C. Accordingly, Plaintiffs' claims are not ripe for judicial review and should be dismissed.

**C.      Plaintiffs' Amended Complaint Also Fails, Because Plaintiffs Lack Standing.**

In support of its Motion, Defendants EPA and HUD also explained that Plaintiffs cannot show that their injuries are caused by Defendants EPA and HUD or how such alleged injuries could be redressed by a ruling in their favor. Def.'s Mot. at 18-21. Defendants EPA and HUD contended that Plaintiffs' claims stem from alleged injuries occurring at the Transpark site. *Id*. at 20. Further, Defendants EPA and HUD have not provided any of the funding for such construction and, therefore, they lack the authority to control any activities relating to the Transpark. *Id*. Consequently, Plaintiffs' claims fail to meet the causation and redressability requirements necessary to achieve standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiffs make no serious attempt to dispute Defendants EPA and HUD's arguments. Plaintiffs again cite a series of alleged harms, but Plaintiffs focus primarily on site specific activities taken by entities other than Defendants EPA and HUD. Pls.' Resp. at 34. Furthermore, to the extent that Plaintiffs allege procedural injuries such allegations do not – and cannot – eliminate the irreducible standard requiring causation and redressability in a standing inquiry. *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996). Assuming *arguendo* that Plaintiffs could establish a procedural injury, Plaintiffs still cannot satisfy the causation requirement because any injury flows not from Defendants EPA and HUD's actions but from actions of the local entities developing the Transpark. In addition, despite Plaintiffs' general assertion that Defendants EPA and HUD could be ordered to perform analyses pursuant

to NEPA and NHPA and to "make no further grants to support the Transpark," Plaintiffs fail to present a cognizable claim that such relief would redress their injuries and "produce tangible, meaningful results." Pls.' Resp. at 36; *Pritikin v. Dep't of Energy*, 254 F.3d 791, 799 (9th Cir. 2001) (Plaintiffs are required to demonstrate "that a decision in their favor 'will produce tangible, meaningful results in the real world.'") (quoting *Common Cause v. Dep't of Energy*, 702 F.2d 245, 254 (D.C. Cir. 1983). As noted in Defendants' Motion, the project's local decision-makers have stated their intention to proceed with or without federal funds. Def.'s Mot. at 20 (citing Hizer Decl., ¶¶ 14, 16-19).

## CONCLUSION

Based on the aforementioned and the arguments contained in Defendants EPA and HUD's Motion, Defendants EPA and HUD respectfully request their Motion to Dismiss be granted.

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General
United States Department of Justice

Dated this 12th day of October, 2005.

/s Sara E. Culley
SARA E. CULLEY (K.S. Bar No. 20898)
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0466
Facsimile: (202) 305-0267

Of Counsel:

Marilyn J. Kuray, Esq.

Environmental Protection Agency
Office of General Counsel
Tel: (202) 564-3449

Stacey E. Singleton, Esq.
Department of Housing and Urban Development
Tel: (202) 708-0614