FILED
MISSOULA, MT

2005 SEP 30 PM 5 02

PATRICK E. DUFFY
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| THE RATTLESNAKE COALITION, | ) | CV 04-87-M-DWM |
| Plaintiff, | ) | |
| -vs- | ) | ORDER |
| THE UNITED STATES, THE ENVIRONMENTAL PROTECTION AGENCY, an agency of the United States, MICHAEL LEAVITT, the Administrator thereof, and the CITY OF MISSOULA, a municipality organized under the laws of Montana, | ) | |
| Defendants. | ) | |



OCT - 4 2005

IT IS HEREBY ORDERED that the City of Missoula's motion to dismiss (dkt #42) is GRANTED. IT IS FURTHER ORDERED that the United States' motion to dismiss (dkt #51) is GRANTED. An opinion will follow.

DATED this 30th day of September, 2005.

_____
Donald W. Molloy, Chief Judge
United States District Court

FILED
MISSOULA, MT

2005 OCT 3 AM 11 42

PATRICK E. DUFFY
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| THE RATTLESNAKE COALITION, | ) | CV 04-87-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | ORDER |
| | ) | |
| THE UNITED STATES, THE ENVIRONMENTAL PROTECTION AGENCY, an agency of the United States, MICHAEL LEAVITT, the Administrator thereof, and the CITY OF MISSOULA, a municipality organized under the laws of Montana, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

RECEIVED OCT - 4 2005

This case is about Missoula's planned sewer extension into the Rattlesnake Valley and the Special Improvement District (SID) 528 that will be charged to certain Rattlesnake homeowners.

**I. The United States' Motion to Dismiss**

Both defendants have filed motions to dismiss. The United States' motion covers much of the same ground as the City's but

1

is more cogent and well-argued, so it is discussed first.

### A. 2000 EA/1998 Grant

The U.S. bifurcates the analysis of this case into two federal actions, the money already given to the City by the 1998 grant and the money the U.S. plans to give to the city due to the 2004 appropriation. The U.S. points out that the only federal action that has completely occurred in this matter is the $5 million EPA grant to the City of Missoula for expansion of the wastewater treatment plant. The 1999 Missoula Water Facilities Plan Update (MWFPU) was created, in part, to present to EPA for an environmental assessment and FONSI, in order to receive the grant, but it was also an independent City of Missoula document, created for the city's purposes and not funded by the U.S..

The money has all been spent and the project has been completed. The grant was finally disbursed in September of 2003 and construction was completed in 2004. Therefore, the EPA argues, there is no case or controversy to support constitutional standing. Allen v. Wright, 468 U.S. 737, 750-51 (1984). Standing requires three things: injury in fact, which is a concrete and particularized invasion of a judicially cognizable interest; a causal connection between the conduct complained of and the injury; and likeliness that the injury will be redressed by a favorable decision. Bennett v. Spear, 520 U.S. 154, 167 (1997). The Government contends there is no way to redress any possible

2

harm Plaintiffs have suffered, because any judicial remedy would have to be injunctive, and the money has been spent and the facility built. Even if the money could be reimbursed by the City of Missoula, the wastewater plant could still operate, because then it would have been entirely funded by the City, which is not subject to NEPA.

Dismissal of cases for lack of controversy has occurred in other cases of plaintiffs questioning federal disbursement of funds. See, e.g., Pennhurst State School & Hosp. V. Halderman, 451 U.S. 1, 17; Citizens Alert Regarding the Environment (CARE) v. Leavitt, 2005 WL 150967 (D.D.C. 2005)(sewage treatment case with very similar facts to this one.) The Government cannot retroactively change any of the terms under which it has granted money to a city or state and could not now turn around and tell the City of Missoula to disgorge the grant funds. Therefore, there is no way to redress any injury resulting from the 1998 STAG grant, and Plaintiff lacks constitutional standing. These same facts support a mootness argument, which also undermines justiciability and subject matter jurisdiction.

Next, the U.S. argues that the federal funding was insufficient to "federalize" the 1999 MWFPU, so the only federal actions subject to NEPA would be the funding of particular projects. The MWFPU itself was not funded by the federal government and therefore is not subject to NEPA. The actual

3

plant and system upgrades received $5M of its $88.725M cost (almost 6%) from federal funding. That amount, the Government argues, is not sufficient to turn a local project (i.e., the MWFPU itself) into a major federal action. Friends of the Earth, Inc. v. Coleman, 518 F.2d 323, 329 (9th Cir. 1975). Therefore, any NEPA process that should have gone on would not need to include the entire MWFPU, so any standing Plaintiff claims to some procedural NEPA right would not give it standing regarding the MWFPU. In addition, Plaintiff did not exist as an organization in 1999, when public comment on the 2000 EA/FONSI took place. Therefore, the Government argues, Plaintiff cannot dispute its analysis of alternatives. The Government cites Vermont Yankee Nuclear Power Corp. V. NRDC, 435 U.S. 519, 553 (1978); Havasupai Tribe v. Robertson, 943 F.2d 32, 34 (9th cir. 1991) and Northwest Environmental Defense Center v. Bonneville, 117 F.3d 1520, 1534 (9th Cir. 1997), for this proposition.

Finally, the Government raises laches and says Plaintiff should not be entitled to raise this claim now, when the Missoulian published notices of the public comment period in 2000, and Plaintiff never got involved. Govt.'s br., 12.

B.  2004 Appropriation Act Earmark

The Rattlesnake SID Environmental Assessment to which Plaintiff objects was completed by the City. Cmplnt. ¶ 25. Therefore, the only federal action the federal defendants can be

4

on the hook for, in their view, is the money earmarked for the project in the 2004 Appropriation Act. The government argues the Complaint against them should be dismissed because there is no final federal agency action activating APA's waiver of sovereign immunity. In addition, plaintiff lacks standing on this claim, and it, too, is not ripe for review. Def.'s br., 13.

### 1. No final federal agency action

The United States cannot be sued without a waiver of sovereign immunity. United States v. Mitchell, 463 U.S. 206, 212 (1983). Plaintiff has cited the Administrative Procedure Act (5 U.S.C.§ 701 et seq.) as one of the sources of this court's jurisdiction, and it is the only source listed that provides for a waiver of sovereign immunity. Complaint ¶ 2. In order for the APA to apply, there must be final agency action. Lujan v. National Wildlife Federation, 497 U.S. 871, 882 (1990). Such action must "mark the consummation of the agency's decision-making process" and not be "of a merely tentative or interlocutory nature" and must determine "the rights and obligations of the parties" or be one from which "legalt consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997).

The Government contends that it has taken no final agency action regarding the Rattlesnake sewer project that would open it to suit under the APA. Govt.'s br., 15. An allocation of funds

by Congress cannot qualify as agency action under the APA, since Congress is expressly excluded from its definition of agency. 5 U.S.C. §§ 701(b)(1)(A), 551(1)(A). Until EPA approves the disbursement of the money to the City of Missoula for the project, there is no final agency action that can be redressed under the APA, and therefore, there is no subject matter jurisdiction in this court.

### 2. Standing

In addition to Plaintiff's lack of constitutional standing, the Government argues Plaintiff also does not have standing under the APA to bring this claim. To have standing under the APA, Plaintiff must show a final agency action that adversely affects Plaintiff members, and that the injury falls within the "zone of interests" NEPA is intended to protect, a proposition for which the Government cites Douglas County v. Babbitt, 48 F.3d 1495, 1499 (9th Cir. 1995). The Government argues that Plaintiff can prove no such concrete injury attributable to EPA, since EPA has not yet done anything except accept an application for funds from the City. Govt.'s br., 17. In addition, the future possible award of money from EPA to Missoula is not a certainty. Therefore, an opinion claiming it is illegal would be advisory, and any potential Plaintiff's harm therefore could not be redressed by a judgment from this court.

### 3. Ripeness

Finally, the Government argues that Plaintiff's claim on the 2004 appropriation is not ripe for review because the time has not yet come for the NEPA review of any new grant award. Therefore, Plaintiff's claims should be dismissed until any such time as they become ripe through EPA action. Govt.'s br., 19-20.

C. **Plaintiff's response**

Plaintiff fails to respond in a direct or orderly fashion to the Government's many arguments for dismissal. Plaintiff's response revolves around two major disagreements with the defendants. First, Plaintiff rejects the Government's division of the complaint into the 1999 grant and the 2003 funding and insists "Missoula's wastewater treatment construction" should be analyzed as a whole. Plaintiff views the claims as all stemming from an improperly reviewed MWFPU.

Second, from Plaintiff's perspective, the MWFPU and any Missoula construction are themselves federal projects within the meaning of NEPA and therefore subject to full NEPA review. Plaintiff refers repeatedly to the statute's requirement that a "proposal" receive NEPA review and claims that the Missbula applications were such proposals within the meaning of NEPA. (The statute reads "[all agencies shall] include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible

7

official on (I) the environmental impact of the proposed action" etc. 42 U.S.C. § 4332(C)(I).) Plaintiff considers Missoula's requests for funding for its planned project a "proposal" under this section, but ignores the phrase "Federal actions." Pl.'s br., 3-4. Plaintiff rejects the Government's insistence that the only federal action here is the grants from EPA to the city. "At any rate, the inquiry required of the federal government is not what grant may or may not be paid, but rather whether there is a "proposal" that may have a significant effect on the human environment." Pl.'s br., 4.

Plaintiff's standing argument is somewhat muddled, but the gist of it appears to be that because EPA issued an EA and FONSI on the 2000 grant, those are federal actions that create standing under NEPA. Plaintiff puts great stock in the fact that various employees of the city or of EPA apparently have, at different times, believed an EIS would be necessary. Br., 5. Plaintiff claims a procedural injury because an EIS should have been completed, and states that this is "sufficient to confer standing." Br., 5.

Next, Plaintiff states that its failure to exist as an organization in 1999 and therefore its lack of participation in the 1999 EA process does not undermine its standing in this suit. Plaintiff contends there was no administrative process available (apparently despite the notice in the Missoulian, which is

8

attached as Exhibit 4 to Plaintiff's brief.)

### D. Analysis

A preliminary issue to deal with is the dispute over whether Plaintiff's claims can be divided into the 1998 grant and the 2004 appropriation. Plaintiff's view is that anything to do with the Missoula sewer update plan is tainted. That is, Plaintiff believes the plan itself was not properly reviewed, and therefore any manifestation of the plan, especially the Rattlesnake sewer, violates NEPA. From the government's perspective, in which it is responsible only for any federal action, the federal actions are the disbursements of money, one act of which is completed and the other of which has not yet occurred. The whole update plan need not be reviewed if the federal action is to give money to a specific part of the plan.

The Government is right on this. The EPA is only responsible under NEPA for federal actions, in this case, the provision of money. 40 C.F.R. § 1508.18(a) includes in the definition of federal action, actions including projects "partly financed" by federal agencies. The MWFPU itself is not a federal action. It was written by the City of Missoula, with no federal input, so it is not subject to NEPA itself. Plaintiff considers it a "proposal" within the terms of NEPA, but the statute must mean that an agency reviews the proposed action itself, which means the action to be taken using federal funds. In this case,

9

that means the discrete actions that are funded by the EPA, and not any other unrelated action in the MWFPU that the feds aren't funding. This was the situation in <u>Friends of the Earth v. Coleman</u>, 518 F.2d 323 (9th Cir. 1975). An airport expansion included building parking garages as well as runways. The Ninth Circuit Court of Appeals wrote:

> "For an action to be subject to NEPA, however, it must be shown to be 'federal.' Nothing in this record indicates that either the terminal or parking garage projects would be eligible for federal funds. We also conclude that the state-funded projects are not so closely interwoven with those receiving federal funds to make the entire airport development program the relevant 'action' for NEPA purposes." <u>Friends of the Earth</u>, at 327.

The MWFPU is relevant to EPA for NEPA purposes only as it is used to explain a project for which the City wants federal money. The plan could include many details that EPA does not care about, unless federal money is going to be spent on those things, and then they come within the purview of NEPA.[1] It is therefore more efficient when analyzing any federal action to view the Complaint as alleging two acts in violation of NEPA—the two grants of money.

### 1. 1998 grant

---

[1] There apparently have been some interim funds provided for Mullan Road, also based on MWFPU (see Plaintiff's Response Brief, Exh. 1), but there is no mention of this project in the Complaint and the money has gone to the County of Missoula, which is not a party to this case. Whether there was any environmental review of that project is unknown and irrelevant to this matter. Also, Plaintiff Rattlesnake Coalition would not have standing to challenge the Mullan Road project, or at least not on the terms they claim for the Rattlesnake sewer.)

The federal actions on the 1998 grant were issuing the FONSI and giving the City of Missoula $5M. Plaintiff cannot establish constitutional standing for this claim, so dismissal is in order. Even assuming the first prong of the test-an identifiable injury-Plaintiff's case fails on the second and third prongs. Bennett v. Spear, at 167. (The identifiable injury would be a procedural NEPA injury, since Plaintiff has no identifiable legal right to a particular decision.) On the second prong, the Rattlesnake Coalition cannot establish that the government's action cause Plaintiff's injury. Without federal funding, the City could still have gone ahead and completed the water treatment plant upgrade. The federal funds were apparently around 6% of the total required, hardly such a significant portion that the project could not have gone ahead without them. See C.A.R.E. v. U.S. E.P.A., 259 F.Supp.2d 9, 21 (D.C.D.C. 2003)("...[A] state waiting only for federal money generally retains the option of obtaining alternate funding and forging ahead regardless of the federal agency's concerns.) In that situation, any action or inaction on the part of EPA would have been irrelevant to the harm of the work being done by the city. (And, in the case that the City did proceed on its own, without federal funding, there would no longer even be a NEPA procedural injury at all.) Therefore, it is not clear that EPA caused any harm to Plaintiff related to the 1998 grant. The third prong,

11

however, is the fatal weakness in Plaintiff's case; a judgment in this case could not redress any harm in EPA's 1998 grant. Having granted the City the money, the federal government cannot ask for it back. The sewer plant cannot be unbuilt, and a declaration that the government should have behaved differently would not redress any harm. There is no live case or controversy involving the 2000 grant and no constitutional standing. Any claim relating to the 2000 EPA grant is not justiciable by this court and should be dismissed.

In addition to there being no remedy, any claim relating to that prior grant is moot. If the injury is procedural, as Plaintiff suggests in its brief, then Plaintiff's right to participate in the decision-making has already been trampled and it is too late. If the injury is the actual construction, it is also too late, since this Court could not make the city shut down the sewer plant for EPA's failure to do proper review. The 1998 claim should be dismissed.

### 2. 2004 appropriation

The Government is right that there is no final federal action funding the Rattlesnake project. Any APA claim by Plaintiff, which is the only waiver of sovereign immunity and the source of Plaintiff's standing, is premature until such final federal action. Until the Government actually awards the money, it has not done anything subject to NEPA (since it was Congress

that appropriated and earmarked the money). "[U]ntil EPA completes its [NEPA] review and reaches a decision, there has been no final agency action within the meaning of 5 U.S.C. § 704 and the matter is not ripe for judicial review." C.A.R.E. v. U.S.E.P.A., 355 F.Supp.2d 366, 368 (D.C.D.C. 2005)(internal citation omitted.) The Rattlesnake sewer claim against the Federal Defendants is not ripe and must be dismissed.

## II. City of Missoula's Motion to dismiss

Defendant City of Missoula requests dismissal of the Complaint as to it for the failure to state a claim, Plaintiffs' lack of standing, and lack of subject matter jurisdiction.

### A. Lack of Jurisdiction

Defendant City of Missoula argues NEPA applies only to final federal agency action, and therefore there is no federal jurisdiction under the Administrative Procedures Act to hear the sewer claim against the City. 5 U.S.C. § 701 et seq. Def.'s br., 3-4.

Plaintiff appears to agree that the City is not a proper defendant on the EIS claims and states that the City is in the case only for "participation in the remedial phase." Pl.'s br., 3, FN 1. Plaintiff cites several cases that support their contention that the City does not have "standing to raise objections and defenses concerning the failure of the EPA to prepare an EIS." It is difficult to understand how they can

13

argue that the City was insufficiently involved to defend on this issue, but sufficiently involved to be subject to federal jurisdiction under NEPA. The cases cited by Plaintiff all support the proposition that the proper defendant in a NEPA action is the federal government alone.

### B. Standing

Defendant argues that Plaintiff has neither prudential nor constitutional standing. Def.'s br., 4-7. The City's argument is a rambling hodgepodge of concepts, including that the case is not ripe for adjudication, Plaintiff is not within the zone of interests sought to be protected by NEPA, the 1999 Facilities Plan was not sufficient federal action to trigger an EIS requirement, Plaintiff did not participate in public comment and therefore is not entitled to administrative review under the APA, and Plaintiff has not sufficiently alleged an injury in fact (the basis for constitutional standing).

Plaintiff responds that an association has standing to bring claims on behalf of its members, in this case, property owners in the Rattlesnake, and, under Sierra Club v. Morton, these people are directly impacted by government action. Pl.'s resp., 11-13.

### C. Failure to state a claim

Defendant City's brief details the City's argument for why Plaintiff fails to state a claim, including 1.) There was no federal action involved; 2.) An EA was completed concluding an

14

EIS was not required; and 3.) Plaintiff failed to assert a timely objection to the FONSI in 1999. Defendant City asserts that the 1999 Plan itself was not a federal action under 40 C.F.R. § 1508.18, which defines "major federal action." City's br., 7. The City then goes on to assert that Plaintiff has not demonstrated an irreparable harm from the implementation of the Plan and the future Rattlesnake sewer and is therefore not entitled to injunctive relief. The next several pages are a litany of claims Defendant contends Plaintiff has failed to state. However, the City appears to believe that Plaintiff's potential failure to <u>prove</u> a claim at this point amounts to a failure to state a claim.

Plaintiff responds by citing the high hurdles defendants must overcome to be granted a motion to dismiss when there are factual issues in dispute. Plaintiff relies on the position that by taking the Complaint's allegations as true, there are grounds to believe an improper NEPA process has occurred. Therefore, the motion should not be dismissed for failure to state a claim.

    D.  **Failure to join all necessary parties**

The City's two-line argument is that Plaintiff has failed to join the Montana Department of Environmental Quality, which is a necessary party under Fed. R. Civ. P. 12(b)(7) and 19. Plaintiff responds that MDEQ is not subject to Rule 19, because complete relief can be accorded without it and its interests would not be

15

impaired by a judgment in its absence. Since Defendant gave us nothing more to support its argument, it fails.

### E. Laches

Finally, the City argues that Plaintiff failed to assert its claims in a timely fashion and therefore should be barred by laches. City's br., 18. The City cites Black's Law Dictionary as its legal support for this argument, and then claims "'Laches' applies to Plaintiff's assertions with respect to...." and then lists several issues. A motion to dismiss cannot be granted on factual assertions.

Plaintiff actually cites law in support of its argument that laches is generally not applicable to NEPA claims and points out that this suit was filed a month after the final legal action that, Plaintiff claims, led to this cause of action.

### III. Conclusion

#### A. Subject matter jurisdiction

We are left to determine whether the City has an obligation to comply with NEPA and the APA. If not, there is no subject matter jurisdiction in this court for a claim against the City and it should be dismissed without further consideration. NEPA, by its terms, explicitly requires environmental impact statements to be compiled by federal agencies. There is no citizen suit provision in NEPA-a plaintiff must sue in conjunction with the Administrative Procedure Act, which also explicitly applies only

to federal agencies. "Usually, the federal government is the only proper defendant in an action to compel compliance with NEPA. However, a nonfederal defendant may be enjoined if federal and state projects are sufficiently interrelated to constitute a single federal action for NEPA purposes." Laub v. United States Dept. of Interior, 342 F.3d 1080, 1091-92 (9th Cir. 2003) (internal quotations and citations omitted.) In this case, this means that the City has no way of defending itself in terms of the violation of NEPA, (as Plaintiff and Defendant seem to agree) but if the EPA is found to have violated NEPA, the City may be enjoined from doing the sewer project until EPA complies with NEPA or the federal funding is withdrawn. (See Pl.'s resp. br., 19.) In Laub, the Court of Appeals stated that "[t]he determination of whether federal and state projects are sufficiently intertwined to constitute a federal action for NEPA purposes will generally require a careful analysis of all facts and circumstances surrounding the relationship." Laub, at 1092. Therefore, the City is not properly a defendant under NEPA or the APA and the court does not have subject matter jurisdiction over that claim.

There are circumstances in which a state entity's participation in federal funding will result in its being subject to NEPA suit. In Tyler v. Cisneros, residents of San Francisco sued both the Department of Housing and Urban Development and the

17

City of San Francisco for alleged NEPA and National Historic Preservation Act violations. The Ninth Circuit Court of Appeals concluded that the City may be subject to NEPA requirements because it had received HUD funds and had, therefore, through 42 U.S.C. § 12838 and 24 C.F.R. 58, been delegated responsibilities under NEPA. <u>Tyler v. Cisneros</u>, 136 F.3d 603 (9th Cir. 1998). However, those regulations apply specifically to appropriations from Housing and Urban Development. Neither party has provided any regulation that suggests that an EPA appropriation of this sort demands the same delegation of NEPA authority.

B.  **Standing**

Again, it is useful to think of the two federal actions complained of, the 1998 and 2004 appropriations. As with the Federal Government's motion to dismiss, a claim against the City is both unredressable and moot on the 1998 grant. As far as the 2004 appropriation goes, even if I assume the EPA has committed a NEPA error by not producing an EIS by this point, the City of Missoula cannot be enjoined from constructing its sewer as long as it does not use any tainted funds from the federal government. Because these are speculative acts of the future-the money has not been granted and the City has not yet begun to build-this court is without authority to issue any opinion as to the legality of these future acts. Therefore, there is no standing on those future possible claims either, and the City's motion to

18

dismiss should be granted.

THEREFORE, IT IS ORDERED that the City of Missoula's motion to dismiss is granted.

IT IS FURTHER ORDERED that the United State's motion to dismiss is granted.

DATED this 30th day of September, 2005.

Donald W. Molloy, Chief Judge
United States District Court

19