# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC., <u>et al.</u><br><br>　　　　　Plaintiffs,<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, <u>et al.</u><br><br>　　　　　Defendants,<br><br>INTER-MODAL TRANSPORTATION AUTHORITY, INC; FISCAL COURT OF WARREN COUNTY, KENTUCKY; and BOARD OF COMMISSIONERS OF CITY OF BOWLING GREEN, KENTUCKY<br><br>　　　　　Intervener Defendants. | No.  1:05-CV-01190-RMU<br>Judge Ricardo M. Urbina |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENER DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

#### INTRODUCTION

The Federal Defendants in the above-captioned case and the Inter-Modal Transportation Authority, Inc. ("ITA"), the Fiscal Court of Warren County, Kentucky (the "County"), and the Board of Commissioners of the City of Bowling Green, Kentucky (the "City") (collectively, the "Intervener Defendants") seek dismissal of the Amended Complaint in this case.  The Intervener Defendants are the owners and developers of an industrial park known as the Kentucky Tri-Modal Transpark ("Transpark") currently under construction in the City of Bowling Green, Kentucky.  The ITA is an agent, instrumentality and constituted authority of the County and is the owner of the land where the Transpark is being developed; the City and the County have guaranteed a bond issue to finance the acquisition of the land and the construction of the

infrastructure necessary to develop the land into a business and industrial park.  The Transpark is considered a vital element of the regional economy and a key to its growth.

The Plaintiffs in this action contend that the U.S. Environmental Protection Agency ("EPA"), the U.S. Department of Housing and Urban Development, and the Tennessee Valley Authority (collectively, the "Federal Defendants") have violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq., and the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470, et seq., by failing to review the environmental and historical impacts of site preparation and construction during Phase I of the Transpark.  Section 102(2)(C) of NEPA requires federal agencies to conduct an environmental analysis and prepare an Environmental Impact Statement ("EIS") for any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).  Section 106 of the NHPA requires federal agencies with jurisdiction over a proposed federal undertaking to consider "the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. . . . prior to the approval of the expenditure of any Federal funds." 16 U.S.C. § 470f.

Plaintiffs filed an Amended Complaint on July 27, 2005, seeking declaratory and injunctive relief that would have the effect of delaying or halting further development activities associated with the Transpark. On August 30, 2005, the Federal Defendants and the Intervener Defendants separately filed Motions to Dismiss the Amended Complaint and Memoranda in Support of the Motions to Dismiss based on lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6). Plaintiffs subsequently filed a Response and Memorandum of Points and Authorities in Support of the Response to Defendants' and Intervening Defendants' Motions

to Dismiss on September 27, 2005.[1] Plaintiffs' Response and Memorandum detail two basic theories to support federal jurisdiction under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704, 706. First, Plaintiffs allege that failures by Federal Defendants to take action under NEPA and the NHPA at Transpark are actionable under APA § 706(1). Second, despite the local funding and construction of Phase I of Transpark, Plaintiffs assert that Transpark has been "a federal project" under the NEPA and NHPA from its inception. As will be demonstrated, neither of those theories is supported by the statutes cited or by controlling judicial precedent of the Supreme Court or the United States Court of Appeals for D.C. Circuit.

## ARGUMENT

### PLAINTIFFS' AMENDED COMPLAINT AND RESPONSE TO THE MOTIONS TO DISMISS UTTERLY FAIL TO IDENTIFY A FINAL FEDERAL AGENCY ACTION THAT ESTABLISHES FEDERAL JURISDICTION OR STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

After filing their Complaint, Amended Complaint, and Response to the Motions to Dismiss, Plaintiffs have yet to identify a single federal approval, funding, or permit action required for Phase I of the Transpark that constitutes a judicially recognized major *federal* action significantly affecting the environment under the NEPA, a *federal* undertaking under the NHPA, or grounds for federal jurisdiction under the APA. The reason is simple. None exist.

The Transpark activities to date have been the result of local land use planning decisions for activities wholly within the boundaries of the City of Bowling Green. In Save Barton Creek Ass'n v. Federal Highway Administration, 950 F.2d 1129 (5th Cir. 1992), a case cited and selectively quoted from by Plaintiffs, the court rejected similar arguments to those being made by Plaintiffs herein regarding the Transpark. The court noted that "[a]lthough desperate environmental plaintiffs have attempted to convert NEPA into a national land use statute,

---

[1] Karst Environmental Education and Protection, Inc. v. EPA, No. 05-01190 (D.D.C. Sept. 27, 2005) (Pls.' Mem. P. & A.).

Congress did not intend section 102(2)(C) to apply to actions undertaken by state, local, or private concerns without any federal participation or approval." Id. at 1138 (citations omitted).

Having failed to reverse local decisions related to Transpark through the appropriate land use and local zoning processes and appeals,[2] Plaintiffs now seek to invoke federal jurisdiction to accomplish that end. However, there have been no legally cognizable final agency actions, no major federal actions significantly affecting the environment, and no federal undertakings related to Phase I of the Transpark to establish federal jurisdiction or to state a claim upon which relief can be granted. Indeed, Plaintiffs admit as much by futilely attempting to assert that *federal inaction* in this case is a major basis for invoking federal jurisdiction.

### A. No Federal Defendant Has Failed to Exercise a Mandatory Non-Discretionary Duty Related to the Transpark that Would Constitute Actionable Conduct under the APA

"Agency action" under the APA is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). We agree with Plaintiffs that the principles announced in the unanimous Supreme Court decision in Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004) control lower court determinations of what types of alleged agency "inaction" are challengeable under the APA. Under Norton, agency failure to act is remediable under the APA *only* if the agency fails to act in the face of a discrete, mandatory, nondiscretionary duty, *of the type* listed in 5 U.S.C. § 551(13), including rules, orders licenses, sanctions, relief, or the equivalent. As stated by the Supreme Court, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." Id. at 2379 (emphasis by the Court).

---

[2]    See 2nd Decl. of Michael O. Buchanon, ¶¶ 14-15, previously filed with this Court in support of Intervener Defendants' Motion to Dismiss the Amended Complaint, Karst Environmental Education and Protection, Inc. v. EPA, No. 05-01190 (D.D.C. Aug. 30, 2005) (Int. Defs.' Mem. P. & A.).

4

While accusing Defendant Interveners of selectively quoting from the <u>Norton</u> case,[3] Plaintiffs accurately quote from Justice Scalia's opinion in <u>Norton</u> (<u>id.</u> at 25), but fail to properly apply its principles, which are dispositive of Plaintiffs' allegations regarding Transpark.

> The final term in the definition, "failure to act," is in our view properly understood as a failure to take an *agency action* — that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13). Moreover, even without this equation of "act" with "agency action" the interpretive canon of *ejusdem generic* would attribute to the last item ("failure to act") the same characteristic of discreteness shared by all the preceding items. See, *e.g.*, *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384-385 (2003) . . . . A "failure to act" is not the same thing as a "denial." The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request — for example, the failure to promulgate a rule or take some decision by a statutory deadline. The important point is that a "failure to act" is properly understood to be limited, as are the other items in § 551(13), to a *discrete* action.

<u>Norton</u>, 542 U.S. at 2379 (emphasis by the Court).

The Supreme Court provided examples of the type of inaction that would trigger jurisdiction under APA § 706(1), including failure by an agency to meet a "specific statutory command requiring an agency to promulgate regulations by a certain date." <u>Id.</u> at 2383. The examples provided by the Court are in stark contrast to the manufactured "duties" that Plaintiffs allege were ignored by the Federal Defendants in this case. For instance, Plaintiffs maintain that the federal government's failure to designate a lead federal agency for purposes of NEPA constitutes a "failure to act" that triggers APA § 706.[4] Plaintiffs cite no decisions in support of this novel theory. More importantly, a lead federal agency designation is made only when a major federal action significantly affecting the environment is undertaken by multiple agencies. There is no statutory duty to consider designation of a lead federal agency under NEPA within a set timeframe, let alone a mandatory duty to make such a designation. Even the regulatory

---

[3] Pls.' P. & A. 24.
[4] Pls.' P. & A. 25.

5

requirement established by the Council on Environmental Quality is not triggered unless a major federal action significantly affecting the environment has been proposed.  40 C.F.R. § 1501.5.

Similarly, Plaintiffs argue that the Federal Defendants have not conducted an EIS for the Transpark.[5] While this statement is correct, it is fatuous, since Phase I of Transpark is a local project not subject to federal approval, licensing, or control.  Therefore, there is no mandatory duty on the Federal Defendants' part to prepare an EIS for the Transpark at this stage, and failure to do so does not constitute a remediable failure to act under Norton principles.  See Macht v. Skinner, 715 F. Supp. 1131 (D.D.C. 1989) ("Macht I"), aff'd, 889 F.2d 291 (D.C. Cir. 1989).[6]

Plaintiffs' arguments presuppose that a major federal action has occurred and then assert that Federal Defendants have failed to act accordingly. Instead of identifying a permit application from ITA, or federal approvals or licensing decisions that are allegedly required for Transpark, Plaintiffs rely instead on general assertions that Federal Defendants were "integrally involved in, briefed, contacted for review, providing funding, responding to inquiries from citizens, elected officials, and the federal ACHP, and/or providing comments on environmental and related issues to Intervener ITA on the Transpark **since 1999** . . . .[7]

These generalized activities, even as further elaborated upon in Plaintiffs' Amended Complaint and Response,[8] do not constitute "major federal actions significantly affecting the

---

[5]   Pls.' P. & A. 26.
[6]   These issue are analyzed in detail by Intervener Defendants in Int. Defs.' Mem. P. & A. 23-31, and that analysis will not be repeated herein.
[7]   Pls.' P. & A. 25.
[8]   While Plaintiffs make hundreds of factual assertions in their Amended Complaint, see generally Pls.' P. & A., many of them are simply irrelevant because the Amended Complaint should be dismissed as a matter of law. Other statements are simply inaccurate.  For example, Plaintiff selectively quotes from the testimony of Mr. Dan Cherry, former President of the ITA, from a hearing on July 19-20, 2001 to create the impression that servicing of Transpark debt obligations is dependent upon building a new regional airport and receipt of federal grants. Pls.' P. & A. 15 & n.15.  Other portions of the hearing transcript, which is a public record, demonstrate that Mr. Cherry testified otherwise.  Mr. Cherry made it abundantly clear that, while he was optimistic that federal grants would be available to support subsequent phases of the Transpark, such grants were not necessary to support Phase I of the Transpark.  At Vol. III, pp. 16-17 of the transcript of the hearing before the Kentucky County Debt Commission held July 20, 2001, Mr. Cherry Stated: "So, I'm very optimistic that grants will materialize. But, again, as you have

environment" under NEPA and relevant case law. Even actual federal funding for preliminary engineering studies or planning for projects has been held to not constitute federal agency action in situations similar to the Transpark. Macht v. Skinner, 916 F.2d 13, 20 (D.C. Cir. 1990) ("Macht II"), ($2.5 million dollars in federal funds for preliminary design and engineering studies does not constitute "major federal action" under NEPA.). Simply communicating with, seeking input from, or briefing federal agencies relative to environmental issues concerning a project has never been held to be a major federal action under NEPA.

Anticipation of a new regional airport or possible federal funding also does not constitute a major federal action under NEPA. In Citizens Alert Regarding the Environment v. EPA, 259 F. Supp. 2d 9 (D.D.C. 2003), aff'd, 2004 WL 1336644 (D.C. Cir. 2004), environmental plaintiffs attempted to stop a township's sewer project because an EPA appropriation Act had earmarked money for the project. The plaintiffs insisted a NEPA review was necessary. This Court held that, although the project *might* receive federal funds in the future, it would not enjoin the project because EPA actions, prior to a possible award of a grant to the township, were not major federal actions under NEPA. Id. at 20.

In the case of Coalition for Underground Expansion v. Mineta, 333 F.3d 193 (D.C. Cir. 2003), the court faced sweeping allegations from environmental plaintiffs that are similar to those being raised in the instant case. Plaintiffs opposed a third line segment of a Metro-rail transit in St. Louis that was being constructed using local government funds. The Court disagreed with plaintiffs' claim that the Federal Transit Administration's past and *current funding of other portions of the system*, and its potential future funding of the third line segment by matching grants, made the third line segment a federal undertaking for purposes of NEPA. To

---

stated, you know, that's something that's in subsequent phases of the development, not in this initial $25 million bond issue."

7

the extent a lawsuit is premised upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," such claims are unripe for judicial review. Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985)).

Plaintiffs' more specific challenges to discrete Federal Defendants' actions related to persons and entities that are not part of ITA or parties to this lawsuit are also not grounds for jurisdiction. For example, the $500,000 economic development grant to an occupant of the Transpark, Metalforming, Inc. ("Metalforming"), a privately held company, for the purchase of equipment is not a "major federal action significantly affecting the environment." Moreover, that argument is now moot, since final disbursement of federal funds to Metalforming took place in 2004 and the equipment has already been purchased. No claim under NEPA or the NHPA can ordinarily be made when the proposed action has been completed. See, e.g., One Thousand Friends of Iowa v. Mineta, 364 F.3d 890, 893 (8th Cir. 2004); Bayou Liberty Assoc., Inc. v. U.S. Army Corps of Eng'rs, 217 F.3d 393 (5th Cir. 2000) (completion of construction project mooted NEPA claim); Knaust v. City of Kingston, 157 F.3d 86, 88 (2d Cir. 1998), cert. denied, 526 U.S. 1131 (1999).

### B. Plaintiffs Allegation that the Project Has Been a Federal Project From the Outset Fails to Establish Jurisdiction or State a Claim Upon which Relief can be Granted

While Plaintiffs decry federal inaction and the fact that the locally-funded Phase I of Transpark is proceeding without Federal involvement, they inexplicably also base their claim of federal jurisdiction on the assertion that Transpark has been a federal project from its inception. Macht v. Skinner, 715 F. Supp. 1131 (D.D.C. 1989) ("Macht I"), aff'd, 889 F.2d 291 (D.C. Cir. 1989) is controlling precedent in this Circuit on the question of whether locally-funded projects are federal projects subject to NEPA. Plaintiffs cite the case without fully addressing the facts or

8

even stating the case's holding. In Macht I, this Court held that the State of Maryland could intentionally segment a light rail transportation project into federally funded and non-federally funded segments, even though there was evidence that the State's intention was to insulate the state construction projects from federal environmental law.  Id.; see also Macht v. Skinner, 916 F.2d 13, 20 (D.C. Cir. 1990) ("Macht II"); Highway J Citizens Group v. Mineta, 349 F.3d 938, 963 (7th Cir. 2003), cert. denied, 541 U.S. 974 (2004).

The reasons for this Court's deference to state and local governments that choose to proceed without federal involvement were explained in yet another case cited and relied upon by Plaintiffs, Save Barton Creek Ass'n, 950 F.2d 1129.  In upholding the construction of an immediately needed highway project using local funds, the court explained its deference to state and local decision-makers in the following manner. A state or local government's choice to use local funding "should not be restricted simply because one alternative . . . (using state dollars) might result in less adequate assessment of environmental considerations.  If [a project] is not federal action, then a state's decision to avoid federal involvement cannot have the paradoxical effect of establishing federal involvement."  Id. at 1143 (citation omitted).  The court "concluded that the use of [local] funds would enable [the state] to proceed without the delays and expenses associated with compliance with federal environmental law" which the court then characterized as a "valid state concern."  Id. at 1144, n.19.

The Macht I principles are a fortiori dispositive in the instant case, since, in Macht I, the federal government was already directly involved in the very same rail system as the State of Maryland. Here, the ITA itself has not sought federal funds to complete Phase I of the Transpark.

9

Moreover, ITA is not responsible for highways and airports outside the Transpark, and cannot control other applicants for federal approval or funding for such activities.[9]

Plaintiffs also rely heavily upon the decision in Maryland Conservation Council, Inc. v. Gilchrist, 808 F.2d 1039 (4th Cir. 1986) to support their position.[10] However, the project in Gilchrist involved highway construction through a federally-funded state park that required Department of Interior *approval* for any selected route through the park. The project could not proceed without such approval, and state constructed highway segments had no use without the federally approved portion traversing the park. 808 F.2d at 1042-43. Phase I of the Transpark required no formal federal approvals at the outset.  Moreover, the Transpark has independent utility no matter what happens or does not happen with federal funding or approvals in the future. In the terms used by the Fourth Circuit, Phase I of Transpark both "begins and continues" without federal approval. See id. at 1042.

To bolster its argument that Transpark has always been a federal project, Plaintiffs conclude that Transpark would not exist "but for" federal involvement. Even more startling is Plaintiffs' erroneous assertion that Intervener Defendants do not deny this allegation. The allegation is patently absurd on its face: Phase I of Transpark does exist, as even Plaintiffs admit, and Phase I was planned and constructed to date without federal funds. Intervener Defendants repeatedly stated in their Motion to Dismiss and supporting affidavits that Phase I of Transpark proceeded without federal approval, funding, or permits for Phase I.  The Court may disregard such conclusory allegations that are unsupported by well-pled facts. Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept . . .

---

[9]  The Federal Defendants have assured the Court that when such applications are acted upon by the federal government, applicable NEPA and NHPA requirements will be complied with in the future.
[10]  See Pls' P. & A. 10-12.

legal conclusions cast in the form of factual allegations."); Simpson v. Socialist People's Libyan Arab Jamahiriya, 362 F. Supp. 2d 168, 181-82 (D.D.C. 2005).

The specific allegations that can be extracted from the mass of generalizations and conclusion made in the Amended Complaint also do not constitute major federal action under NEPA.  As fully explained in Defendant Interveners Memorandum in Support of its Motion to Dismiss the Amended Complaint, the FHWA funds appropriated for the improvement of U.S. 31-W and U.S. 68/80 were not appropriated for ITA, but were appropriated for the Kentucky Transportation Cabinet.  2nd Hizer Decl., ¶¶ 24-26.  None of the funds were received or spent by the ITA and no part of this particular project was located inside the Transpark.  Id.

### C. Plaintiffs Ignore or Misapply Controlling Precedent of this Circuit that Unequivocally Demonstrate That No Federal Undertaking or Major Federal Action Significantly Affecting the Environment Has Occurred at Transpark.

While repeatedly citing cases that fail to sustain other environmental plaintiffs' arguments as well as several inapplicable cases from jurisdictions outside the D.C. Circuit, Plaintiffs all but ignore controlling precedent under the NHPA and NEPA.  It is well-settled that the NHPA review process is not triggered unless a federal agency engages in a statutorily covered "undertaking."  Nat'l Trust for Historic Pres. v. Blanck, 938 F. Supp. 908, 916 (D.D.C. 1996), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999).  Section 106 of the NHPA requires that federal agencies "having direct or indirect jurisdiction over a proposed . . . federally assisted undertaking in any State . . . take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. . . . prior to the approval of the expenditure of any Federal funds . . . ." 16 U.S.C. § 470f.

A federal "undertaking" is defined in Section 301 of the NHPA as:

[A] project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including—(A) those carried out by or

11

on behalf of a Federal agency; (B) <u>those carried out with Federal financial assistance</u>; (C) <u>those requiring a Federal permit license or approval</u>; and (D) those subject to State or local regulation administered pursuant to delegation or approval by a Federal agency.

16 U.S.C. § 470w(7) (emphasis added); <u>see also</u> 36 C.F.R. § 800.16(y).

The U.S. Court of Appeals for the D.C. Circuit has narrowed the reach of the Section 301 definition of federal undertakings to make it consistent with the Section 106 jurisdictional provision which is limited to only direct federal activities, or federally-funded or approved undertakings. <u>Nat'l Mining Ass'n v. Fowler</u>, 324 F.3d 752, 755 (D.C. Cir. 2003). Plaintiffs' Amended Complaint alleges no facts that establish a direct federal undertaking at the Transpark within the meaning of the <u>National Mining</u> case. The NHPA "neither . . . forbid[s] the destruction of historic sites nor . . . command[s] their preservation", <u>United States v. 162.20 Acres of Land</u>, 639 F.2d 299, 302 (5th Cir. 1981), <u>accord</u>, <u>Lee v. Thornburgh</u>, 877 F.2d 1053 (D.C. Cir. 1989). Since the procedural requirements of Section 106 of the NHPA simply do not apply to the locally-funded and constructed Phase I of Transpark, Plaintiffs fail to state a claim upon which relief can be granted under the NHPA.

In <u>Sheridan Kalorama Historical Ass'n v. Christopher</u>, 49 F.3d 750, 754-56 (D.C. Cir. 1995), the D.C. Circuit affirmed that only activities triggering federal obligations under the NHPA are direct federal undertakings, such as federal funding, approval, or licensing of projects. The Court in <u>Sheridan</u> held that federal refusal to veto a non-federal entity's decision to demolish a chancery was not a federal undertaking because it did not involve federal funding or direct federal approval. <u>Id.</u> at 755-56. Stated another way, an agency's failure to act to stop non-federal governmental action, without more, is not an undertaking sufficient to trigger the NHPA process. <u>See also</u> <u>Nat'l Trust for Historic Pres.</u>, 938 F. Supp 908. Under the controlling principles of both the <u>National Mining</u> and the <u>Sheridan Kalorama</u> decisions, Plaintiffs have

12

failed to establish jurisdiction in this case and also have failed to state a claim upon which relief can be granted under NHPA.

As stated previously, the Court of Appeals for the D.C. Circuit faced sweeping allegations from environmental plaintiffs that are similar to those being raised regarding Transpark in the case of Coalition for Underground Expansion, 333 F.3d 193. Environmentalists opposed a third line segment of a Metro-rail transit in St. Louis that was being constructed using local government funds. The Court dismissed plaintiffs' claim that the FTA's past and current funding for other portions of the system, and its potential future funding of the third line segment by matching grants, made the third line segment a federal undertaking for purposes of NEPA. The D.C. Circuit has twice noted that "there is a wide gulf between what a state may want and what the federal government is willing to provide," citing Macht II, analyzed previously, 333 F.3d at 196-97.

In Wetlands Action Network v. U.S. Army Corps of Eng'rs, 222 F.3d 1105, 1118 (9th Cir. 2000), cert. denied, 534 U.S. 815 (2001), the court upheld a federal determination to not treat three phases of large scale mixed use development project, similar to Transpark, as a connected action. It held that phase I, consisting of a 600-acre development with office space, dwelling units and retail space, had independent utility even if the latter phases were not, or could not be, constructed. The court in Wetlands Action noted that many of the details of subsequent phases had not yet been completed or had not yet received authorizations to begin development, concluding that the three phases did not have to be considered together as cumulative actions. Id. at 1118-19.

This case is very similar to the instant challenge to the Transpark Phase I, which includes only local developments that are independent of prospective phases of development in the area,

13

such as a possible new regional airport or federal interstate highway. A phased approach was permitted in <u>Wetlands Action</u> under NEPA even though federal approval had already been sought for part of the project. <u>A fortiori</u>, a phased approach is clearly allowable when the federal approval has not been sought and is not required.

## CONCLUSION

Plaintiffs' Amended Complaint and Response to the Motion to Dismiss still fail to identify any final federal action (because there has been none) approving the award of federal funds to ITA or the Transpark, or issuing a federal permit or license required for activities within the Transpark. Many of the Plaintiffs' NEPA and NHPA claims are simply unripe for judicial review, as pointed out by the Federal Defendants. Moreover, the Supreme Court principles in <u>Norton</u> recognize federal inaction as remediable under the APA only when a federal agency has failed to execute a discrete, nondiscretionary statutory duty of a type not involved in this case.

For all the reasons stated above, the Court should grant the Intervener Defendants' Motion to Dismiss the Amended Complaint with prejudice.

Respectfully submitted,

ATTORNEYS FOR INTERVENER
DEFENDANTS

Charles E. English
Whayne C. Priest, Jr.
ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
1101 College Street; P.O. Box 770
Bowling Green, KY 42102-0770
Telephone: (270) 781-6500
Facsimile: (270) 782-7782
E-mail: charles@elpolaw.com
E-mail: whayne@elpolaw.com

LeBoeuf, Lamb, Greene & MacRae LLP
1875 Connecticut Avenue, NW
Washington, DC 20009
Telephone: (202) 986-8000
Facsimile: (202) 986-8102

/s/ George Ellard
GEORGE ELLARD
D.C. Bar No. 386084
D. RANDALL BENN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the attached Intervener Defendants' Reply to Plaintiffs' Opposition to the Motion to Dismiss the Amended Complaint and Intervener Defendants' Memorandum Of Points And Authorities In Support Of Intervener Defendants' Reply To Plaintiffs' Opposition To Defendants' Motions To Dismiss The Amended Complaint were this 12th day of October 2005, electronically filed with the Clerk of the Court using the DM/EMF system which will send notification of such filing by operation of the Court's electronic filing system to the following counsel. The undersigned also certifies service by first class U.S. Mail, postage prepaid, on the following:

Frank Lancaster
Maria Gillen
Office of General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive, East Tower
Knoxville, TN 37902
E-mail: mvgillen@tva.gov
Attorneys for Defendant Tennessee Valley Authority

W. Henry Graddy, IV
W. H. Graddy & Associates
103 Railroad Street
Post Office Box 4307
Midway, KY 40347
E-mail: hgraddy@aol.com
Attorneys for Plaintiffs

Sara Culley
U.S. Department of Justice
601 D Street, NW
Washington, DC 20004
E-mail: sara.culley@usdj.gov
Attorneys for Defendants U.S. Environmental Protection Agency and U.S. Housing and Urban Development

David Bookbinder
Sierra Club
408 C Street, NE
Washington, DC 20002
E-mail: david.bookbinder@sierraclub.org
Attorneys for Plaintiffs

_____
GEORGE ELLARD
Attorney for Intervener Defendant