UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARST ENVIRONMENTAL EDUCATION AND PROTECTION, INC. *et al.*, : : : : Plaintiffs, : : v. : : U.S. ENVIRONMENTAL PROTECTION AGENCY *et al.*, : : Defendants, : : and : : INTER-MODAL TRANSPORTATION AUTHORITY *et al.*, : : Defendant-Intervenors, : | Civil Action No.:   05-1190 (RMU) Document Nos.:   20, 21, 22 |

MEMORANDUM OPINION

GRANTING DEFENDANTS EPA AND HUD'S MOTION TO DISMISS;
GRANTING DEFENDANT TVA'S MOTION TO DISMISS;
GRANTING THE DEFENDANT-INTERVENORS' MOTION TO DISMISS[1]

I. INTRODUCTION

This matter comes before the court on defendants EPA and HUD's joint motion to dismiss, defendant TVA's motion to dismiss and the defendant-intervenors' motion to dismiss. The plaintiffs allege that the Environmental Protection Agency ("EPA"), the Department of Housing and Urban Development ("HUD") and the Tennessee Valley Authority ("TVA")

---

[1] Because the defendant-intervenors have also filed a motion to dismiss the case for the same reasons articulated by the defendants in their motions, the court does not analyze the defendant-intervenors' motion separately. To the extent that the defendant-intervenors' motion illuminates the court's analysis, the court will cite to it.

violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the National Historic Preservation Act ("NHPA"), 16 U.S.C. §§ 470 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706 *et seq.* According to the plaintiffs, the defendants permitted the Inter-Modal Transportation Authority ("ITA") to construct and develop the Kentucky Trimodal Transpark ("Transpark"), an industrial complex in Warren County, Kentucky. Specifically, the plaintiffs claim that the EPA and HUD violated the NEPA by not preparing an Environmental Impact Statement ("EIS") or designating a lead agency prior to the defendant-intervenors' development of Transpark. The plaintiffs also claim that TVA violated the NEPA and the NHPA when it granted money to a Transpark tenant. The plaintiffs further claim that TVA will commit future violations of the NEPA and the NHPA by granting additional funds to other Transpark tenants. Because the EPA did not take a major federal action and because HUD's actions in relation to Transpark do not constitute final agency action, the court grants the defendants' and defendant-intervenors' motions to dismiss. The court further concludes that the claims against TVA are moot and accordingly grants TVA's motion to dismiss.

## II.  BACKGROUND

### A.  Factual Background

Transpark is a proposed industrial complex spanning 4,000-6,000 acres in Warren County, Kentucky. Am. Compl. ¶ 1. Transpark is currently in its first phase of development. Def.-Intervenors' Mot. to Dismiss Am. Compl. ("Def.-Intervenors' Mot. to Dismiss") at 3. It is located a few miles from the Mammoth Cave National Park. Am. Compl. ¶ 11. The City of

Bowling Green, located in Warren County, Kentucky, created ITA, a defendant-intervenor in this action, as part of its effort to support the development of this $80 million integrated road, air, and rail complex. *Id.* ¶¶ 11, 13. The ITA is a nonprofit Kentucky corporation with the "power to apply for and receive grants from all governmental bodies and agencies," including federal agencies. *Id.* ¶ 13.

The plaintiffs allege that the defendants have provided or will provide federal money to ITA to support the Transpark development. *Id.* ¶ 32. For example, the plaintiffs point to the $500,000 grant that TVA awarded to Bowling Green Metalforming ("Metalforming"), Transpark's first tenant, in September 2004. *Id.* ¶ 29; TVA's Mot. to Dismiss at 2. The purpose of the grant was to purchase "ancillary" electrical equipment for Metalforming's $170 million plant.[2] *Id.* at 4, 14. The plaintiffs also assert that a portion of the funds for construction of the Transpark includes federal money from the defendants. Am. Compl. ¶ 32. The plaintiffs recognize that "funding for a substantial portion of the demolition and construction that has occurred has come from local government loans or bonds or other local government obligations." *Id.* Nevertheless, the plaintiffs assert that the "local government entities intend to seek reimbursement from the defendants or other federal agencies, after the work has been completed." *Id.* Stated differently, the plaintiffs allege that the defendants will receive federal funds in the future.

In addition to alleging that ITA received money from the defendants to further the

---

[2] Following its internal procedures under the National Environmental Policy Act ("NEPA"), defendant Tennessee Valley Authority ("TVA") "conducted an environmental review [of Metalforming's grant request] and determined that funding the new equipment" would not have a significant effect on the environment. TVA's Mot. to Dismiss at 4.

development of Transpark, *id.* ¶ 25, the plaintiffs also allege that ITA has demolished historic properties without seeking federal approval, *id.* ¶ 35. Further, the plaintiffs contend that ITA damaged an archaeological site during construction of an "HUD supported training center." *Id.* ¶ 36.

## B. Procedural History

The plaintiffs oppose ITA's further construction and development of Transpark because they fear that it may damage the Mammoth Cave National Park and other natural resources in Warren County. *Id.* ¶ 3. After the plaintiffs filed an amended complaint, defendant TVA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). TVA's Mot. to Dismiss for Lack of Subject Matter Jurisdiction ("TVA's Mot. to Dismiss") at 5-6. Defendants EPA and HUD filed a joint motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs. EPA and HUD's Mot. to Dismiss Pls.' Am. Compl. ("EPA/HUD's Mot. to Dismiss") at 10-11. ITA, Warren County, and the City of Bowling Green filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) in their capacity as defendant-intervenors. Def.-Intervenors' Mot. to Dismiss at 8. The court now turns to those three motions for dismissal.

## III. ANALYSIS

### A. Statutory Framework

#### 1. National Environmental Policy Act

The purpose of the NEPA is to "encourage productive and enjoyable harmony between man and his environment." 42 U.S.C. § 4321. The Council on Environmental Quality ("CEQ"),

an Executive Office agency, has promulgated binding regulations implementing the NEPA.  42 U.S.C. § 4342.  Under the CEQ regulations, federal agencies must prepare an Environmental Impact Statement ("EIS") for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(C).  The EIS must examine the short-term and long-term "'environmental impact of the proposed action' and identify any possible alternative plans."  *Id.*  If the proposed action does not significantly affect the environment, it is classified as a "categorical exclusion," and the agency is not required to prepare an EIS.  40 C.F.R. § 1508.4.

"The application of NEPA to major governmental action is complicated where several federal agencies are involved in the same project."  *Silentman v. Fed. Power Comm'n*, 566 F.2d 237, 240 (D.C. Cir. 1977).  Where several agencies are involved in the same project, the agencies may designate a lead agency to take the primary responsibility for preparing an EIS.  *Id.*; 40 C.F.R. § 1508.16.

## 2.  National Historic Preservation Act

The NHPA requires that federal agencies consider the impact of federal undertakings on historic resources of national significance.  16 U.S.C. § 470f.  A federal undertaking is a project that "receives federal funding or a federal license."  *Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750, 754 (D.C. Cir. 1995).  A federal agency is only required to comply with the NHPA procedure if it is engaged in an undertaking.  *Nat'l Trust for Historic Pres. v. Blanck*, 938 F. Supp. 908, 918 (D.D.C. 1996).  Although "federal authority to fund or to license a project can render the project an undertaking," thereby requiring compliance with the NHPA, a federal agency's "decision to fund or license a particular project is not itself an undertaking."  *Id.*

5

The NEPA is a "close statutory analog" to the NHPA. *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097 (9th Cir. 2005). "Because of the operational similarity between the two statutes, courts generally treat 'major federal actions' under the NEPA as closely analogous to 'federal undertakings' under the NHPA." *Sac and Fox Nation of Mo. v. Norton*, 240 F.3d 1250 (10th Cir. 2001). Accordingly, this court's NEPA analysis also applies to the plaintiffs' NHPA claims.

### B. The Court Lacks Jurisdiction to Address the Claims Against the EPA and HUD

Defendants EPA and HUD argue that the court lacks subject matter jurisdiction under the APA because they have not taken final agency action with respect to the Transpark project. EPA/HUD's Mot. to Dismiss at 2. The plaintiffs, on the other hand, argue that the EPA and HUD have taken final agency action, and that they have failed to take required final agency actions. Pls.' Opp'n at 28. For the reasons that follow, the court grants EPA and HUD's joint motion to dismiss.

#### 1. Legal Standard for Judicial Review of Agency Actions

Judicial review of agency actions under NEPA is governed by the APA. *Tulare County v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002). Judicial review of agency actions under the NHPA is also governed by the APA. *Blanck*, 938 F. Supp. 908, 915 (D.D.C. 1996), *aff'd*, 1999 WL 1021932 (D.C. Cir. Oct. 22, 1999) (unpublished opinion).

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (explaining that "'[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action'").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Generally, for a court to have jurisdiction over claims seeking judicial review of an

agency action under the APA, it must determine that the action is final. *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001); *see also Ticor Title Ins. Co. v. Fed. Trade Comm'n*, 814 F.2d 731, 746 n.2 (D.C. Cir. 1987) (noting that the finality requirement also applies to "agency action made reviewable by statute"). A final agency action "(1) 'marks the consummation of the agency's decision making process – it must not be of a merely tentative or interlocutory nature'; and (2) the action 'must be one by which rights or obligations have been determined or from which legal consequences will flow.'" *Domestic Secs. v. Secs. & Exch. Comm'n*, 333 F.3d. 239, 246 (D.C. Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). A court therefore must consider "whether the agency's position is definitive and whether it has a direct and immediate effect on the day-to-day business of the parties." *Index. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 595-96 (D.C. Cir. 2001).

### 2. The EPA did not Violate the NEPA

The plaintiffs argue that the defendants' "non-discretionary failure to act on a major project significantly affecting the quality of the environment itself constitutes" a final agency action. Pls.' Opp'n at 24. Specifically, the plaintiffs argue that the EPA gave advice to the defendant-intervenors, and that this advice constitutes a major federal action, thereby triggering the NEPA's requirement that the agency prepare an EIS. The plaintiffs then argue that the EPA failed to fulfill its obligations under NEPA when it failed to designate a lead agency and failed to prepare an EIS. According to the plaintiffs, the EPA's failure to designate a lead agency and its failure to prepare an EIS constitutes a judicially reviewable final agency action under the APA.

A court can review an agency's failure to take a final action "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah*

*Wilderness Alliance*, 124 S. Ct. 2373, 2379 (2004) (emphasis in original). In the instant case, however, the court need not determine whether the EPA's failure to designate a lead agency and failure to prepare an EIS constitutes a final agency action because the EPA never triggered the NEPA requirement to prepare an EIS.[3] Although the plaintiffs argue that ITA's request for EPA's input or comments on Transpark constitutes a major federal action, *id.* at 20, 21, "the power to give nonbinding advice to a nonfederal actor" does not constitute a major federal action, *Vill. of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990). Accordingly, the EPA did not trigger the NEPA when ITA requested advice or comments.

### 3. HUD has not Taken Final Agency Action

The plaintiffs argue that HUD's appropriation of funds for the City of Bowling Green's purchase of equipment for a training center located in Transpark constitutes a judicially reviewable final action. Pls.' Opp'n at 33; EPA/HUD's Mot. to Dismiss at 5. The plaintiffs also argue that HUD improperly characterized the appropriations as a "categorical exclusion, thereby engaging in a final agency action. Pls.' Opp'n at 28.

According to HUD, the City of Bowling Green applied for disbursement of the appropriated funds in July 2005. EPA/HUD's Mot. to Dismiss at 5. At the time that HUD filed its motion to dismiss, however, it had taken no action on the application. *Id.* In filing its reply,

---

[3] *Assuming arguendo* that the Environmental Protection Agency ("EPA") did take a major federal action when the defendant-intervenors requested advice and comments, the court does not have jurisdiction over the plaintiffs claim that the EPA failed to prepare an Environmental Impact Statement ("EIS"). An agency's decision not to prepare an EIS pursuant to the NEPA does not constitute a final agency action. *Pub. Citizen v. Office of U.S. Trade Representatives*, 970 F.2d 916, 918 (D.C. Cir. 1992). Because the EPA's decision not to prepare an EIS is not a final agency action, its failure to designate a lead agency for purposes of preparing an EIS also does not constitute a final action. Accordingly, the court does not have jurisdiction to review the EPA's decision not to prepare an EIS with respect to the Transpark project.

HUD stated that it had taken some action with respect to the grant application, but that it has not yet "obligated" the money. EPA's Reply at 2 n.1. Appropriated money becomes "obligated' only after an agency considers and approves the grant application. EPA/HUD's Mot. at 3. In other words, HUD has not yet decided whether to award the grant to the City of Bowling Green. Because at this point in time, "the federal money is but an expectancy that has not yet materialized," the court determines that HUD's action on the grant application for appropriated funds does not constitute a judicially reviewable final agency action. *Citizens Alert Regarding the Env't v. EPA*, 259 F. Supp. 2d 9, 20 (D.D.C. 2003)*, aff'd*, 2004 WL 1336644 (D.C. Cir. June 15, 2004) (unpublished opinion) (quoting *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1573 (11th Cir. 1994) for the proposition that "[t]he possibility that federal funding will be provided in the future is not sufficient to federalize a state project, even when such funding is likely").

### C. The Court Dismisses the Plaintiffs' Claims Against TVA

The plaintiffs make two claims against TVA. First, the plaintiffs claim that TVA violated the NEPA and the NHPA when it made a $500,000 grant to Metalforming. Pls.' Opp'n at 29; Am. Compl. ¶ 29. Second, the plaintiffs assert that TVA will commit future violations by granting additional funds to Metalforming or to other Transpark tenants. Pls.' Opp'n at 28. Both claims are moot.

#### a. Legal Standard for Mootness

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Albritton v. Kantor*, 944 F. Supp. 966, 974 (D.D.C.1996) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). It is well established that a

"defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

The standard for determining whether a case or controversy is mooted by a defendant's voluntary conduct is "stringent." *See id*. In determining mootness, the court has to make "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting the mootness." *Id*.; *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot").

The movant must also show that "interim relief and events have completely and irrevocably eradicated the effects of the alleged violation." *Albritton*, 944 F. Supp. at 974 (citing *Davis*, 440 U.S. at 631).

### b. The Claims Against TVA are Moot

The plaintiffs' claim that TVA violated the NEPA and NHPA when it awarded a $500,000 grant to Metalforming is moot because TVA awarded the grant to Metalforming in 2004. Am. Compl. ¶ 29; TVA's Mot. to Dismiss at 2. A claim that the defendants violated the NEPA is moot when the action complained of has been completed and no effective relief is available. *Fund for Animals v. U.S. Bureau of Land Mgmt.*, 357 F. Supp. 2d 225, 230 (D.D.C. 2004) (holding that a NEPA claim is moot once the government completes the action complained

of by the plaintiffs because "the Court cannot undo what has already been done") (citing *Fl. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547, 548 (5th Cir. 1980)).

The plaintiffs also argue that TVA's grant of funds is an action that is capable of repetition but evading review, and that the court should therefore enjoin TVA from further NEPA or NHPA violations. Pls.' Opp'n at 37. The court, however, declines to apply the "capable of repetition, yet evading review" doctrine in the instant case. First, a court cannot merely give parties a broad order to obey the law. *NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941) (stating that "the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute"). Enjoining the defendants from violating the NEPA, as the plaintiffs urge, would merely require them to obey the law. Second, "the mootness exception for disputes capable of repetition yet evading review . . . will not revive a dispute which became moot before the action commenced." *Renne v. Geary*, 501 U.S. 312, 320 (1991). Defendant TVA awarded the grant to Metalforming in September 2004, months before the plaintiffs filed their complaint. In other words, the plaintiffs' claim against defendant TVA became moot long before they filed their action. Lastly, the plaintiffs do not allege that TVA has taken any final agency action with respect to other prospective grants. *Pub. Citizen*, 970 F.2d at 920 (explaining that "courts routinely dismiss NEPA claims in cases where agencies are merely contemplating a particular course of action but have not actually taken any final action at the time of suit"). Even if defendant TVA was contemplating granting more federal funds to Metalforming, the plaintiffs have given no indication that such a grant would be in violation of the NEPA. Accordingly, the court grants defendant TVA's motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' and defendant-intervenors' motions to dismiss the plaintiffs' complaint.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 15th day of December, 2005.

RICARDO M. URBINA<br>
United States District Judge